## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING,                    :
                                       :
        Plaintiff,                    :
                                       :
        v.                            :    Civil Action No. 1:07-cv-2182-PLF
                                       :
LANGENFELDER MARINE, INC.,             :
                                       :
        Defendant.                    :

### MOTION FOR SUMMARY JUDGMENT

Plaintiff, Michael R. Fanning as Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, by the undersigned, respectfully moves this Court to enter an Order granting Summary Judgment against the Defendant pursuant to Local Rules 7 and 56.1, and Rule 56(c) of the Federal Rules of Civil Procedure. The reasons supporting this Motion are set forth in the attached Memorandum. Declarations with exhibits, a Local Rule 7(h) Statement of Undisputed Facts and a proposed Order are also submitted in further support of this Motion.

Respectfully submitted,

**O'DONOGHUE & O'DONOGHUE LLP**
4748 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 362-0041 telephone
(202) 237-1200 facsimile

Dated: June 23, 2008

R. Richard Hopp (Bar No. 432221)
rhopp@odonoghuelaw.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING,                          :
                                             :
                    Plaintiff,               :
                                             :
            v.                               :      Civil Action No. 1:07-cv-2182-PLF
                                             :
LANGENFELDER MARINE, INC.,                   :
                                             :
                    Defendant.               :

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On December 4, 2007 Plaintiff, Michael R. Fanning, as Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers (hereinafter "Central Pension Fund"), filed this action against the Defendant Langenfelder Marine, Inc. to recover contributions and other amounts due to the Central Pension Fund. (Docket No. 1.) On January 7, 2008, the Defendant filed an Answer admitting that it agreed to make payments to the Central Pension Fund pursuant to various collective bargaining agreements. (Docket No. 3 (Answer ¶ 21).)

Through responses to Interrogatories and admissions, the Defendant has conceded that it owes the requested contributions to the Central Pension Fund. Accordingly, as there is no genuine issue as to any material fact, and because the Central Pension Fund is entitled to judgment as a matter of law, the Plaintiff now moves for summary judgment. Fed. R. Civ. P. 56(c).

I.      INTRODUCTION AND BACKGROUND

The Central Pension Fund is a defined benefit, multiemployer employee pension benefit plan, organized under the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq.. (Fanning Decl. ¶ 4.) The Central Pension Fund is governed by, among

other things, the terms of its Restated Agreement and Declaration of Trust. (Fanning Decl. ¶ 6.) The Central Pension Fund provides retirement, disability, survivor and death benefits to individuals working as operating engineers in various industries throughout the United States. (Fanning Decl. ¶ 6.) The Central Pension Fund is financed by payments, called "contributions," made by employers who are signatory to collective bargaining agreements with local unions affiliated with the International Union of Operating Engineers. (Fanning Decl. ¶ 7.) Contributions generally are made by employers to the Central Pension Fund for each hour of work performed by an individual under the collective bargaining agreement at the rate set forth in the applicable agreement. (Fanning Decl. ¶ 8.)

Langenfelder Marine is a corporation existing under the laws of Maryland. (Complaint ¶ 2; Answer ¶ 2.) Langenfelder Marine transacts business as a contractor or subcontractor, and all relevant times was an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11) and (12) of ERISA, 29 U.S.C. Sections 1002(5), (9), (11) and (12), and Section 3 of the Multi-Employer Pension Plan Amendments of 1980, 29 U.S.C. § 1001(a). (Complaint ¶ 2; Answer ¶ 2.) At all relevant times, the Defendant was bound to collective bargaining agreements with International Union of Operating Engineers Local Union No. 25. (Complaint ¶ 6; Answer ¶ 6; Hopp Decl. Ex. A (Interrogatory No. 13); Fanning Decl. ¶ 9.)

## II.    UNDISPUTED FACTS

Langenfelder Marine signed International Union of Operating Engineers Local Union No. 25's Standard Master Agreement, along with its Standard Northern Addendum and Standard Southern Addenda, on October 26, 2006. (Fanning Decl. Ex. C.) Langenfelder Marine also signed the Oyster Shell Dredging Agreement with Local Union No. 25 on December 16, 2005. (Fanning

Decl. Ex. B.)[1]   The Collective Bargaining Agreements set forth the terms and conditions of employment of operating engineers employed by Langenfelder Marine. (Fanning Decl. ¶ 7.)

The Collective Bargaining Agreements require, among other things, that for each hour of work, and in addition to wages, contributions must be made to the Central Pension Fund by Langenfelder Marine. (Fanning Decl. ¶ 8.)  The Collective Bargaining Agreements also provide that the contributions owed to the Central Pension Fund shall be paid based upon the terms of "the governing instruments of the International Union of Operating Engineers Central Pension Fund." (Fanning Decl. Exs. B and C; Answer ¶ 7.)  One of the instruments governing the Central Pension Fund is the Fund's Restated Agreement and Declaration of Trust. (Fanning Decl. ¶ 6 and Ex. A.)

Contributions must be remitted to the Central Pension Fund on a monthly basis. (Fanning Decl. ¶ 11.)  The number of hours worked by each individual during a month is supplied to the Central Pension Fund by employers on a self-reporting basis in a report called a "Remittance Form." (Fanning Decl. ¶ 8 and 11.)  The total number of hours reported is multiplied by the applicable contribution rate, resulting in the amount owed by the employer to the Central Pension Fund for a given month. (Fanning Decl. ¶ 11.)

Notwithstanding this unambiguous contractual obligation, at the time the Complaint was filed, Langenfelder Marine had failed to make contributions to the Central Pension Fund for the months of April of 2007 through September of 2007. (Fanning Decl. ¶ 11 and 12.)  The total amount owed for contributions during these six months was $100,943.50. (Fanning Decl. ¶ 12.) This total represents the following monthly amounts:

---

[1] These agreements are collectively referred to herein as "Collective Bargaining Agreements."

| Month | Amount Owed |
|---|---|
| April 2007 | $10,479.50 |
| May 2007 | $10,346.00 |
| June 2007 | $13,945.50 |
| July 2007 | $18,093.00 |
| August 2007 | $21,800.00 |
| September 2007 | $26,279.50 |

(Fanning Decl. ¶ 12 and Ex. D.)  It is undisputed that this amount was owed by Langenfelder Marine, to the Central Pension Fund.  Not only is this amount based on the very Remittance Forms submitted to the Central Pension Fund by Langenfelder Marine, but the Defendant also conceded that its owes these amounts in its answer to Interrogatory Number 1.  (Fanning Decl. D; Hopp Decl. Ex. A.)  The Defendant's admissions also establish this undisputed fact.  (Hopp Decl. Ex. B.) Furthermore, the Defendant's own correspondence to the Central Pension Fund also concedes that these amounts are due and owing.  (Fanning Decl. Ex. F.)

Subsequent to the date that this lawsuit was filed, Langenfelder Marine has made intermittent payments to the Central Pension Fund to reduce the delinquency.  (Fanning Decl. ¶ 13.) The Defendant made the following payments on the following dates:

| Date of Payment | Amount of Payment | Remittance Form Month |
|---|---|---|
| 12/27/07 | $10,479.50 | April 2007 |
| 01/30/08 | $10,346.00 | May 2007 |
| 03/03/08 | $13,945.50 | June 2007 |
| 04/18/08 | $18,093.00 | July 2007 |

(Fanning Decl. ¶ 13.)

4

In addition to the delinquent contributions, Langenfelder Marine also owes liquidated damages to the Central Pension Fund in the amount of $20,188.70 pursuant to the terms of Section 4.5(b) of the Restated Agreement and Declaration of Trust, and Section 502(g)(2)(C)(ii) of ERISA. (Fanning Decl. Ex. A.) 29 U.S.C. § 1132(g)(2)(C)(ii). The Defendant also owes interest on all delinquent contributions pursuant to the terms of Section 4.5(c) of the Restate Agreement and Declaration of Trust, and Section 502(g)(2)(B) of ERISA. (Fanning Decl. Ex. A.) 29 U.S.C. § 1132(g)(2)(B). The calculation of these amounts is detailed in Exhibit G to the Declaration of Michael R. Fanning.

Plaintiff's attorneys have spent a total of 41.40 hours to bring this action against the Defendant. (Hopp Decl. ¶ 6 and Ex. D.) This is a reasonable amount time to investigate the Plaintiff's claims, research, draft and file the Complaint, attend the various court conferences, conduct discovery, respond to the Defendant's discovery request, communicate with opposing counsel, and bring this dispositive motion. The reasonable hourly rate charged by Plaintiff's attorneys is $200.00 for attorney time resulting in a total attorney's fee amount of $8,280.00. (Hopp Decl. ¶ 6.)[2] The Plaintiffs have incurred reasonable costs in this matter in the total amount of $445.00. (Hopp Decl. ¶ 9 and 10 and Exs. E and F.) The obligation to pay attorneys' fees and costs is established in Section 4.5(e) of the Restated Agreement and Declaration of Trust, and Section 502(g)(2)(B) of ERISA. 29 U.S.C. § 1132(g)(2)(B). (Fanning Decl. Ex. A.)

**III.    STANDARD FOR AWARDING SUMMARY JUDGMENT**

The standard for ruling on a motion for summary judgment is well established. Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to

---

[2] This hourly rate is substantially below the $536.00 hourly rate established in the current Laffey matrix. Salazar v. District of Columbia, 123 F. Supp. 2d 8, 17 (D. D.C. 2000).

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The summary judgment procedure is properly regarded not as a disfavored shortcut, but rather as an integral part of the Federal Rules as a whole, which are designated to "secure the just, speedy and inexpensive determination of every action." Celotex Corp., 477 U.S. at 327 (citing Fed. R. Civ. P. 1).

A fact issue is material only if the issue must be decided to resolve the plaintiff's substantive claim. Id. at 248. The "materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." Anderson, 477 U.S. at 249-50.

A dispute about a material fact is genuine "if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." Id. The mere existence of a "scintilla" or "merely colorable" evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. Id. at 252; Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001). Unsupported speculation also is insufficient to defeat a motion for summary judgment. Celotex Corp., 477 U.S. at 324; Fed. R. Civ. P. 56(e); Mills v. Winter, 540 F. Supp. 2d 178, 183 (D. D.C. 2008). Thus, "the judge must not ask . . . whether . . . the evidence unmistakably favors one side or the other but whether

a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."

Anderson, 477 U.S. at 252.

### IV. THE DEFENDANT IS LIABLE TO THE CENTRAL PENSION FUND FOR UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, FEES AND COSTS

#### A. The Defendant Is Bound To Collective Bargaining Agreements Which Require Payments To The Plaintiff

The Defendant does not dispute that it is bound to the Collective Bargaining Agreements. (Answer ¶'s 6 and 8; Hopp Decl. Ex. A (Answer to Interrogatory No. 13).) The Plaintiff is entitled to enforce the terms of the Collective Bargaining Agreements pursuant to Sections 515 and 502(a) of ERISA. 29 U.S.C. §§ 1145 and 1132(a); Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 547 (1988). The Central Pension Fund occupies the position of a third party beneficiary of the Collective Bargaining Agreements between Langenfelder Marine and Operating Engineers Local Union No. 25. See, e.g. Robbins v. Lynch, 836 F.2d 330, 333 (7th Cir. 1977). However, unlike most third party beneficiaries, Congress placed the Central Pension Fund in a position superior to the original promisee, analogous to a holder in due course. Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2nd Cir. 1990). As a result, employers like Langenfelder Marine are restricted in the kinds of defenses they may assert. Id. (only two defenses available to employers: that the pension contributions themselves are illegal or that the collective bargaining agreement is void (not merely voidable).)

#### B. The Amount Owed To The Central Pension Fund Is Undisputed

It is undisputed that Langenfelder Marine failed to pay contributions owed to the Central Pension Fund in the total amount of $100,943.50 for the months of April through September of 2007. This amount is established by the Defendant's own Remittance Forms, its answers to the Plaintiff's Interrogatories, its Admissions, and in correspondence to the Central Pension Fund.

7

(Fanning Decl. Ex. D and F; Hopp Decl. Ex. A (Interrogatory No. 1) and Ex. B (Admissions).) There is no dispute that since the filing of the Complaint, the Defendant has paid a total of $52,864.00 toward this amount. (Fanning Decl. ¶ 13; Hopp Decl. Ex. A (Interrogatory No. 1).) Therefore, contributions in the amount $48,079.50 are still owing for the months of August and September of 2007. Judgment in favor of the Plaintiff in this amount is proper as a matter of law pursuant to Sections 502(g)(2)(A) and 515 of ERISA. 29 U.S.C. §§ 1132(g)(2)(A) and 1145.

Plaintiff is also entitled to an award of liquidated damages in the amount of 20% of all of the unpaid contributions owed to the Central Pension Fund at the time the Complaint was filed. This is established in Section 4.5(b) of the Restatement Agreement and Declaration of Trust and Section 502(g)(2)(C)(ii) of ERISA. 29 U.S.C. § 1132(g)(2)(C)(ii). (Fanning Decl. Ex. A.) The amount of liquidated damages owed on late and unpaid contributions by Langenfelder Marine totals $20,188.70. (Fanning Decl. Ex. G.)

In addition, the Plaintiff is entitled to prejudgment interest assessed at the rate of 9% per annum. This is established in Section 4.5(c) of the Plaintiff's Restated Agreement and Declaration of Trust and Section 502(g)(2)(B) of ERISA. 29 U.S.C. § 1132(g)(2)(B). (Fanning Decl. Ex. A.) The amount of interest owed, through and including July 31, 2008, on the late paid and unpaid contributions by Langenfelder Marine totals $7,465.88. (Fanning Decl. Ex. G.) Interest continues to accrue on this amount until the date of judgment at the rate of $11.86 per day. (Fanning Decl. Ex. G.)

Finally, the Plaintiff is also entitled to recover costs and attorney's fees from the Defendant as provided in Section 4.5(e) of the Plaintiff's Restated Agreement and Declaration of Trust and Section 502(g)(2)(D) of ERISA. 29 U.S.C. § 1132(g)(2)(D). This amount totals $8,7250.00. (Hopp Decl. ¶'s 6, 9 and 10 and Exs. D, E and F.)

## C.    The Defendant's "Windfall" Defense Fails
### As A Matter Of Undisputed Fact And Law

The Defendant raises only one legal defense. (Answer page 3.)  Langenfelder Marine asserts that it should not be required to pay contributions on behalf of "non-union" employees because those employees will never receive credit from the Central Pension Fund for the contributions, and therefore the payment would constitute a "windfall" to the Plaintiff.  This defense may be rejected by the Court on summary judgment as a matter of undisputed fact and as a matter of law.

First, the undisputed facts demonstrate that <u>all</u> individuals on whose behalf contributions are paid to the Central Pension Fund by Langenfelder Marine are considered by the Central Pension Fund to be "participants" in the Plan as that term is specifically defined by Section 3(7) of ERISA. 29 U.S.C. § 1002(7).  (Fanning Decl. ¶ 16.)  What is more, <u>all</u> participants of the Central Pension Fund are eligible to receive benefits upon satisfying the requirements of the Central Pension Fund's Plan of Benefits.  (Fanning Decl. ¶ 15.)  The Central Pension Fund will credit <u>all</u> of Langenfelder Marine's employees for <u>all</u> hours they worked for the Defendant, whether they are union member or not. (Fanning Decl. ¶17.)

Furthermore, it also cannot be disputed that the amount of benefits payable by the Central Pension Fund to Langenfelder Marine's employees will be based, in part, on the hours they worked at Langenfelder Marine.  (Fanning Decl. ¶ 14 and Ex. D.)  The Defendant's failure to pay contributions to the Central Pension Fund for all hours worked, therefore, will cause a direct harm to the Fund. (Fanning Decl. ¶ 15.)  Thus, Langenfelder Marine's assertion that its employees will not receive credit for the contributions demanded in this lawsuit is erroneous as a matter of fact.

The Defendant's assertion is also erroneous as matter of law.  The courts hold that Section 515 of ERISA, 29 U.S.C. § 1145, means exactly what it says.  Employers are obligated to meet their

9

obligations to pay contributions pursuant to the terms of the collective bargaining agreements to which they are bound, and "liability for delinquent contributions is not contingent upon there having been a payout on behalf of the covered employees." Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc., 883 F.2d 454, 464 (6th Cir. 1989); Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148, 1155 (6th Cir. 1989).

The federal courts, including the United States Court of Appeals for the District of Columbia Circuit, have repeatedly rejected employer's claims that benefit fund contributions are not payable on behalf of non-union employees. See, e.g., Teamsters Local 348 Health and Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 318-19 (6th Cir. 1984); Washington Area Carpenters Welfare Fund v. Overhead Door, Co., 681 F.2d 1, 10 (D.C. Cir. 1982); Clark v. Ryan, 818 F.2d 1102, 1105 (4th Cir. 1987); Carpenters and Millwrights Health Benefit Trust Fund v. Gardiner Dry Walling Co., 573 F.2d 1172, 1177 (10th Cir. 1978); Plumbers, Pipefitters and Apprentices Local Union 112 Pension Fund v. Mauro's Plumbing, Heating and Fire Suppression, Inc., 84 F. Supp. 2d 344, 353 (N.D.N.Y. 2000) (with string cite of cases). It is well-established that "when a collective bargaining agreement defines covered employees by job classification [as the Local Union No. 25 Collective Bargaining Agreements in this case], it generally covers all employees within those classifications, regardless of union membership." See, Trustees of the Southern California IBEW-NECA Pension Trust Fund v. Flores, 519 F.3d 1045, 1047 (9th Cir. 2008) (citing cases). It is undisputed that no term of the Collective Bargaining Agreements entered into by Langenfelder Marine limits the obligation to pay contributions to the Central Pension Fund to union employees. (Fanning Decl. Exs. B and C.)

10

## V.    CONCLUSION

For the foregoing reasons, Plaintiff is entitled to the entry of summary judgment in its favor providing for the following relief against the Defendant:  1) a money judgment in the amount of $48,079.50 for contributions owed for August and September of 2007; 2) liquidated damages in the amount of $20,188.70; 3) pre-judgment interest of $7,465.88 (through July 31, 2008); pre-judgment interest from September 1, 2008, to the date of judgment at the rate of $11.86 per day; 4) an award of costs and fees in the amount of $8,725.00; and 5) and award of post-judgment interest at the statutory rate from the date of judgment to payment.

Dated:  June 23, 2008                              Respectfully submitted,

                                                   **O'DONOGHUE & O'DONOGHUE LLP**
                                                   4748 Wisconsin Avenue, N.W.
                                                   Washington, D.C.  20016
                                                   (202) 362-0041 telephone
                                                   (202) 237-1200 facsimile


                                                   R. Richard Hopp, Bar No. 432221
                                                   rhopp@odonoghuelaw.com
                                                   *Attorney for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of June, 2008, I caused the Motion for Summary Judgment, Memorandum in Support Thereof, and all attachments to be filed using the CEM/ECF and that ECF will send notification of the filing to:

Elizabeth Tophy-Donzella
Eric Hemmendinger
Shaw & Rosenthal, LLP
20 South Charles Street
11th Floor
Baltimore, Maryland 12101
*Attorneys for Defendant*


R. Richard Hopp

11

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING,              :

       Plaintiff,           :

       v.              :     Civil Action No. 1:07-cv-2182-PLF

                       :

LANGENFELDER MARINE, INC.,    :

       Defendant.        :

## PLAINTIFF'S LOCAL RULES 7(h) AND 56.1
## STATEMENT OF UNDISPUTED FACTS

1.     The Central Pension Fund is a defined benefit, multiemployer employee pension benefit plan, organized under the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq.. (Fanning Decl. ¶ 4.)

2.     The Central Pension Fund is governed by, among other things, the terms of its Restated Agreement and Declaration of Trust. (Fanning Decl. ¶ 6.)

3.     The Central Pension Fund provides retirement, disability, survivor and death benefits to individuals working as operating engineers in various industries throughout the United States. (Fanning Decl. ¶ 6.)

4.     The Central Pension Fund is financed by payments, called "contributions," made by employers who are signatory to collective bargaining agreements with local unions affiliated with the International Union of Operating Engineers. (Fanning Decl. ¶ 7.)

5.     Contributions generally are made by employers to the Central Pension Fund for each hour of work performed by an individual under the collective bargaining agreement at the rate set forth in the applicable agreement. (Fanning Decl. ¶ 8.)

6.    All individuals on whose behalf contributions are payable to the Central Pension Fund are considered by the Central Pension Fund to be "participants" in the Plan as that term is specifically defined by Section 3(7) of ERISA. 29 U.S.C. § 1002(7). (Fanning Decl. ¶ 16.)

7.    All participants of the Central Pension Fund are eligible to receive benefits upon satisfying the requirements of the Central Pension Fund's Plan of Benefits. (Fanning Decl. ¶ 15.)

8.    The Central Pension Fund will credit all of Langenfelder Marine's employees for all hours they worked for the Defendant, whether they are union members or not. (Fanning Decl. ¶17.)

9.    The amount of benefits payable by the Central Pension Fund to Langenfelder Marine's employees will be based, in part, on the hours they worked at Langenfelder Marine. (Fanning Decl. ¶ 14 and Ex. D.)

10.    Langenfelder Marine transacts business as a contractor or subcontractor, and all relevant times was an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11) and (12) of ERISA, 29 U.S.C. Sections 1002(5), (9), (11) and (12), and Section 3 of the Multi-Employer Pension Plan Amendments of 1980, 29 U.S.C. § 1001(a).    (Complaint ¶ 2; Answer ¶ 2.)

11.    Langenfelder Marine signed International Union of Operating Engineers Local Union No. 25's Standard Master Agreement, along with its Standard Northern Addendum and Standard Southern Addenda, on October 26, 2006. (Fanning Decl. Ex. C.)

12.    Langenfelder Marine also signed the Oyster Shell Dredging Agreement with Local Union No. 25 on December 16, 2005. (Fanning Decl. Ex. B.)[1]

13.    The Collective Bargaining Agreements set forth the terms and conditions of employment of operating engineers employed by Langenfelder Marine. (Fanning Decl. ¶ 7.)

---

[1] These agreements are collectively referred to herein as "Collective Bargaining Agreements."

2

14.    The Collective Bargaining Agreements require, among other things, that for each hour of work, and in addition to wages, contributions must be made to the Central Pension Fund by Langenfelder Marine (Fanning Decl. ¶ 8.)

15.    The Collective Bargaining Agreements also provide that the contributions owed to the Central Pension Fund shall be paid based upon the terms of "the governing instruments of the International Union of Operating Engineers Central Pension Fund." (Fanning Decl. Exs. B and C; Answer ¶ 7.)

16.    No term of the Collective Bargaining Agreements entered into by Langenfelder Marine limits the obligation to pay contributions to the Central Pension Fund to union employees. (Fanning Decl. Exs. B and C.)

17.    Contributions must be remitted to the Central Pension Fund on a monthly basis. (Fanning Decl. ¶ 11.)

18.    The number of hours worked by each individual during a month is supplied to the Central Pension Fund by employers on a self-reporting basis in a report called a "Remittance Form." (Fanning Decl. ¶ 8 and 11.)

19.    The total number of hours reported is multiplied by the applicable contribution rate, resulting in the amount owed by the employer to the Central Pension Fund for a given month. (Fanning Decl. ¶ 11.)

20.    At the time the Complaint was filed, Langenfelder Marine had failed to make contributions to the Central Pension Fund for the months of April of 2007 through September of 2007. (Fanning Decl. ¶ 11 and 12.) The total amount owed for contributions during these six months was $100,943.50, consisting of the following monthly amounts:

3

| Month | Amount Owed |
|---|---|
| April 2007 | $10,479.50 |
| May 2007 | $10,346.00 |
| June 2007 | $13,945.50 |
| July 2007 | $18,093.00 |
| August 2007 | $21,800.00 |
| September 2007 | $26,279.50 |

(Fanning Decl. ¶ 12 and Exs. D and F; Hopp Decl. Exs. A and B.)

21.    Subsequent to the date that this lawsuit was filed, Langenfelder Marine has made intermittent payments to the Central Pension Fund to reduce the delinquency.  The Defendant made the following payments on the following dates:

| Date of Payment | Amount of Payment | Remittance Form Month |
|---|---|---|
| 12/27/07 | $10,479.50 | April 2007 |
| 01/30/08 | $10,346.00 | May 2007 |
| 03/03/08 | $13,945.50 | June 2007 |
| 04/18/08 | $18,093.00 | July 2007 |

(Fanning Decl. ¶ 13.)

22.    In addition to the delinquent contributions, Langenfelder Marine also owes liquidated damages to the Central Pension Fund in the amount of $20,188.70 pursuant to the terms of Section 4.5(b) of the Restated Agreement and Declaration of Trust, and Section 502(g)(2)(C)(ii) of ERISA.  29 U.S.C. § 1132(g)(2)(C)(ii).  (Fanning Decl. Ex. A.)

4

23.    The Defendant also owes 9% simple interest on all delinquent contributions pursuant to the terms of Section 4.5(c) of the Restate Agreement and Declaration of Trust, and Section 502(g)(2)(B) of ERISA.  29 U.S.C. § 1132(g)(2)(B).  (Fanning Decl. Ex. A.)

24.    The obligation to pay attorneys' fees and costs is established in Section 4.5(e) of the Restated Agreement and Declaration of Trust, and Section 502(g)(2)(B) of ERISA.  29 U.S.C. § 1132(g)(2)(B).  (Fanning Decl. Ex. A.)

25.    Plaintiff's attorneys have spent a total of 41.40 hours to bring this action against the Defendant.  (Hopp Decl. ¶ 6 and Ex. D.)  This is a reasonable amount time to investigate the Plaintiff's claims, research, draft and file the Complaint, attend the various court conferences, conduct discovery, respond to the Defendant's discovery requests, communicate with opposing counsel, and bring this dispositive motion.

26.    The reasonable hourly rate charged by Plaintiff's attorneys is $200.00 for attorney time resulting in a total attorneys' fee amount of $8,280.00.  (Hopp Decl. ¶ 6.)

27.    The Plaintiff has incurred reasonable costs in this matter in the total amount of $445.00.  (Hopp Decl. ¶ 9 and 10 and Exs. E and F.)

Dated:  June 23, 2008                                        Respectfully submitted,

                                                            **O'DONOGHUE & O'DONOGHUE LLP**
                                                            4748 Wisconsin Avenue, N.W.
                                                            Washington, D.C.  20016
                                                            (202) 362-0041 telephone
                                                            (202) 237-1200 facsimile

                                                            R. Richard Hopp, Bar No. 432221
                                                            rhopp@odonoghuelaw.com
                                                            *Attorney for Plaintiff*

176616_1

5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING,            :
                                  :

        Plaintiff,           :

                                    :

        v.                :     Civil Action No. 1:07-cv-2182-PLF

                                    :

LANGENFELDER MARINE, INC.,    :

                                    :

        Defendant.

### DECLARATION OF MICHAEL R. FANNING

I, Michael R. Fanning, hereby certify, declare and verify under penalty of perjury pursuant to 28 U.S.C. § 1746, in Washington, D.C., the following:

    1.     That I am the Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers.

    2.     That I am over the age of eighteen and competent to testify to the facts contained in this Declaration from my own personal knowledge.

    3.     I am authorized to execute this Declaration on behalf of the Trustees of the Central Pension Fund.

    4.     The Central Pension Fund is a defined benefit, multiemployer, employee pension benefit plan administered at 4115 Chesapeake Street, N.W., in the District of Columbia.

    5.     The Central Pension Fund is established and maintained according to the provisions of its Restated Agreement and Declaration of Trust. The Trustees act as fiduciaries and the plan administrator for the Central Pension Fund. A true and accurate copy of Article IV of the Central Pension Fund's Restated Agreement and Declaration of Trust is attached to this Declaration as Exhibit A.

6.    The Central Pension Fund provides retirement, disability, survivor and death benefits to employees working as operating engineers in various industries throughout the United States.

7.    Payments, called "contributions," are made to the Central Pension Fund by employers pursuant to the terms of various collection bargaining agreements entered into with Local Unions of the International Union of Operating Engineers. The collective bargaining agreements set forth the terms and conditions of employment for the employees covered by each agreement.

8.    Contributions are made by employers on a self-reporting basis. Generally, contributions are paid for each hour of work performed by an individual in work covered by a collective bargaining agreement at the rate set forth in applicable the collective bargaining agreement, but some employers contribute a percentage of their employees' gross pay.

9.    One employer obligated to make contributions to the Central Pension Fund under collective bargaining agreements is Langenfelder Marine, Inc. A true and accurate copy of the collective bargaining agreements entered into by Langenfelder Marine, Inc. with Intentional Union of Operating Engineers Local Union No. 25 is attached to this Declaration as Exhibits B and C.

10.    The collective bargaining agreements to which Langenfelder Marine, Inc. is bound provide that for every hour worked by an employee performing work under the agreement, Langenfelder Marine, Inc. was obligated to pay, in addition to wages, contributions to the Central Pension Fund. For all the hours worked relevant to this lawsuit, the amount Langenfelder Marine, Inc. was obligated to pay to the Central Pension Fund was $2.00 per hour.

11.    The number of hours worked by each individual during a given month is supplied to the Central Pension Fund by employers in a report called a "Remittance Form." Remittance Forms and contribution payments must be submitted to the Central Pension Fund on a monthly basis. The

total number of hours reported is then multiplied by the applicable contribution rate, resulting in the amount of contributions owed by the employer to the Central Pension Fund for a given month. A true and accurate copy of the Remittance Forms submitted to the Central Pension Fund for April though September of 2007 is attached to this Declaration as Exhibit D.

12.    Based on the Remittance Forms submitted by Langenfelder Marine, Inc. to the Central Pension Fund, the following contributions were owed:

| Month | Amount Owed |
|---|---|
| April 2007 | $10,479.50 |
| May 2007 | $10,346.00 |
| June 2007 | $13,945.50 |
| July 2007 | $18,093.00 |
| August 2007 | $21,800.00 |
| September 2007 | $26,279.50 |

13.    Langenfelder Marine, Inc. has made the following payments on the following dates to the Central Pension Fund, to reduce the amount it owes to the Central Pension Fund:

| Date of Payment | Amount of Payment | Remittance Form Month |
|---|---|---|
| 12/27/07 | $10,479.50 | April 2007 |
| 01/30/08 | $10,346.00 | May 2007 |
| 03/03/08 | $13,945.50 | June 2007 |
| 04/18/08 | $18,093.00 | July 2007 |

14.    In general, the Central Pension Fund provides monthly annuity payments to participants and beneficiaries who satisfy the eligibility requirements specified in the Plan of Benefits. Generally, benefits are based on a percentage of the amount of contributions paid into the

Fund by employers on behalf of the employee. For example, the Central Pension Fund generally calculates the amount of a normal monthly pension benefit by multiplying the amount of contributions paid into the Fund by a percentage called the "Benefit Accrual Rate." The current normal Benefit Accrual Rate is 3.0 percent. For example, an employee with $10,000.00 of total employer contributions over the course of his or her working career generally would be entitled to monthly pension benefit in the amount of $300.00.00 for his or her lifetime.

15. If a signatory employer, like Langenfelder Marine, Inc., fails to pay all contributions required for its employees, the Central Pension Fund is harmed. This is because upon application for retirement, a Central Pension Fund participant could present the Central Pension Fund with evidence of hours actually worked, (*i.e.* paystubs, tax documents or social security work records) and demand a pension benefit calculated upon all the contributions which should have been paid for those hours, regardless of the fact that the employer did not actually make the required contributions for that employee. Under the Plan of Benefits, the Central Pension Fund would be required to credit the participant for unpaid contributions related to all hours of service and pay a pension benefit to that participant accordingly.

16. Attached to this Declaration as Exhibit E is a true and accurate copy of a portion of Participant Basic Data Reports maintained by the Central Pension Fund for some of Langenfelder Marine, Inc.'s employees. Some personal identification information has been deleted. Credit for hours worked by employees under collective bargaining agreements is provided by the Central Pension Fund whether or not an individual is a union member.

17. Contributions and hours from unfunded Remittance Forms eventually are added to the electronic records of the Central Pension Fund, such as the Participant Basic Data Reports, once it is determined by the Fund Office that the reported, but unpaid, contributions are uncollectible.

4

That information would appear under the "Unpaid Hrs" column of the "ER Detail" page of the Participant Basic Data Report. As detailed above, hours worked by employees, but for which contributions have not been paid by the employer, are included by the Central Pension Fund in determining pension benefits the same as hours worked for which contributions were received.

18.    A true and accurate copy of an electronic mail message from Langenfelder Marine, Inc. to the Central Pension Fund dated October 8, 2007, is attached to this Declaration as Exhibit F.

19.    In addition to contributions in the amount of $48,079.50, Langenfelder Marine, Inc. also owes the Central Pension Fund the amount of $20,188.70 for liquidated damages, and $7,465.88 for interest on late contributions as of July 31, 2008. Interest will continue to accrue on the unpaid principle amount at the rate of $11.86 per day. These amounts are detailed on the chart attached as Exhibit G to this Declaration.

Dated: June 20, 2008
Washington, D.C.

Michael R. Fanning

176538_1

5

Exhibit A

# Restated Agreement

# and

# Declaration of Trust

# of the

# CENTRAL PENSION FUND

# of the

# International Union of Operating Engineers

# and

# Participating Employers

**JANUARY 16, 2004**

WHEREAS, there has heretofore been entered into an Agreement and Declaration of Trust, effective the 7th day of September, 1960, by and between the undersigned Employer Trustees and Employer Trustees who, together with the Successor Trustees designated in the manner hereinafter provided, created a pension fund as herein provided; and

WHEREAS, said Agreement and Declaration of Trust has heretofore been amended; and

WHEREAS, under Article X of said Agreement and Declaration of Trust, the Trustees have the power and authority to amend such Agreement and Declaration of Trust from time to time as therein provided; and

WHEREAS, it is determined to be desirable to amend said Agreement and Declaration of Trust and to restate the same so as to incorporate therein all of the amendments adopted heretofore or as part of this restatement;

NOW, THEREFORE, the Trustees, designated and in office, as such, have executed this Restated Agreement and Declaration of Trust as indicating their acceptance of the respective duties imposed upon them as Trustees under the terms of this Agreement, to read as follows:

WHEREAS, the International Union of Operating Engineers and certain Local Unions affiliated with the International Union have now and will hereafter have in effect agreements with certain Employers requiring payments by the Employers into a Trust Fund for the purpose of providing and maintaining benefits for certain Employees; and

WHEREAS, the International Union and each such Local Union and each Employer which accepts this Agreement and Declaration of Trust and agrees to be bound by the provisions hereof shall, upon acceptance by the Trustees, be deemed a party to this Agreement and Declaration of Trust; and

WHEREAS, to effect the aforesaid purpose it is desired to establish and maintain a Trust Fund which will conform to the applicable requirements of the Labor-Management Relations Act of 1947, as amended, the Employee Retirement Income Security Act of 1974, as amended, and qualify as a "qualified Plan" and as an "exempt Trust" pursuant to the International Revenue Code, Sections 401, 501(a) and other pertinent provisions thereof; and

WHEREAS, the said Trust Fund is to be known as the "Central Pension Fund of the International Union of Operating Engineers and Participating Employers"; and

WHEREAS, it is desired to set forth the terms and conditions under which the said Fund is to be established and administered; and

- 1 -

WHEREAS, the sums payable to the Fund as aforesaid, are for the purposes of providing pension benefits and other conventional forms of retirement, disability and related benefits as now are or may hereafter be authorized or permitted by law for eligible employees, their families, dependents and beneficiaries as determined hereunder; and

WHEREAS, the Trustees have been duly appointed in accordance with the provisions of this Agreement;

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements herein contained, it is hereby agreed as follows:

- 2 -

## ARTICLE IV

### Contributions and Collections

**Section 4.1 Employer Contributions.**

(a)     Each Employer shall make prompt contributions or payments to the Trust Fund in such amount and under the terms as are provided for in the applicable collective bargaining agreement in effect from time to time between the Employer or his bargaining representative and the Union or Local Union. An Employer may also be required to make contributions in such amount and under such terms as such Employer may be obligated, in writing, to make, provided that such contributions shall be subject to acceptance by the Trustees. The Employer agrees that such contributions shall constitute an absolute obligation to the Trust Fund, and such obligation shall not be subject to set-off or counter-claim which the Employer may have for any liability of the Union or Local Union, or of an Employee.

(b)     Contributions to the Fund shall be paid to the Trustees or to such depository as the Trustees shall designate, only by check, bank draft, money order or other recognized method of transmitting money or its equivalent, made payable to the order of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers. The payment of contributions shall be made periodically at such times as the Trustees shall specify by rules and regulations and such payment shall be accompanied by all information reasonably necessary to properly record such contributions in the Fund's records for each such Employee.

(c)     Each Employer shall be responsible only for the contributions payable by him on account of Employees covered by him, except as may be otherwise provided by law. Employer associations or groups shall not be responsible for the contributions, payments or other obligations of any other Employer, or otherwise.

(d)     **Work Outside Jurisdiction.** In the event an Employee employed by an Employer, as defined herein, shall perform work outside of the geographical jurisdiction of the Local Union, the Employer may continue to make payments to the Trust Fund and the Trustees may accept such payments.

**Section 4.2 Receipt of Payment and Other Property of Trust.** The Trustees or such other person or entity designated or appointed by the Trustees in accordance with Section 5.5 of Article V are hereby designated as the persons to receive the payments heretofore or hereafter made to the Trust Fund by the Employers. The Trustees are hereby vested with all right, title and interest in and to such moneys and all interest which may be accrued thereon, and are authorized to receive and be paid the same.

- 11 -

**Section 4.3 Collection and Enforcement of Payments.** The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint, or the Chief Executive Officer if one has been appointed and when directed by such committee or by the Board of Trustees, shall have the power to demand, collect and receive Employer payments and all other money and property to which the Trustees may be entitled, and shall hold the same until applied to the purposes provided in this Trust Agreement. They shall take such steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings as the Trustees in their sole discretion determine to be in the best interest of the Trust Fund for the purpose of collecting such payments, money and property, without prejudice, however, to the rights of the Union or Local Union to take whatever steps it deems necessary and wishes to undertake for such purposes.

**Section 4.4 Production of Records.** Each Employer shall promptly furnish to the Trustees or its authorized representative, on demand, the names of all such Employer's Employees, their Social Security numbers, each Employee's Earnings Records, the number of hours worked by each Employee and all Federal and State payroll tax returns, and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund and for no other purpose. The Trustees may, by their respective representatives, audit and examine the pertinent employment and payroll records of each Employer, as described above, at the Employer's place of business, whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund. The Union or Local Union shall, upon the request of the Trustees, promptly furnish information with respect to an Employee's employment status.

In addition, in the event the Employer does not maintain or otherwise does not have in his possession records of the number of hours worked by each Employee, the Employer agrees that in order to determine the number of hours for which contributions are required to be submitted to the Trust Fund, the Employee's gross wages shall be divided by the hourly wage scale set forth in the applicable collective bargaining agreement for such Employee's job classification.

**Section 4.5 Collection Costs.** In the event that upon audit made by the Trustees and/or upon other evidence it is found by the Trustees that an Employer has failed to make required Employer Contributions, the Trustees are authorized and empowered:

(a)    to impose and receive from such Employer all costs of the audit;

(b)    to assess and receive from such Employer as liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent, in that the failure of the Employer to make the required payment of Employer Contributions imposes additional burden and expense upon the Trustees in the collection thereof; in the administration of the Trust Fund, including but not limited to the

- 12 -

communication with said Employer; and, in addition thereto may cause a loss of benefits to employees, all of which are difficult of accurate ascertainment;

(c)    to assess and receive from such Employer the lost interest from the delinquent amounts, to be calculated at the rate of 9% simple interest;

(d)    to impose and receive from such Employer any amounts Trustees are required to pay for the benefit of an eligible Employee of such Employer, or an Employee who would be eligible except for the failure of such Employer to make required contributions in his behalf.

(e)    to impose and receive from such Employer all costs, audit expenses and attorneys fees incurred by the Trustees in enforcing the provisions hereof, whether by litigation or otherwise;

(f)    to require such Employer to make weekly deposits of Employer Contributions in an amount determined by the Trustees, based on objective standards, provided that the Trustees have given such Employer reasonable notice of such requirement for weekly deposits, the amount to be deposited, the date such deposits are due and the basis on which the weekly deposit is determined and required;

(g)    to require such Employer to furnish to the Trustees a bond, with reputable surety thereon,

    (1)    with the Trustees as obligees thereunder;

    (2)    in an amount, determined by the Trustees, consistent with the anticipated future obligations of such Employer;

    (3)    with notice provisions acceptable to the Trustees consistent with purposes of such bond.

**Section 4.6 Effect of Non-Payment.** Non-payment by any Employer, of any contribution or other moneys owed to the Fund shall not relieve any other Employer from his or its obligation to make required payments to the Trust Fund.

- 13 -

Exhibit B

# INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 25 MARINE DIVISION



*Oyster shell Dredging eff-1-1-2005 → 12-31-07*

## And

# LANGENFELDER MARINE, INC.



*180917*

**Effective:**

**January 1, 2005**

**To**

**December 31, 2007**

Langenfelder Maine/IUOE Local 25 FINAL

## INDEX

| Section # | TITLE | Page # |
|---|---|---|
| | Index | 2 |
| | Preamble | 4 |
| 1 | Territorial Zone and Bargaining Unit | 4 |
| 2 | No Lockouts | 4 |
| 3 | No Strikes | 5 |
| 4 | Hiring Hall | 5 |
| 5 | Union Shop and Check-off | 7 |
| 6 | Authorized Deductions into Plans | 8 |
| 7 | Ability and Qualifications of Employment | 8 |
| 8 | Company Officials | 9 |
| 9 | Scheduled Workweek and Overtime | 9 |
| 10 | Holidays | 9 |
| 11 | Work on Holiday | 10 |
| 12 | Payment of Wages | 10 |
| 13 | Transportation | 10 |
| 14 | Pre-Job Conference | 12 |
| 15 | Jury Duty and Death in Family | 12 |
| 16 | Subsistence | 12 |
| 17 | Flexibility | 12 |
| 18 | Wages and Classifications | 13 |
| 19 | Medical | 15 |
| 20 | Pension | 15 |
| 21 | Vacation | 15 |
| 22 | Annuity | 15 |
| 23 | Employees Quarters and Gear For Employees | 16 |
| 24 | Union Representatives | 17 |
| 25 | Employees of The Union | 17 |
| 26 | Shop Steward | 17 |
| 27 | Crew Boat | 18 |
| 28 | Arbitration Clause | 18 |
| 29 | Subcontracting | 18 |
| 30 | Legality | 19 |
| 31 | Landing Area | 19 |
| 32 | Loss of Personal Effects | 19 |
| 33 | Continuation of Benefits For Occupational Injuries | 19 |
| 34 | Equal Opportunity | 19 |
| 35 | Americans With Disabilities Act | 20 |
| 36 | Family Leave | 20 |

| 37 | Safety | 20 |
| 38 | Watch Rotation | 20 |
| 39 | Right of Recall | 20 |
| 40 | 2004 Barge Mounted Crane | 20 |
| 41 | Allocation of Wages | 21 |
| 42 | Full Understanding | 21 |
| 43 | Mandated Wage Reverter | 21 |
| 44 | Term Of Agreement | 22 |
|  | Signatory Page | 22 |
|  | **TOWING ADDENDUM** | 23 |
| 1 | Classifications and Day Rates | 23 |
| 2 | Towboat Incentive | 24 |
| 3 | Daily Rate Schedule/Holidays | 25 |
| 4 | Schedule Work Week | 25 |
| 5 | Benefit Plan | 25 |
| 6 | Direct Deposit | 26 |
| 7 | Food Subsistence | 26 |
| 8 | Watch Rotation | 26 |
| 9 | Day Rate and Break out Time | 26 |
| 10 | Employee Quarters | 26 |
| 11 | Gear For Employees | 27 |
| 12 | Maintenance and Cleaning | 27 |
| 13 | Letters of Service | 27 |
| 14 | Training and Licensing | 27 |
|  | Signatory Page Towing Addendum | 28 |

## AGREEMENT

### PREAMBLE

This AGREEMENT is entered into to prevent strikes and lockouts; to facilitate peaceful adjustment of grievances and disputes between the Company and the Union; to prevent waste, unnecessary and avoidable delays and the results through them to the Company of cost and expense and to the Union of loss of wages; to enable the Company to secure at all times sufficient forces of skilled workmen to provide as far as possible for the continuous employment of labor; to provide that employment hereunder should be in accordance with conditions and wages herein agreed upon, and by reason of this Agreement and the purposes of intent thereof, to bring about stable conditions in the industry, keep costs of work in the industry as low as possible consistent with fair wages and proper working conditions, as provided for hereunder; and further, to establish and set up the necessary procedure for amicable adjustment of all disputes or questions that may arise between the parties, so that the foregoing purposes may be brought about and accomplished.

It is agreed as follows:

## SECTION 1.  TERRITORIAL ZONE AND BARGAINING UNIT

This AGREEMENT shall cover all work performed by the COMPANY at its Love Point facility including oyster shell dredging work, aggregates handling, vessel repair maintenance and construction work performed by these employees.  The term "oyster shell dredging work" herein is understood to include, in addition to actual dredging operation, the operation of launches, scows, and tugboats, the crews of which are not covered by other collective bargaining Agreements, as of the date of this AGREEMENT, and other equipment, floating or otherwise used in connection with oyster shell dredging operations.  The term "oyster shell dredging work" shall also cover dredging at Love Point, MD.  If any dredge or equipment, on the effective date of this AGREEMENT, not within the territorial limits covered by this AGREEMENT, is brought within such territorial limits, the terms and conditions of this AGREEMENT will become applicable thereto, unless already covered by another collective bargaining Agreement.

## SECTION 2. NO LOCKOUTS

The Company agrees that during the life of this Agreement and during any period of arbitration as provided for in Section 28 hereof, there shall be no lockouts of the employees; provided, however, that this Section shall not be construed to prevent the suspension or termination of employment due to business conditions. The Company also agrees that it will notify the Union whenever another labor organization claims to represent the employees or any subdivision of employees.

## SECTION 3.  NO STRIKES

The Union agrees that during the life of this Agreement:

There shall be no picketing;

That there shall be no strikes or slowdowns by the employees;

The Union will cause no stoppage of work because of any labor dispute over which the Company has no control; There shall be no stoppage of work as a result of any jurisdictional dispute; and the Union further agrees that, during any period of arbitration as provided for in Section 28 hereof, there shall be no picketing, strikes, or slowdowns by the employees because of the question submitted to arbitration.

In the event that any employee or employees perform any of the acts prohibited by this Section without the approval of the Union, such violation shall be proper cause of discharge.  Violation by non-members of the Union shall not be deemed a violation by the Union, and the Company agrees not to attempt to hold the Union liable for such acts of non-members of the Union.

## SECTION 4.  HIRING HALL

In the employment of workers covered by this AGREEMENT, the following provisions shall govern:

(a) The UNION shall establish, maintain and keep current an open employment list for the employment of workers competent to perform the duties of classifications covered by this AGREEMENT. Such list shall be established, maintained and kept current on a non-discriminatory basis and shall not be based on, or in any way affected by UNION membership, UNION by-laws, rules, regulations, constitutional provisions, or any other aspect or obligation of UNION membership, policies or requirements.

(b) Whenever desiring to employ workers in the classifications specified in Section 18 of this AGREEMENT within the territorial zone specified in Section 1 of the AGREEMENT, the COMPANY shall call the UNION Hiring Hall and the UNION shall promptly refer to the COMPANY workers who are competent and physically competent to perform the duties of the classification or classifications needed by the COMPANY.  The referred workmen must be on the job site within 72 hours exclusive of Saturdays, Sundays, and Holidays.  If for any reason, the UNION is unable or fails to refer qualified and competent workers within seventy-two (72) hours as aforesaid, the COMPANY may obtain workers from any available labor source.

(c) The COMPANY has the right to reject any worker referred to it by the UNION, subject to the UNION'S right to grieve upon the same.

(d) The UNION shall refer to the COMPANY only workers whose names appear on the open employment list and, in so doing, shall be governed by the following criteria:

1. If the COMPANY requests from the open employment list a worker by name, he shall be referred by the UNION to the COMPANY and his failure to report at the time and place requested by the COMPANY shall be conclusive proof either that he is working elsewhere or that he refuses to accept the COMPANY'S employment. Whenever possible, the UNION will inform the COMPANY at the time of the COMPANY'S request for a worker by name, as to whether the worker is employed elsewhere or otherwise unavailable, so that the COMPANY will not have to wait for the 72-hour period to learn whether the worker is available. When the COMPANY requests the worker by name, he shall be deemed competent to perform the duties of his classification, subject to current physical examination, including pre-employment drug-use testing.

2. If the COMPANY does not request that a particular worker be referred to it to fill a particular vacancy as provided in subparagraph (1) above, the referral shall be by classes and priorities in the following order:

**First:** Workers competent and experienced in the performance of work in their classification and who have had employment experience with any company making contributions to the International Union of Operating Engineers Local 25, Marine Division Medical Fund. The order of referral within this class of workers, known as Experienced Class, shall be in priorities of registration of the applicant in the Hiring Hall.

**Second:** Workers competent and able to perform the work in the classification to be filled but who have had no employment experience with any company making contributions to the International Union of Operating Engineers, Local 25, Marine Division, Medical Fund. The order of referral within this class of workers, known as the Apprentice Class, shall be in priorities of registration of the applicant in the Hiring Hall.

(e) If a worker referred by the Hall leaves the COMPANY'S employ without notice within seven (7) calendar days of the start of his employment, the employer has the right to employ any replacement worker from any available source.

(f) If any individual files a written complaint with either the COMPANY or the UNION that he has been discriminated against in the application of the Hiring Hall provisions of this AGREEMENT, said complaint if not adjusted to the satisfaction of all parties within five (5) working days, shall be referred to arbitration as hereinafter set forth in Section 28 of this AGREEMENT. All complaints, in order to be subject to such arbitration, must be filed with either the COMPANY or the UNION within ten (10 days from the date of the alleged discrimination.

(g) Workers referred for employment shall be required at the time of hire to produce acceptable forms of identification for administrative purposes. Acceptable identification documents as illustrated for Immigration and Naturalization Service Form I-9 and its successors will be considered as appropriate for the purpose of this Agreement.

Langenfelder Maine/IUOE Local 25 FINAL

## SECTION 5.  UNION SHOP AND CHECK OFF

A. The Company agrees that as a condition of continued employment, all employees of the classifications covered by this Agreement shall become members of the Union within thirty-one (31) days after the execution of this Agreement and within thirty-one (31) days after being hired, whichever is later, and shall remain members of the Union while employed by the Company during the life of this Agreement. The Company is not obligated to take steps to enforce this provision, unless due notice is received in writing from the Union that an employee covered by this Agreement has refused to tender the initiation fee and dues uniformly required as a condition of becoming or remaining a member of the Union. In the event the Company receives such written notice, it shall investigate the matter and if the employee refuses to tender the said initiation fee and/or dues retroactive to the 30th day following the execution of this Agreement or the 30th day following the date of his employment, whichever is later, he shall be discharged forthwith.

B. Copies of Section 4 and 5 of this AGREEMENT shall be posted in their entirety and maintained by the UNION in conspicuous places in its Hiring Halls and by the COMPANY in conspicuous places where it maintains offices or equipment and where employees or applicants for employment have access.

C. The Company will deduct check off dues, assessments and initiation fees, each as certified by the Union as membership dues in the Union on the basis of individually signed voluntary check-off authorization cards on forms agreed to by the Company and the Union. Unless the Company is otherwise notified by letter from the Union, the only Union membership dues to be deducted for payment to the Union from the pay of the employee who has signed an authorization shall be the supplemental union dues consisting of the sum of: effective January 1, 2005, Forty-Cents (.40¢) for each hour worked under the terms of this collective bargaining Agreement from the effective date thereof.

D. Remittance will be made on or prior to the 20th day of each month. Such remittance will be made on forms that contain the necessary information and details as to date and hours of employment of employees covered by the terms of this Agreement.

The provisions of this Section shall be effective in accordance with and consistent with applicable provisions of Federal law.

## CHECK OFF AND AUTHORIZATION CARD

**LOCAL #25, MARINE DIVISION, I.U.O.E.**
SUPPLEMENTAL WORKING DUES CHECK-OFF AUTHORIZATION CARD

To _____ LANGENFELDER MARINE INC. _____
· (NAME OF COMPANY)                                                    (DATE)
I hereby irrevocably authorize _____ LANGENFELDER MARINE INC. _____
my employer, during the life of the present labor agreement, and from year to year thereafter, subject each year to written revocation by me, sent by certified mail, return receipt requested, to the UNION and the Employer, during the last two weeks of the month preceding the anniversary date of the Agreement, to deduct my initiation fee, change of classification fee, and monthly dues as specified by the I.U.O.E. Local 25, including supplemental Union working dues effective January 1, 2005, Forty-Cents (.40¢) per each hour worked and any other fees as specified by the I.U.O.E. Local 25 under the terms of the collective bargaining agreement. My initiation fee of $ _____ shall be paid at the rate of $ _____ per week for _____ weeks until my initiation fee is paid in full. Thereafter, my dues per quarter shall be in the amount of $ _____. I further authorize my employer to deduct $_____ per week for _____ weeks until my current delinquency in the amount of $ _____ is paid in full.

_____
(SOCIAL SECURITY NUMBER)

_____
(CLASSIFICATION)

_____
(EMPLOYEE PRINT)

_____
(EMPLOYEE SIGN)

## SECTION 6.  AUTHORIZED DEDUCTIONS INTO PLANS

If any dredge or equipment within the territorial jurisdiction encompassed by this AGREEMENT is deployed to an area not covered by this AGREEMENT, the COMPANY agrees to notify the UNION.  If the deployment is to an area not covered by other collective bargaining Agreements with the International Union of Operating Engineers, Local 25, Marine Division which provide for medical, pension and annuity payments to the International Union of Operating Engineers, Local 25 Medical and Annuity Plans or the International Union of Operating Engineers Central Pension Fund, any employee accompanying the dredge or equipment shall have the right to authorize a deduction from his wages to be paid into such Plans.  It shall be the responsibility of the COMPANY to notify the employee of his rights to have such deductions made and the employee is to furnish the COMPANY with a signed authorization for deduction stating the amounts to be deducted

## SECTION 7.  ABILITY AND QUALIFICATION OF EMPLOYMENT

The Company shall be the judge as to the ability and qualifications for employment, and nothing contained in this Agreement shall in any way abridge the Company's right to discharge an unsatisfactory employee, subject to the right of the Union to grieve the issue.

## SECTION 8.  COMPANY OFFICIALS

No Company official shall regularly do repair work, handle tools, pull levers, or operate a derrick boat or any other equipment so as to deprive men covered by this Agreement from work, i.e., such work shall not be their regular work over any extended length of time.

## SECTION 9.  SCHEDULED WORK WEEK AND OVERTIME

The regular scheduled workweek for all employees covered by this AGREEMENT shall commence midnight on Sunday.  All work done in excess of forty (40) hours in any work week shall be overtime and shall be compensated for at one and one-half (1-1/2) times the regular rate of pay except that in work weeks in which a paid holiday occurs, and an employee is not required to work on a holiday he shall be compensated at time and one-half (1 ½ ) for all hours worked over thirty-two (32) hours.  When an employee works on a holiday and also receives holiday pay, overtime will be calculated on all hours worked over forty-hours (40), provided that the employee is otherwise qualified to receive holiday pay.  Sunday work shall be compensated for at time and one-half (1-1/2) times the regular rate of pay.  There shall be no pyramiding of any of the overtime or premium payments that are provided for in this contract. An employee called out for duty on any given day shall be credited with no less than four (4) hours working time plus subsistence, less late time; if the call out requires more than four (4) hours' work, the employee shall be credited with no less than eight (8) hours' working time.  In the event the dredge is shut down, and the employee is laid off, wages will be paid up through the day his employment is terminated.

The COMPANY, when possible, shall give employees twenty-four (24) hours' advance notice of layoff because of a forthcoming permanent tie-up of equipment.

The Company shall notify employees one week in advance in the event that the Company implements regular recurring scheduled overtime.

The COMPANY and the UNION agree that a modified work schedule may be mutually agreed to in order to accommodate a particular job and/or to allow employees more time off.

## SECTION 10.  HOLIDAYS

Holidays under this AGREEMENT are as follows:

New Year's Day                     Memorial Day
Presidents Day                      Labor Day
Independence Day                 Thanksgiving Day
Christmas Day                       Veterans' Day
Good Friday

If any holiday shall fall on a Sunday, the following Monday shall be observed as the holiday, if the custom and public policy of the locality where the dredge is working so dictates. Furthermore, each full-time employee with sixty (60) working days' service shall be entitled to one (1) extra day's pay at the time of his termination for lack of work due to cessation of dredging operations; Christmas holiday shutdown of two (2) weeks or less is excluded. In work weeks in which a paid holiday occurs, and an employee is not required to work on a holiday he shall be compensated at time and one-half (1 ½ ) for all hours worked over thirty-two (32) hours. When an employee works on a holiday and also receives holiday pay, overtime will be calculated on all hours worked over forty-hours (40),, provided that the employee is otherwise qualified to receive holiday pay.

## SECTION 11.  WORK ON HOLIDAY

If any employee is not required to work on any holiday, he shall be paid eight (8) hours straight-time wages for such holiday. If any employee is ordered to perform work on a holiday and such employee fails to report for work and to perform the work required, then he shall receive no pay for any such holiday. Any employee required to perform work on a holiday set forth in Section 10 hereof shall be compensated at his regular rate of pay for hours worked, which shall be a minimum of eight (8) hours unless the employee leaves work of his own volition, plus eight (8) hours' pay for the paid holiday. In work weeks in which a paid holiday occurs and an employee is not required to work on a holiday he shall be compensated at time and one-half (1 ½ ) for all hours worked over thirty-two (32) hours. When an employee works on a holiday and also receives holiday pay, overtime will be calculated on all hours worked over forty-hours (40), provided that the employee is otherwise qualified to receive holiday pay. In order to receive holiday pay, an employee must work the scheduled workday prior to and the scheduled workday immediately after the holiday.

## SECTION 12.  PAYMENT OF WAGES

All wages under this Agreement shall be due and payable on the job every week. Wages shall be paid within six (6) calendar days of the end of the pay week. If the Company changes the pay date, it shall give the Union and the employees at least fourteen (14) days' notice of that change and shall not increase the hold back more than one (1) day in any one week. If, for any reason, the Company terminates the services of an employee, the accrued wages of such employee shall be paid to him as soon as possible after the termination of his employment.

## SECTION 13.  TRANSPORTATION

A.    Any worker referred from the Hiring Hall will receive the following transportation allowance which will be payable after fourteen (14) days on the payroll. If a payment of the allowance is made in advance of the fourteenth day, such payment shall be deducted from the employee's final pay in the event that the employee separates from the Company's employ prior to completing fourteen days (14) days on the payroll.

1.   Job site greater than 100 miles and less than 200 miles from the employee's home address: $100.00.

2.   Job site greater than 200 miles from employee's home address: $200.00.

This payment will be a one time only payment to an individual employee and will not be paid to an individual employee a second time. The same transportation allowance will be paid for return from the job site at termination of employment unless the employee quits of his own volition or is discharged for cause. This "return to home" transportation allowance will also be a one time only payment to an individual employee, and will not be paid to an employee a second time unless service has been interrupted by a layoff of more than thirty (30) days.

In addition to base subsistence described in Section 16, unloading crews who are required to provide their own transportation and who are temporarily assigned to work at a remote location more than fifty (50) miles from the Company's Love Point Yard and also more than fifty (50) miles from the employee's home, shall receive a daily mileage travel subsistence measured from the employee's home to the remote location, as set forth by the IRS on May 1st of each year and reimbursement of receipted tolls. This daily mileage travel subsistence will not be payable if the work location becomes the employee's regular place of work within the meaning of the IRS regulations.

The payments described in this subsection "A" have no application to employees recurrently employed and re-employed by the COMPANY or to employees laid off at Christmas shutdown or recalled after Christmas shutdown.

B.   Currently employed maintenance and other employees regularly assigned to the yard who are required to travel form home to report to another job site more than 15 miles farther than his/her regular commute to the yard while traveling in his personal vehicle, shall receive a transportation mileage allowance as set forth under the IRS Code for the additional mileage over his/her normal commute to the yard. Each temporary reassigned employee shall receive the applicable wage rate for the appropriate jurisdictional agreement.

C.   Maintenance employees required to travel from the yard during his/her normal working hours to another site after reporting to the yard shall remain on the payroll while traveling to the site form the yard that day and receive the IRS mileage allowance while traveling in his/her personal vehicle, for the mileage from the yard to the site on the first day of transfer. Upon return to the yard or his home on the last day of the assignment he shall receive the additional mileage (mileage farther than the employee's usual commute) to return to the yard or home.

D.   Maintenance and repair employees regularly assigned to the yard assigned to perform repairs to equipment on a job site that requires overnight stay shall be reimbursed for reasonable (pre-approved) lodging expenses and receive a daily subsistence allowance of fifteen dollars ($15.00) while working on the repairs.

E.   Current employees regularly assigned to the yard, but transferred to the crew (non-maintenance) of a project under the jurisdiction of the Standard Northern or Southern Agreements shall receive the transportation and subsistence allowance of the governing Agreement.

## SECTION 14.  PRE-JOB CONFERENCE

It is agreed that if the nature of a COMPANY'S operation is such that it requires a pre-job conference, the Business Manager of the UNION and the COMPANY shall agree to such pre-job conference, which shall be held between the Business Manager or his designee and designated COMPANY official at a mutually agreeable time and place before the commencement of each job.

## SECTION 15.  JURY DUTY AND DEATH IN FAMILY

**A.**  Any employee who is called for jury duty, whether State or Federal, and serves in such capacity shall be paid the difference between the compensation for jury duty and his regular rate of pay based on a forty (40) hour workweek.  This Section shall not require pay for more than two (2) weeks in any one calendar year.

**B.**  For employees who have worked for the Company for Ninety (90) days during the 365 days preceding the date of death and who are employed on the date of death, the Company shall grant a maximum of two (2) days off with pay in case of death in the employee's immediate family, and the immediate family includes grandmother, grandfather in addition to spouse, child, mother father, sister, brother, provided those days are regular scheduled work days. A death certificate or other satisfactory proof of death must be submitted to the Employer.

## SECTION 16.  SUBSISTENCE

Base Subsistence:   Effective January 1, 2005, subsistence allowance of Thirteen Dollars ($13.00) per day.  For subsistence payment, a day worked shall be defined as any day that an employee works four or more hours.  If an employee works less than four hours, he or she will receive no subsistence for that day.  Employees who drive COMPANY vehicles or receive transportation in COMPANY vehicles to and from home or other meeting places shall receive the daily subsistence pay, except that employees who are personally assigned a Company vehicle for purposes of transportation shall not receive daily subsistence allowance.  Employees who receive reimbursement for travel expenses or receive hotel and meal allowances shall not receive subsistence for the days they receive hotel and/or meal allowances.

## SECTION 17.  FLEXIBILITY

Nothing contained in this AGREEMENT shall be construed as preventing the COMPANY from assigning any of its employees to any available position; provided, however, that if any employee is temporarily assigned to another position and if he works in such position for a total of more than one (1) hour in any one eight hour shift, he shall be paid the same rate of pay for the total time he works in such position that an employee regularly assigned to such position would have received, if such payment does not result in a reduction of pay.  This section shall not apply to occasions when a reduction in work eliminates an employee's position and that employee is offered another position at a lower rate of pay.  Nothing in this section shall be construed to limit the Company's right to reassign positions and individuals on a day-to-day basis in the unloading crews.

This section shall not apply when an employee is given the opportunity for training purposes to work at a higher-rated position.

Workers assigned to the Love Point Yard, dredges, tugs, scows, and other attending plant shall not displace workers assigned to another piece of equipment.

## SECTION 18. WAGES AND CLASSIFICATIONS

It is mutually agreed that the classifications and hourly rates of pay for all Love Point Yard and oyster shell dredging work, aggregate handling, vessel repair, maintenance and construction work carried on by the COMPANY shall be as hereinafter set forth:

| CLASSIFICATION | ANNUITY CLASS | 01/01/04 | 01/01/05 | 01/01/06 | 01/01/07 |
|---|---|---|---|---|---|
| *Crane Operator | A | N/A | 18.50 | 18.87 | 19.25 |
| Foreman | A | 17.54 | 18.50 | 18.87 | 19.25 |
| Dredge Captain | A | 16.53 | 16.86 | 17.20 | 17.54 |
| Welder/Fabricator ** | A | 17.10 | 17.44 | 17.79 | 18.15 |
| Welder 1st Class | A | 16.53 | 16.86 | 17.20 | 17.54 |
| Welder 2nd Class | B | 14.50 | 14.79 | 15.09 | 15.39 |
| Welder Helper | B | 11.16 | 11.38 | 11.61 | 11.84 |
| Mechanic (previous Engineer) | A | 16.53 | 16.86 | 17.20 | 17.54 |
| Mechanic B | B | 14.50 | 14.79 | 15.09 | 15.39 |
| Loader Operator | B | 14.85 | 15.15 | 15.45 | 15.76 |
| Bobcat Operator | B | 13.39 | 13.66 | 13.93 | 14.21 |
| Production Excavator Operator * | A | N/A | 15.85 | 16.17 | 16.49 |
| Excavator Operator | A | N/A | 15.15 | 15.45 | 15.76 |
| Chief Engineer | A | 17.10 | 17.44 | 17.79 | 18.15 |
| Leverman | A | 16.53 | 16.86 | 17.20 | 17.54 |
| Engineer | A | 16.53 | 16.86 | 17.20 | 17.54 |
| Welder (Dredge) | A | 16.53 | 16.86 | 17.20 | 17.54 |
| Tug Master (Tending Dredge) | A | 16.53 | 16.86 | 17.20 | 17.54 |
| Boat Captain (Tending Dredge) | A | 15.29 | 15.60 | 15.91 | 16.23 |
| Barge Loader | B | 14.61 | 14.90 | 15.20 | 15.50 |
| Pump Captain / Monitor Operator | B | 14.61 | 14.90 | 15.20 | 15.50 |
| Mate | B | 13.36 | 13.63 | 13.90 | 14.18 |
| Oiler | B | 13.36 | 13.63 | 13.90 | 14.18 |
| Deckhand | B | 12.42 | 12.67 | 12.92 | 13.18 |
| Scowman | B | 12.42 | 12.67 | 12.92 | 13.18 |

\*    Operators in possession of a valid CCO Certificate will receive an additional Twenty-five Cents (.25¢) per hour added to the straight-time rate for all hours worked.

\*\*    Qualifications to be determined by Langenfelder Marine.

The Company and the Union have drafted definable standards (attached hereto) applicable to the relevant classifications (promotions are not automatic simply upon the attainment of additional skills but depend also on the availability of a vacancy in a particular job classification).

The UNION and the COMPANY agree that certain apprentice level classifications of, with less than ninety (90) days or five hundred (500) hours of service comes under this AGREEMENT, whichever comes first, that have not reached a skilled level required by the employers for the performance of work in accordance with the classification. The hours of service shall be computed upon the hours of employment as reported to Local 25 through the Medical and Pension Funds. The following wage rates shall apply to this class of employee:

| CLASSIFICATION | Annuity Class | 01/01/05 | 01/01/06 | 01/01/07 |
|---|---|---|---|---|
| Deckhand | B | $10.71 | $10.92 | $11.14 |

## CONSTRUCTION RATES

Rates for outside construction work (does not include any work performed at Love Point terminal, ship loading or unloading, or material handling.

| CLASSIFICATION | ANNUITY CLASS | 01/01/04 | 01/01/05 | 01/01/06 | 01/01/07 |
|---|---|---|---|---|---|
| *Derrick Oper. (100 ton & over) | A | N/A | 19.00 | 19.38 | 19.77 |
| *Derrick Oper. (99 ton & under) | A | N/A | 18.50 | 18.87 | 19.25 |
| Forman (Deck Capt.) | A | 17.84 | 18.50 | 18.87 | 19.25 |
| Welder | A | 16.99 | 17.33 | 17.68 | 18.03 |
| Engineer | A | 16.99 | 17.33 | 17.68 | 18.03 |
| Mate | A | 14.77 | 15.07 | 15.37 | 15.68 |
| Deckhand | B | 13.66 | 13.93 | 14.21 | 14.49 |

* Operators in possession of a valid CCO Certificate will receive an additional Twenty-five Cents (.25¢) per hour added to the straight-time rate for all hours worked.

## SECTION 19.  MEDICAL

The COMPANY, as of January 1, 2005, shall contribute to Local 25, Marine Division, International Union of Operating Engineers Medical Fund established by an Agreement and Declaration of Trust entered into as of the 1st day of January, 1967, the sum of Three-dollars and Fifteen-cents ($3.15) per hour for each hour worked, effective January 1, 2006, Three-dollars and Forty-five cents ($3.45) per hour for each hour worked, effective January 1, 2007, Three-dollars and Seventy-five-cents ($3.75) per hour for each hour worked by its employees covered by this collective bargaining AGREEMENT.  The Company shall be bound by all of the provisions of said Agreement and Declaration of Trust as the same now exists or may be hereafter amended by the parties thereto.  In the event such contributions are not needed to sustain the Fund of Local 25, the UNION reserves the right to allocate such contributions to wages or other benefit Funds as it deems necessary.

## SECTION 20.  PENSION

The Company, as of January 1, 2005, shall contribute to the International Union of Operating Engineers Central Pension Fund, the sum of One-dollar and Fifty-cents ($1.50) per hour for each hour worked by its employees covered by this collective bargaining AGREEMENT; effective January 1, 2006, One-dollar and Seventy-five Cents ($1.75) per hour for each hour worked by its employees covered by this collective bargaining AGREEMENT effective January 1, 2007, Two-dollars ($2.00) per hour worked by its employees covered by this Agreement.

The COMPANY and the UNION agree that contributions to the International Union of Operating Engineers Central Pension Fund shall be based upon the terms of the merger agreement between the International Union of Operating Engineers Central Pension Fund and the International Union of Operating Engineers, Local 25 Pension Fund, and the terms of the governing instruments of the International Union of Operating Engineers Central Pension Fund.

## SECTION 21.  VACATION

The COMPANY, as of January 1, 2002, shall contribute to Local 25, Marine Division, International Union of Operating Engineers Vacation Plan, established by an Agreement and Declaration of Trust entered into as of the 1st day of October, 1962, seven percent (7%) of the straight time rate multiplied by the total hours worked, for the purpose of assuring each and every employee covered by this AGREEMENT an equitable vacation pay, irrespective of the number of employers for whom he has performed work.

## SECTION 22.  ANNUITY

The Company shall contribute to I.U.O.E., Local 25 Marine Division, Annuity Fund, established by an Agreement and Declaration entered into of the first day of October 1, 1990, the following sums for each hour worked by its employees covered by this collective bargaining Agreement.

**Effective January 1, 2004:**

**For Classification "A":** The sum of One Dollar ($1.00) for each straight-time hour of employment and One Dollar Fifty Cents ($1.50) per hour for each time and one-half (1-1/2) hour of employment.

**For Classification "B"** (Local 25 "C": ) The sum of Eighty Five Cents ($.85) for each straight-time hour of employment and One Dollar Twenty-seven and one   half Cents ($1.28) per hour for each time and one-half (1-1/2) hour of employment.

**CONTRIBUTION DELINQUENCY:**  In the event that the COMPANY should become delinquent in its reports and payments to the Medical, Pension, Vacation, and Annuity funds or any successor funds, the UNION shall have the right to withhold employees covered by this AGREEMENT from the COMPANY, and the COMPANY will, nevertheless, be obligated to continue the employee's wages at the rates listed in this collective bargaining AGREEMENT until such time as the delinquent reports and payments have been made.

## SECTION 23.  EMPLOYEES QUARTERS AND GEAR FOR EMPLOYEES

It is understood that all employees covered by this Agreement shall be provided with suitable quarters in which to change their clothes.  Suitable quarters are defined as: an area with adequate heating, locker storage space, sitting area large enough to accommodate the crew for consumption of meals and portable sanitary waste facilities will be provided.

The COMPANY shall provide all supplies for the making of coffee. The COMPANY agrees to furnish the employees working outside in inclement weather with raincoats, rain hats, and boots, which equipment must be returned to the Company in the same good order and condition as issued, normal wear and tear excepted.

If any employee fails to return any or all of the said equipment issued to him, he will be charged for same, and the amount will be deducted from his wages due. The COMPANY agrees to furnish and replace welder's hoods, gloves, goggles, hard hats, and life jackets that become unserviceable due to use on the job.  No employee will be required to furnish any tools.

The COMPANY shall provide clean potable water at all times.

The COMPANY will provide any future safety items required by the COMPANY'S Safety Department, which is not a requirement as of the date of execution of this AGREEMENT.

## SECTION 24.  UNION REPRESENTATIVES

The Company agrees that it will allow accredited Business Representatives of the Union and the Medical, Pension, Vacation and Annuity Plans or the International Union of Operating Engineers Central Pension Fund access to the plant at all time during working hours to perform official Union business, and such representatives may use the Company's transportation facilities from shore to plant.  The Union agrees that such representatives will not interfere with any of the Company's employees while at work.

## SECTION 25.  EMPLOYEES OF THE UNION

The COMPANY recognizes and agrees that the International Union of Operating Engineers, Local 25, Marine Division, Medical Fund, Vacation Plan and Annuity Plan, or the International Union of Operating Engineers Central Pension Fund, in addition to providing coverage for employees within the classifications set forth in this collective bargaining AGREEMENT, has covered and will cover those Officers, Business Agents and Employees of the UNION for whose benefits the UNION pays employer contributions in the same amounts as are contributed by COMPANY herein and other contributing employers pursuant to the provisions of Sections 19 (Medical), 20 (Pension), 21 (Vacation) and 22 (Annuity) of this AGREEMENT.

## SECTION 26.  SHOP STEWARD

The UNION shall have the right to appoint two (2) Shop Stewards from among the employees in the unit.  One Shop Steward for the Yard and one for the Boats.  The Shop Steward shall be notified when a new man is put to work and will be notified when a man is laid off.  The Shop Steward shall receive an additional Twenty-Five Cents ($.25) per hour.

The COMPANY will recognize a working employee designated by the UNION to act as Shop Steward on the shell operation for the purpose of processing job site grievances arising from the terms of this bargaining AGREEMENT.  The Shop Steward shall have access to the job superintendent at all times and shall be permitted a reasonable amount of working time necessary to present grievances, and to assist in procuring crews.

When there is a reduction in the work forces during periods of reduced employment, the Shop Steward shall be the last employee within the bargaining unit to be laid off, and he will be the first employee to be recalled when work resumes, provided he can perform the work.

The Shop Steward shall be permitted to attend not more than eight (8) meetings per year called by Local 25, Marine Division, International Union of Operating Engineers, without loss of pay or subsistence.

The COMPANY recognizes that the UNION has given the Shop Steward authority to adjust, with the superintendent or other person in charge of the Plant or Dredge, differences that arise on the Dredge or at the Plant. Differences not so settled shall be referred to the UNION Business Representative and such person as the COMPANY may designate.

## SECTION 27.  CREW BOAT

The COMPANY before the beginning and at the close of each shift agrees to provide a suitable crew boat to convey the crew from the Dredge or Plant to the nearest shore point.  On such projects where an open crew boat would be used, the COMPANY will so advise the UNION and/or discuss the matter at any pre-job conference that is held. There will be no riding time pay for the crew boat trips to and from the Dredge at the commencement and at the end of each shift.

Employees assigned to the Dredge effective January 1, 2005, will receive a subsistence allowance of forty-dollars ($40.00) per day on the days that they are assigned to the Dredge.  This provision does not apply to employees already on the payroll while riding to and from the Dredge, i.e., repair personnel or relief already on the payroll.

## SECTION 28.  ARBITRATION CLAUSE

Any and all disputes relating to the interpretation of any clause of this Agreement or any alleged violation thereof shall be written notice and be referred to arbitration.  The Board of Arbitration, which shall meet at a place mutually agreeable to the Company and the Union, shall be composed of one representative appointed by the Company and one representative appointed by the Union. All appointments will be made within seventy-two (72) hours (Sundays and holidays excluded) after receipt of written notice to arbitrate. If the Board of two (2) cannot agree on a Chairman, then application shall be made to the Federal Mediation and Conciliation Service for a list of arbitrators, and the Board of two (2) shall select the Chairman from among the list of arbitrators provided by the FMCS pursuant to alternate striking.  The decision of the Board of two (2), or the decision of a majority of the Board of three (3), shall be final and binding. It is the intention of the parties that the, decision of the Board of Arbitration shall be given in writing within ten (10) days after the close of the arbitration.

The COMPANY and the UNION shall bear the expense of their respective appointees to the Board and shall equally share the expense of the Chairman of the Board.

## SECTION 29.  SUBCONTRACTING

The Company, to the extent that it is engaged in on-site construction work, agrees that it will not sublet any work coming under the jurisdiction of Local 25, Marine Division, and International Union of Operating Engineers, AFL-CIO, to any contractor who is not a signatory to an agreement with the aforesaid Local Union, except where tugboats satisfactory to the Company cannot be furnished by contractors who are signatory to an agreement with the Union.  Then, the Union and the Company agree to discuss the matter so that the Company may sublet to a contractor who can fulfill the requirements. The Company, in addition to the foregoing, further agrees that it will not subcontract any work to any person, firm or corporation which does not observe the wages, hours and work conditions established by labor unions having jurisdiction over the type of work to be performed.

## SECTION 30.  LEGALITY

It is mutually agreed that if the adoption of any State or Federal legislation or regulation conflicts with or is contrary to any of the provisions of this Agreement, negotiations will be opened to make the necessary adjustments in the Agreement, but the negotiations will be confined to changes in existing laws or regulations.

## SECTION 31.  LANDING AREA

Where a landing area is in regular use by the Company, a suitable shanty, when possible, is to be provided where the crew awaiting the change of crews can be protected in case of inclement weather.  When possible, the landing area should be adequately lighted.

## SECTION 32.  LOSS OF PERSONAL EFFECTS

Where crew members are assigned to live on board vessels, if the personal effects of an employee becomes a total loss because of fire on, or sinking of, the equipment on which he is employed, the employee shall be paid by the COMPANY the sum of $300.00 in full compensation of such loss, whether or not the loss is greater or less than $300.00. If the personal effects are damaged but not totally lost, because of fire on or sinking of the equipment on which he is employed, the employee shall be paid by the COMPANY a sum equal to the fair amount of such damage, but not to exceed $300.00. Payment of the above amount shall be made to the employee within sixty (60) days of the loss. No payment shall be made, however, if the employee himself is responsible for the fire or the sinking.

## SECTION 33.  CONTINUATION OF BENEFITS FOR OCCUPATIONAL INJURIES

The COMPANY agrees to continue contributions for a period not to exceed ninety (90) calendar days, to the Local 25 Medical and Pension Funds or the requirements of any successor funds for an employee who becomes unemployed because of occupational injuries or occupational illness covered by the appropriate governmental agency.

## SECTION 34.  EQUAL OPPORTUNITY

During the term of this Agreement, neither party shall discriminate against any employee or applicant for employment because of race, color, sex, age, religion, national origin or Union membership.  This nondiscrimination policy shall include, but not be limited to, the following: employment, promotion, upgrading, transfer, layoff, demotion, termination, rates of pay, forms of compensation, recruitment or recruitment advertising and selection for training.   However, notwithstanding anything to the contrary in this Section, no one under the age of eighteen (18) shall be eligible for employment.

The Company and the Union agree that Langenfelder Marine, Inc. Equal Opportunity program shall be considered part of this Agreement.  The Company will make copies available upon request.

## SECTION 35.  AMERICANS WITH DISABILITIES ACT (ADA)

The Company agrees that it shall not discriminate against employees on the basis of a physical or mental disability.  The Union agrees that employees dispatched from the Hiring Halls will be qualified to perform the required shipboard duties.  The parties agree that, in the event an employee suffering from a disabling condition requests an accommodation to enabling him/her to perform essential functions aboard the vessel, every reasonable effort will be made to accommodate the employee. Such accommodation will not, however, be required if it would create an undue hardship or would represent a direct threat to safety or well being of the Company, the employee requesting the accommodation or other crew members.

## SECTION 36.  FAMILY LEAVE

The parties hereby agree that the Company will comply with the provisions of the Family and Medical Leave Act of 1993, which establishes minimum standards for family and medical leave. The Company further agrees to incorporate the provisions of the Act in their Company policy and make said policy available upon request.

## SECTION 37.  SAFETY

The COMPANY agrees to establish program to educate its employees regarding safety issues and safe working practices.

## SECTION 38.  WATCH ROTATION

If more than one (1) watch is employed, the watches shall be rotated on a regular basis as mutually agreed between the COMPANY and the UNION.  Any employee not relieved at the end of his watch shall remain on watch until properly relieved, and shall notify his Captain immediately and the Shop Steward as soon as possible.

## SECTION 39.  RIGHT OF RECALL

If the Company has no intention of recalling an employee, the Company shall notify the Union at the time of layoff, that the employee will not be recalled.

## SECTION 40.  2400 BARGE MOUNTED CRANE

The respective classifications and rates contained in standard NORTHERN and SOUTHERN AGREEMENTS shall apply to men assigned by the COMPANY to the "2400" Barge Mounted Crane while performing dredge work covered by the respective NORTHERN and SOUTHERN AGREEMENTS.  This Section shall not apply to shell dredging, shell planting, reef construction, aggregate handling, or aggregate dredge-related work.  The term "reef construction" is defined as those projects integrated into habitat restoration projects unless those projects are Posted Wage Rate Projects in which case the Company agrees to observe the Davis-Bacon Act unless it results in an employee's reduction in pay.

## SECTION 41.  ALLOCATION OF WAGES

The UNION reserves the right to allocate a portion of the negotiated wage increases to any of the Fringe Benefit Plans, as it deems necessary.


## SECTION 42.  FULL UNDERSTANDING

It is mutually agreed that this AGREEMENT covers the entire understanding between the Parties and that this AGREEMENT shall not be modified or changed except by mutual consent.


## SECTION 43.  MANDATED WAGE REVERTER

1.  In the event that the employer bids on projects subject to Davis-Bacon or other minimum wage rate determinations, the wage rates so posted shall apply for the duration of the project in lieu of the wage rates in this AGREEMENT.  In no case shall the employee receive less than eighty-five percent (85%) of the wage rates set forth in the AGREEMENT.  Benefits as set forth in this AGREEMENT will remain unchanged.

2.  It is recognized by the parties that, in areas covered by this AGREEMENT, the construction market has encountered strong competition.  In those areas where there are no wage rate determinations, it is in the interest of the Employer and the Union to cooperate so that the collective bargaining employer may compete more effectively.  It is agreed that under such conditions, the Employer and the Union will meet to negotiate wage rates that will be applicable on a job-by-job basis.

## SECTION 44.  TERM OF AGREEMENT

This AGREEMENT shall become effective on January 1, 2005 and shall continue in force and effect until December 31, 2007, and from year to year thereafter unless either of the parties shall notify the other in writing, giving at least sixty days notice prior to January 1, 2008, or prior to January 1st of any year for which it may have been automatically renewed, that it desires to terminate or modify this AGREEMENT.

**SIGNATORY PAGE**

**ON BEHALF OF THE COMPANY:**

Langenfelder Marine, Inc.

_____
James R. Matters
President


_____
Attest


12/16/05
_____
Date

**ON BEHALF OF UNION:**

International Union of Operating
Engineers, Local 25, Marine Division

_____
Ernest D. Whelan
President and Business Manager


_____
Attest:


12/14/05
_____
Date

## TOWING ADDENDUM

This Addendum to the Agreement by and between International Union of Operating Engineers, Local 25 ("the Union") and Langenfelder Marine Inc. ("the Company") is intended to address the issue of work performed by the Company outside the dredging industry. This area of marine trade is not encompassed in the Northern Agreement. This Towing Addendum applies to all aggregates and shell dredging towing, and shall not be limited to any geographic region or body of water. Therefore, it is the intent of this Addendum to use the same contract personnel, with the Company's equipment, to perform duties in connection with the towing.

This Addendum shall not apply when the Company performing construction work that is covered by a prevailing wage law and the prevailing wages are in excess of the rates set forth below.

## SECTION 1.     CLASSIFICATION AND DAY RATES

A. All tugs over 1,000 horsepower will be crewed with two 12-hour watches per day, as follows:

Master or relief Captain, Mate, Engineer and 2 deckhands for a total of 5.

On tugs over 1,000 horse power, the Company may use a four-man crew (consisting of a master, captain, an engineer and deckhand on tugs with quarters for only four men and for tows up to 12 hours in duration one-way. On tows of less than 12 hours total duration in any 24-hour period, the four-man crew shall consist of one master an engineer and two deckhands.

The COMPANY and the UNION agree to discuss crew size on specific boats assigned to specific jobs/projects or geographic areas.

On tugs under 1,000 horsepower, the Company may use a three-man crew (consisting of a master, captain, and deckhand) for tows up to 12 hours in duration one-way. On tows of less than 12 hours total duration in any 24-hour period, the three-man crew shall consist of one master, one engineer and one deckhand.

## DAILY RATE TOWING

| CLASSIFICATION | ANNUITY CLASS | 01/01/05 | 01/01/06 | 01/01/07 |
|---|---|---|---|---|
| Master | A | $279.80 | $285.40 | $291.11 |
| Relief Capt. | A | $262.79 | $268.05 | $273.41 |
| Mate – Licensed | A | $245.80 | $250.72 | $255.73 |
| Engineer* | A | $199.16 | $203.14 | $207.20 |
| Deckhand/Engineer | A | $175.33 | $178.84 | $182.42 |
| AB Deckhand | A | $162.35 | $165.60 | $168.91 |
| OS Deckhand | B | $151.53 | $154.56 | $157.65 |

*The Engineer will work on deck and assist the deckhand as needed.

## SECTION 2.     TOWBOAT INCENTIVE

- Bonus pay only available to Merchant Mariner Document holding members of tug crews.
- Bonus paid at anniversary date for all days worked in **the immediately preceding** 12-months except COMPANY excused absences or pre-approved modified work schedules.
- Crew member must work all scheduled days within the **immediately preceding 12-**months.
- Bonus **pay will be subject to all applicable withholding taxes.**
- No fringe **benefits will be** paid or calculated on bonus pay.
- Voluntary or Involuntary interruptions in service voids service credit for bonus (an example of voluntary interruptions is resignation of employment from the COMPANY) (an example of involuntary interruption would be loss of applicable marine license or violation of COMPANY policy resulting in termination).
- All **continuous** time with CJL **previous to LMI**, will be credited **to service of** eligible employees.
- Bonus is paid based on position at anniversary date.
- Bonus pay is not retroactive to 01/01/2005.

## DOLLARS PER DAY WORKED

| CLASSIFICATION | 1ST YR. | 1ST YR. | 2ND YR. | 3RD YR. | 4TH YR. | 5TH YR. Through 9TH YR. | 10TH YR. Through 14TH YR. | 15TH YR. Year On |
|---|---|---|---|---|---|---|---|---|
| Master | A | 3.00 | 3.25 | 3.50 | 3.75 | 4.00 | 7.00 | 10.00 |
| Relief Captain | A | 2.50 | 2.75 | 3.00 | 3.25 | 3.50 | 6.50 | 9.50 |
| Mate – Licensed | A | 2.50 | 2.75 | 3.00 | 3.25 | 3.50 | 6.50 | 9.50 |
| Engineer | A | 2.00 | 2.25 | 2.50 | 2.75 | 3.00 | 6.00 | 9.00 |
| Deckhand/Eng. | A | 1.50 | 1.75 | 2.00 | 2.25 | 2.50 | 4.50 | 6.50 |
| AB Deckhand | A | 1.00 | 1.25 | 1.50 | 1.75 | 2.25 | 4.25 | 6.25 |
| OS Deckhand | B | 1.00 | 1.25 | 1.50 | 1.75 | 2.00 | 4.00 | 6.00 |

## SECTION 3.    DAILY RATE SCHEDULE/HOLIDAYS

There will be no rate calculations based on overtime or double time rate schedules. These daily rates will be paid for work done outside of dredging and on-site construction work.  All daily rates will be applicable 7 days per week, 365 days per year except in accordance with the Holidays listed below.

All employees shall receive the following Holidays in accordance with Section 11 of the Agreement except that a days pay shall be calculated on 12-hours. The following Holidays shall apply. In order to receive Holiday pay, the Holiday must be a regularly scheduled workday for each of the employees who is to receive Holiday Pay.

### INDEPENDENCE DAY AND LABOR DAY

## SECTION 4    SCHEDULED WORK WEEK

A workday shall consist of a twenty-four (24) hour period from midnight to midnight, or from noon to noon.  Twelve (12) hours shall constitute a day's work (6 hours on and 6 hours off).

The normal work schedule shall consist of a two (2) week on and one (1) week off rotation, but can be modified by the parties for their mutual benefit.  The workweek for all employees covered by this Agreement shall commence midnight on Sunday.

No travel time or subsistence will be paid in connection with transportation to and from a vessel or crew change site.  The Company will provide a vehicle for crew change transportation or provide other transportation, to and from the Company's yard, if the tug does not come back to its home port.  When a crew member is required to transfer from one vessel to another without time off between vessels, the Company shall provide the transportation and the crew member shall receive his daily rate of pay for the day he travels under these circumstances, regardless of whether he spends a complete twelve (12) hours on board vessels.

Crew change day will be set by Company and will be at 12:00 p.m. for said day.  When a crew member is directed, in accordance with Company, to be at the Company designated crew change site at a specific time, and the crew member actually arrives at the designated place at the designated time and the arrival of the vessel is delayed,  the oncoming crewmember will be placed on the payroll and the on watch crewmember will stay on the payroll until properly relieved.

## SECTION 5    BENEFIT PLANS

Medical, Pension, Vacation and Annuity benefits, as well as check-off monies, will be paid according to the Yard and Dredge Agreement.

Company contributions to the Internal Union of Operating Engineers Local 25, Marine Division Annuity Plan and the IUOE Central Pension Fund shall be calculated based upon all hours worked each day. Company contributions to the Local 25 Medical Plan and Vacation Plan shall be calculated based upon all hours worked each day up to a maximum of twelve (12) hours.

Langenfelder Maine/IUOE Local 25 FINAL

## SECTION 6     DIRECT DEPOSIT

The Company shall provide for Direct Deposit of employees paychecks.

## SECTION 7     FOOD SUBSISTENCE

Effective, January 1, 2005, the Company will provide Eighty-five Dollars ($85.00) per man per 7-day week food allowance in lieu of subsistence. In no event shall the food allowance be used to purchase any items except food.

## SECTION 8     WATCH ROTATION

If more than one watch is employed, any employee not relieved at the end of his watch shall remain on watch until properly relieved, and shall notify his Captain immediately and the shop steward as soon as possible. Each crewmember shall receive a minimum of one-half (1/2) day's pay on crew change day, unless the crewmember fails to report to the vessel or crew change vehicle on time.

## SECTION 9     DAY RATE AND BREAK OUT TIME

The day rate is based on a 24-hour period, 2-watch per day schedule, 6 hours on, 6 hours off.  The day rate will be paid for each 24-hour period following the start of the job. On any subsequent day, if the job is completed or the crew is relieved, less than 12 hours into the 24-hour day ("a half day"), the crew will receive one-half the day rate for that day, based on each crew member having worked one watch in that half day.  If an individual crew member works more than one watch in a half day, that is, is called on to break tow or make tow, he will be compensated for each additional hour at the rate of 1/12th of the applicable day rate (1/8th on Sundays, but only for towing work, not maintenance on the vessel).  If the vessel remains in service more than one watch into the day, the crew will receive the full day rate.  Any employee affected by the half-day pay on towing work will be offered the opportunity to complete the day (weather permitting) performing work covered by the Towing Addendum.

## SECTION 10   EMPLOYEE QUARTERS

It is understood that all employees covered by this Agreement shall be provided with a suitable washroom, sanitary facilities and quarters.   The Company shall provide a suitable number of blankets, sheets, spreads, pillows, and innerspring mattresses, face soap, laundry soap, lava soap and washing powder.  Each 24-hour crewed vessel shall be equipped with an electric washing machine, electric dryer, electric stove, microwave oven and refrigerator, provided that the vessel is large enough to accommodate each appliance.  In the event one of these appliances should break down, the Company shall repair or replace it within a reasonable amount of time, but in no case shall this repair time exceed seven (7) days.  The Company agrees to keep the employee's quarters clean and in a sanitary condition.  It is understood that the employees at all times will cooperate in keeping their quarters, mess room, washrooms and toilets in a clean and in a sanitary condition.

## SECTION 11    GEAR FOR EMPLOYEES

The following items shall be supplied for use on board each vessel of the Company covered by this Agreement:

1. Rain gear for crew required to work in inclement weather
2. Hard hats
3. Life jackets
4. Survival suits
5. Goggles

Any employee willfully damaging or destroying or removing without authority, property of the Company shall be held accountable for same, normal wear and tear excluded, and shall reimburse the Company for cost of replacement via withholding of wages. In no event shall an employee be required to furnish any tools. The Company will provide any future safety items required by the Company's Safety Department, which is not a requirement as of the date of this execution of this Agreement.

## SECTION 12    MAINTENANCE AND CLEANING

The crew of the vessels shall be required to maintain a safe and clean vessel. Each crewmember shall be responsible for the cleanliness and sanitary condition of his own or shared room.

The Company shall provide each tug a weekly allowance of eight-dollars ($8.00) per man for cleaning supplies, but not less than forty-dollars ($40.00) per week for four (4) deck boats, thirty-five dollars ($35.00) per week for three (3) deck boats, and thirty-two dollars ($32.00) per week for two (2) deck boats.

## SECTION 13    LETTERS OF SERVICE

Upon written request and within thirty (30) days, the Company shall provide an employee or former employee a letter of service indicating position held, length of service, and any other information required by the United States Coast Guard.

## SECTION 14    TRAINING AND LICENSING

The Company and the Union mutually agree that they shall encourage all employees to upgrade their skills.

Any employee, who is required by Federal, State, or local law or by Company policy to hold a valid United States Coast Guard or other license or certificate and who has been employed by the Company for five (5) years, shall be reimbursed by the Company for any renewal fee charged by the United States Coast Guard or other administrative agency for such license or certification. Those employees with between three (3) and five (5) years' service with the Company shall be reimbursed on a yearly pro rata basis. All reimbursements claimed under this Section must, however, be approved by the Company in advance of the employee's incurring the cost.

# TOWING ADDENDUM SIGNATORY PAGE

**ON BEHALF OF THE COMPANY:**

Langenfelder Marine, Inc.

_____
James R. Matters
President

_____
Attest

_____
12/16/05
Date

**ON BEHALF OF THE UNION:**

International Union of Operating
Engineers, Local 25, Marine Division

_____
Ernest D. Whelan
President and Business Manager

_____
Attest:

_____
12/14/05
Date

# TOTAL HOURLY MONETARY VALUES OF THE I.U.O.E. LOCAL #25 / LANGENFELDER MARINE CONTRACT

Based on a per straight-time hour rate

| CLASSIFICATION | ANNUITY CLASS | STRAIGHT-TIME WAGE RATE 01/01/2005 | MEDICAL CONTRIBUTION RATE $3.15 PER HR | PENSION CONTRIBUTION RATE $1.50 PER HR | VACATION CONTRIBUTION RATE 7% of straight time WAGE RATE | ANNUITY CONTRIBUTION RATE Classification A & B straight time | SUBSISTENCE PER DAY $13/8 hrs. = $1.63 PER HOUR | TOTAL HOURLY VALUE |
|---|---|---|---|---|---|---|---|---|
| *Crane Operator | A | $18.50 | $3.15 | $1.50 | $1.30 | $1.00 | $1.63 | $27.08 |
| Foreman | A | $18.50 | $3.15 | $1.50 | $1.30 | $1.00 | $1.63 | $27.08 |
| Dredge Captain | A | $17.44 | $3.15 | $1.50 | $1.22 | $1.00 | $1.63 | $25.94 |
| Welder/Fabricator ** | A | $17.44 | $3.15 | $1.50 | $1.22 | $1.00 | $1.63 | $25.94 |
| Welder 1st Class | A | $16.86 | $3.15 | $1.50 | $1.18 | $1.00 | $1.63 | $25.32 |
| Welder 2nd Class | B | $16.86 | $3.15 | $1.50 | $1.18 | $.85 | $1.63 | $25.32 |
| Welder Helper | B | $14.79 | $3.15 | $1.50 | $1.04 | $.85 | $1.63 | $22.96 |
| Mechanic (prev. Eng.) | A | $11.38 | $3.15 | $1.50 | $.80 | $.85 | $1.63 | $19.31 |
| Mechanic B | B | $16.86 | $3.15 | $1.50 | $1.18 | $1.00 | $1.63 | $25.32 |
| Loader Operator | B | $14.79 | $3.15 | $1.50 | $1.04 | $1.00 | $1.63 | $22.96 |
| Bobcat Operator | B | $14.85 | $3.15 | $1.50 | $1.04 | $.85 | $1.63 | $23.02 |
| Production Exc. Oper. * | A | $13.66 | $3.15 | $1.50 | $.96 | $.85 | $1.63 | $21.75 |
| Excavator Oper. | A | $15.85 | $3.15 | $1.50 | $1.11 | $1.00 | $1.63 | $24.24 |
| Chief Engineer | A | $15.15 | $3.15 | $1.50 | $1.06 | $1.00 | $1.63 | $23.49 |
| Leverman | A | $17.44 | $3.15 | $1.50 | $1.22 | $1.00 | $1.63 | $25.94 |
| Engineer | A | $16.86 | $3.15 | $1.50 | $1.18 | $1.00 | $1.63 | $25.32 |
| Welder (Dredge) | A | $16.86 | $3.15 | $1.50 | $1.18 | $1.00 | $1.63 | $25.32 |
| Tug Master | A | $16.86 | $3.15 | $1.50 | $1.18 | $1.00 | $1.63 | $25.32 |
| Boat Captain | A | $16.86 | $3.15 | $1.50 | $1.18 | $1.00 | $1.63 | $25.32 |
| Barge Loader | B | $15.60 | $3.15 | $1.50 | $1.09 | $1.00 | $1.63 | $23.97 |
| Pump Capt./Monitor Op. | B | $14.90 | $3.15 | $1.50 | $1.04 | $1.00 | $1.63 | $23.07 |
| Mate | B | $14.90 | $3.15 | $1.50 | $1.04 | $.85 | $1.63 | $23.07 |
| Oiler | B | $13.63 | $3.15 | $1.50 | $.95 | $.85 | $1.63 | $21.71 |
| Deckhand | B | $13.63 | $3.15 | $1.50 | $.95 | $.85 | $1.63 | $21.71 |
| Scowman | B | $12.67 | $3.15 | $1.50 | $.89 | $.85 | $1.63 | $20.69 |

The chart above will not reflect the following sections of the contract relating to cost: **TRANSPORTATION** allowance paid at time when employee is hired, laid-off and job-site to job-site in relation to the distance traveled. Any **HOLIDAYS** that may occur.

29

# TOTAL DAILY MONETARY VALUES OF THE I.U.O.E. LOCAL #25 / LANGENFELDER MARINE CONTRACT

30

## TOWBOAT ADDENDUM

Based on a per day rate

| CLASSIFICATION | ANNUITY CLASS | DAILY WAGE RATE 01/01/2005 | MEDICAL CONTRIBUTION RATE $3.15 PER HR X 12 hrs. | PENSION CONTRIBUTION RATE $1.50 PER HR X 12 hrs. | VACATION CONTRIBUTION Rate 7% of Straight-time WAGE RATE X 12 hrs | ANNUITY CONTRIBUTION RATE Classification A & B Straight-time X 12 hrs | FOOD/SUBSISTENCE ANNUITY CONTRIBUTION Rate A & B $85.00 per WK OR $12.14/per 12 Hour Day | TOTAL DAILY VALUE |
|---|---|---|---|---|---|---|---|---|
| Master | A | $279.80 | $37.80 | $18.00 | $19.56 | $12.00 | $12.14 | $379.30 |
| Relief Capt. | A | $262.79 | $37.80 | $18.00 | $18.36 | $12.00 | $12.14 | $361.09 |
| Mate – Licensed | A | $245.80 | $37.80 | $18.00 | $17.16 | $12.00 | $12.14 | $342.90 |
| Engineer* | A | $199.16 | $37.80 | $18.00 | $13.92 | $12.00 | $12.14 | $293.02 |
| Deckhand/Engineer | A | $175.33 | $37.80 | $18.00 | $12.24 | $12.00 | $12.14 | $267.51 |
| AB Deckhand | A | $162.35 | $37.80 | $18.00 | $11.40 | $12.00 | $12.14 | $253.69 |
| OS Deckhand | B | $151.53 | $37.80 | $18.00 | $10.56 | $10.20 | $12.14 | $240.23 |

The chart above will not reflect the following sections of the contract relating to cost: **TRANSPORTATION** allowance paid at time when employee is hired, laid-off and job-site to job-site in relation to the distance traveled. Any **HOLIDAYS** that may occur. **TOWBOAT INCENTIVE PAY** accumulated and paid at the anniversary date. **DAY RATE & BREAKOUT TIME** paid as worked.

# TOTAL HOURLY MONETARY VALUE INCREASES OVER THREE YEARS OF THE I.U.O.E. LOCAL #25 / LANGENFELDER MARINE CONTRACT

31

| CATEGORY | CURRENT RATES | 2005 | 2006 | 2007 |
|---|---|---|---|---|
| MEDICAL CONTRIBUTION RATE INCREASE (YEARLY) | $2.70 | $3.15 .45¢ | $3.45 .30¢ | $3.75 .30¢ |
| PENSION CONTRIBUTION RATE INCREASE (YEARLY) | $1.25 | $1.50 .25¢ | $1.75 .25¢ | $2.00 .25¢ |
| SUBSISTENCE COMPENSATION RATE INCREASE (YEARLY) | $1.63 | $1.63 | $1.63 | $1.63 |
| VACATION CONTRIBUTION RATE INCREASE (YEARLY) | $1.06 | $1.08 .02¢ | $1.11 .03¢ | $1.13 .02¢ |
| WAGE INCREASE (AVE. STRAIGHT-TIME) INCREASE (YEARLY) WAGE INCREASE (AT 2%) | $15.18 | $15.48 .30¢ | $15.79 .31¢ | $16.11 .32¢ |
| TOTAL INCREASE | | $1.00 | .89¢ | .89¢ |
| TOTAL LABOR COST | $21.82 | $22.82 | $23.71 | $24.60 |
| PERCENTAGE INCREASE (YEARLY) | | 4.6% | 3.9% | 3.8% |
| PERCENTAGE CUMULATIVE INCREASE | | | 8.5% | 12.3% |

Langenfelder Maine/IUOE Local 25 FINAL

32

Exhibit C

INTERNATIONAL UNION OF OPERATING ENGINEERS
# LOCAL 25, MARINE DIVISION
### AFL – CIO

# STANDARD MASTER AGREEMENT



### Effective:

### October 1, 2006
### through
### September 30, 2009

SMA FINAL - 10/01/06 – 09/30/09

# MASTER AGREEMENT
## <u>TABLE OF CONTENTS</u>

| *SECTION* | *TITLE* | *PAGE* |
|---|---|---|
| | AGREEMENT | 4 |
| | PREAMBLE | 4 |
| 1 | BARGAINING UNIT / TERRITORIAL ZONE | 4 |
| 2 | JOB SECURITY AND LOCKOUTS | 4 |
| 3 | HIRING PROCEDURE | 5 |
| 4 | UNION SHOP | 7 |
| 5 | CHECKOFF | 7 |
| 6 | SCOPE | 8 |
| 7 | AUTHORIZED DEDUCTIONS INTO PLANS | 8 |
| 8 | ABILITIES AND QUALIFICATIONS FOR EMPLOYMENT | 9 |
| 9 | TRAINING | 9 |
| 10 | COMPANY OFFICIALS | 9 |
| 11 | WORK WEEK AND OVERTIME (refer to addenda) | 9 |
| 12 | WORK ASSIGNMENT | 9 |
| 13 | HOLIDAYS | 10 |
| 14 | PAYMENT OF WAGES | 10 |
| 15 | TRANSPORTATION | 11 |
| 16 | PRE-JOB CONFERENCE | 11 |
| 17 | SUBSISTENCE AND SUPPLES | 12 |
| 18 | MANNING | 12 |
| 19 | MEDICAL EXAMINATIONS | 12 |
| 20 | WATCH ROTATION | 13 |
| 21 | SAFETY | 13 |
| 22 | HAZARDOUS DUTY PAY | 13 |
| 23 | HAZARDOUS MATERIAL PAY | 13 |
| 24 | EMPLOYEE QUARTERS | 13 |
| 25 | GEAR FOR EMPLOYEES | 13 |
| 26 | LANDING AREA | 14 |
| 27 | SHELTER FOR SHORE FILL CREW | 14 |
| 28 | LOSS OF PERSONAL EFFECTS | 14 |
| 29 | UNION REPRESENTATIVES | 14 |
| 30 | PROMOTIONS OUT OF BARGAINING UNIT | 15 |
| 31 | SHOP STEWARD | 15 |
| 32 | ARBITRATION | 15 |
| 33 | CREW BOAT | 16 |
| 34 | VACATION NOTIFICATION | 17 |
| 35 | MEDICAL (refer to addenda) | 17 |
| 36 | PENSION (refer to addenda) | 17 |
| 37 | VACATION (refer to addenda) | 17 |
| 38 | ANNUITY (refer to addenda) | 17 |
| 39 | ALLOCATION OF WAGES TO PLANS | 17 |
| 40 | EMPLOYEES OF THE UNION | 17 |
| 41 | PERFORMANCE BOND | 18 |
| 42 | MAINTENANCE AND CURE | 19 |

| 43 | CONTINUATION OF BENEFITS FOR OCCUPATIONAL INJURIES | 19 |
|----|------|-----|
| 44 | DEATH IN FAMILY AND JURY DUTY | 19 |
| 45 | LEGALITY | 19 |
| 46 | TERMINATION FOR CAUSE | 19 |
| 47 | TERM OF AGREEMENT | 19 |
| 48 | FAVORED NATIONS | 20 |
| 49 | FULL UNDERSTANDING | 20 |
| 50 | EQUAL OPPORTUNITY, ADA, FAMILY LEAVE | 20 |
| 51 | INNOVATIVE EQUIPMENT | 20 |
|    | SIGNATORY PAGE | 22 |

## AGREEMENT

Made this 1st day of October, 2006 between _____,
hereinafter referred to as the COMPANY, and International UNION of Operating Engineers,
Local 25, Marine Division AFL-CIO, hereinafter referred to as the UNION, which has been given
jurisdiction by the International UNION of Operating Engineers, AFL-CIO for all dredging work
within the waters of the Great Lakes, Atlantic Ocean, Gulf of Mexico and their tributaries.

The parties involved acknowledge that this AGREEMENT, inclusive of its addendum and/or
addenda, has been negotiated as a new Master AGREEMENT. The parties collectively strived to
simplify and condense language, in that this AGREEMENT would better reflect actual customs
and practices. Therefore, no special relevance shall be given to any omissions or revisions in this
Master AGREEMENT as compared to past agreements between involved parties.

## PREAMBLE

This AGREEMENT is entered into to prevent strikes and lockouts; to facilitate peaceful
adjustment of grievances and disputes between the COMPANY and the UNION; to prevent
waste, unnecessary and avoidable delays which result in unnecessary cost and expense to the
COMPANY and to the UNION in loss of wages; to enable the COMPANY to secure at all times
sufficient forces of skilled employees to provide as far as possible for the continuous employment
of labor; to provide that employment hereunder should be in accordance with conditions and
wages herein agreed upon, and by reason of this AGREEMENT and the purposes and intent
thereof, to bring about stable conditions in the industry, keep costs of work in the industry as low
as possible consistent with fair wages and proper working conditions, as provided for hereunder,
and further, to establish and set up the necessary procedure for amicable adjustment for all
disputes or questions that may arise between the parties, so that the foregoing purposes may be
brought about and accomplished.

It is agreed as follows:

## BARGAINING UNIT / TERRITORIAL ZONE – SECTION 1

This AGREEMENT covers only those employees employed by the COMPANY in the
occupational classifications set forth in Schedule "A" hereof engaged in dredging work carried on
by the COMPANY within the territorial zone(s) set forth in the addendum and/or addenda to this
AGREEMENT. This includes the employees on dredges, derrick boats, spill barges, spider
barges, drill boats, launches, scows, tugboats and other equipment, floating and otherwise, used in
connection with dredging operations. It shall also cover employees of the COMPANY when
moving dredges to and from the job site, the laying, connecting and dismantling of pipe lines and
all other equipment in conjunction with dredging work and the customary work in connection
with mobilization and demobilization of the equipment.

## JOB SECURITY AND LOCKOUTS – SECTION 2

1. The COMPANY agrees that there shall be no lockouts of the employees during the term of
   this AGREEMENT: provided, however, this section shall not be construed to prevent the
   suspension or termination of employment due to business conditions or any other condition

over which the COMPANY has no control. The COMPANY also agrees that it will notify the UNION whenever another labor organization claims to represent the employees or any subdivision of employees.

2. The UNION agrees that during the period of this AGREEMENT:

    a) There shall be no picketing.

    b) There shall be no strikes or slowdowns by the employees;

and the UNION further agrees that during any period of arbitration as provided in Section 32 hereof, there shall be no picketing, strikes or slowdowns by the employees because of the question submitted to arbitration.

It shall not be a violation of this AGREEMENT and it shall not be a cause for discharge or disciplinary action in the event an employee refuses to cross any picket line associated with a legitimate labor dispute when employee fears that bodily harm may be done to him.

The no-strike provisions of this AGREEMENT are not applicable in the event the employer fails to satisfy all of its obligations to the various Plans or Funds to which contributions are required to be made under this AGREEMENT, including check-off to the UNION.

In the event that any employees or group of employees performs any of the acts prohibited by this section, without the approval of the UNION, such violation shall be proper cause for discharge. Violation by non-members of the UNION shall not be deemed a violation by the UNION, and the COMPANY agrees not to attempt to hold the UNION liable for such acts by non-members of the UNION.

    c) There shall be no work stoppage, including but not limited to work stoppages on account of jurisdictional disputes or on account of disputes which the UNION may have with an employer which is not a party to this AGREEMENT or on account of labor disputes of subcontractors or suppliers of the COMPANY or on account of disputes which the COMPANY may have with a union which is not a party to this AGREEMENT.

    d) There shall be no restriction of the use of any dredge, machinery, tools or appliances.

## HIRING PROCEDURE – SECTION 3

In the employment of workers covered by this AGREEMENT, the following provisions shall govern:

1. The UNION shall establish, maintain, and keep current an open employment list for the employment of workers competent and physically fit to perform the duties of classifications covered by this AGREEMENT. Such list shall be established, maintained and kept current on a non-discriminatory basis and shall not be based on or in any way affected by UNION membership, UNION by-laws, rules, regulations or constitutional provisions, or any other aspect or obligation of UNION membership, policies or requirements.

2.   Whenever desiring to employ workers of the classifications specified in Schedule "A" of this AGREEMENT within the territorial zone specified in the respective addendum and/or addenda to this AGREEMENT, the COMPANY shall call the UNION Hiring Hall and the UNION shall promptly refer to the COMPANY, but in no event later than 72 hours, exclusive of Saturdays, Sundays and holidays, workers who are competent and physically fit to perform the duties of the classification, or classifications, needed by the COMPANY. If, for any reason, the UNION is unable or fails to refer qualified and competent workers within 72 hours as aforesaid, the COMPANY may obtain workers from any available labor source.

3.   The COMPANY has the right to reject any worker referred to it by the UNION and to determine the classifications and the number of employees in such classifications needed to efficiently and safely operate its equipment and the UNION agrees not to attempt to abridge these rights of the COMPANY.

4.   The UNION shall refer to the COMPANY only workers whose names appear on the open employment list and in so doing shall be governed by the following criteria:

   a)   If the COMPANY requests from the open employment list a worker by name, he shall be referred by the UNION to the COMPANY and his failure to report at the time and place requested by the COMPANY shall be conclusive proof that either he is working elsewhere or that he refuses to accept the COMPANY'S employment. When the COMPANY requests the worker by name, he shall be deemed competent to perform the duties of this classification, subject to current physical examination including pre employment drug testing.

   b)   If the COMPANY does not request that a particular worker be referred to it to fill a particular vacancy as provided in subparagraph (a) above, the referral shall be by classes and priorities in the following order:

      I.   Workers competent and experienced in the performance of work in their classification and who have had employment experience with any COMPANY making contributions to Local 25, Marine Division, International Union of Operating Engineers Medical Plan or its successor Plans. The order of referral within this class of work persons, known as Experienced Class, shall be in priorities of registration of the applicant in the Hiring Hall.

      II.   Workers competent and able to perform the work in the classification to be filled but who have had no employment experience with any COMPANY making contributions to Local 25, Marine Division, International Union of Operating Engineers Medical Plan or its successor Plans. The order of referral within this class of workers shall be in priorities of registration of the applicant in the Hiring Hall.

5.   If any individual files a written complaint with either the COMPANY or the UNION that they have been discriminated against in the application of the Hiring Hall provisions of this AGREEMENT, said complaint, if not adjusted to the satisfaction of all parties within 5 working days, shall be referred to arbitration as hereinafter set forth in Section 32 of this AGREEMENT. All complaints, in order to be subject to such arbitration, must be filed with either the COMPANY or the UNION within 7 days from the date of the alleged discrimination.

6. Workers referred for employment shall be required to produce acceptable forms of identification for administrative purposes. Acceptable identification documents as illustrated for Immigration and Naturalization Service Form I-9 and its successors will be considered as appropriate for the purpose of this AGREEMENT.

## UNION SHOP – SECTION 4

The COMPANY agrees that, as a condition of continued employment, all employees of the classifications covered by this AGREEMENT shall become members of the UNION within 31 days after the execution of this AGREEMENT, or within 31 days after being hired, whichever is later, and shall remain members of the UNION while employed by the COMPANY within the territorial zone(s) described in the addendum and/or addenda to this AGREEMENT, during the life of this AGREEMENT. The COMPANY is not obligated to take steps to enforce this provision unless due notice is received in writing from the UNION that an employee covered by this AGREEMENT has refused to tender the initiation fee and dues uniformly required as a condition of becoming or remaining a member of the UNION. In the event the COMPANY receives such written notice, it shall investigate the matter, and if the employee refuses to tender the said initiation fee and/or dues retroactive to the 30th day following the execution of this AGREEMENT or the 30th day following the date of their employment, whichever is later, said employee shall be discharged forthwith. This Section 4 shall not apply in states in which so called "right to work" laws are in effect.

Copies of Hiring Procedure and Union Shop, Sections 3 and 4, shall be posted in their entirety and maintained by the UNION in conspicuous places in its Hiring Halls and by the COMPANY in conspicuous places where it maintains offices or equipment and where employees and applicants for employment have access.

## CHECKOFF – SECTION 5

1. The COMPANY agrees to make deductions for initiation fees, membership dues and delinquencies as certified by the UNION from the wages of employees who have signed and delivered to the COMPANY a wage authorization assignment providing for such deduction. The UNION will certify to the COMPANY the names and addresses of its authorized representatives to receive such funds.

2. $.05 per each hour worked shall be allocated from the checkoff amounts for contributions to the Joint Union/Employers Training Fund. This payment shall be made monthly by the UNION to the Training Fund for all hours contributed by the signatory contractors.

3. Remittance will be due on the 20th day of each month. Such remittance will be made on forms that contain the necessary information and details as to date and hours of employment of employees covered by the terms of this AGREEMENT. If the COMPANY fails to remit such check-off dues within 10 days of being due, the UNION shall assess an interest rate of 1% per month.

The authorization for the said deduction shall be given in the following form:



**LOCAL #25, MARINE DIVISION, I.U.O.E. MASTER AGREEMENT**
SUPPLEMENTAL WORKING DUES CHECK-OFF AUTHORIZATION CARD

To _____                    _____
      (NAME OF COMPANY)                                                (DATE)
I hereby irrevocably authorize _____ ,
my employer, during the life of the present labor agreement, and from year to year thereafter, subject each year to written revocation by me, sent by certified mail, return receipt requested, to the UNION and the Employer, during the last two weeks of the month preceding the anniversary date of the Agreement, to deduct my initiation fee, change of classification fee, and monthly dues as specified by the I.U.O.E. Local 25, including supplemental Union working dues effective January 1, 2007, two and one quarter percent (2 ¼%) of gross wages and any other fees as specified by the I.U.O.E. Local 25 under the terms of the collective bargaining agreement. My initiation fee of $_____ shall be paid at the rate of $ _____ per week for _____ weeks until my initiation fee is paid in full.  I further authorize my employer to deduct $_____ per week for _____ weeks until my current delinquency in the amount of $_____ is paid in full.

_____                    _____
    (SOCIAL SECURITY NUMBER)                                        (EMPLOYEE PRINT)

_____                    _____
      (CLASSIFICATION)                                              (EMPLOYEE SIGN)

## SCOPE – SECTION 6

If any dredge or equipment on the effective date of this AGREEMENT, not within the territorial limits covered by the addendum and/or addenda to this AGREEMENT, is brought within such territorial limits, the terms and conditions of this AGREEMENT will become applicable thereto.

## AUTHORIZED DEDUCTIONS INTO PLANS – SECTION 7

If any dredge or equipment within the territorial limits covered by the addendum and/or addenda to this AGREEMENT is deployed to an area not covered by this AGREEMENT, the COMPANY agrees to notify the UNION. If the deployment is to an area not covered by other collective bargaining agreements with Local 25, Marine Division, International Union of Operating Engineers which provide for medical, pension and annuity payments to the International Union of Operating Engineers, Local 25 Medical and Annuity Plans or Central Pension Fund, or any Plans or Funds which are formally recognized by the Trustees as successors to any of the preceding Plans or Funds, then any employee accompanying the dredge or equipment shall have the right to authorize a deduction from his wages to be paid into such Plans or Funds or any successor Plans or Funds formally designated as such by the respective Trustees of the original Plans or Funds. It shall be the responsibility of the COMPANY to notify the employee of his rights to have such deductions made and the employee is to furnish the COMPANY with a signed authorization for deduction stating the amounts to be deducted.

## ABILITIES AND QUALIFICATIONS FOR EMPLOYMENT – SECTION 8

The COMPANY shall be the judge as to the ability and qualifications for employment, and nothing contained in this AGREEMENT shall in any way abridge the COMPANY'S right to discharge an unsatisfactory employee.

The COMPANY will notify the Shop Steward, if he is aboard, before an employee is discharged. The COMPANY will notify the Shop Steward when he returns aboard whenever an employee has been discharged during the absence of the Shop Steward. The UNION agrees to cause no work stoppage because of a discharge, and if there is a dispute in connection therewith and no settlement is reached, the matter will be referred to arbitration in accordance with Section 32.

## TRAINING – SECTION 9

The COMPANY shall contribute to the Joint Union/Employers Training Fund, established by an Agreement and Trust, $.05 per hour for all hours worked by its employees covered by this collective bargaining AGREEMENT and an additional $.05 per hour shall be allocated from the supplemental working dues as specified in Section 5 of this AGREEMENT. The COMPANY shall be bound by all of the same provisions of said Agreement and Declaration of Trust as the same now exists or may be amended.

## COMPANY OFFICIALS – SECTION 10

No salaried employee or any other COMPANY official shall do repair work, handle tools, pull levers, or operate any other equipment on a regular basis so as to deprive employees covered by this AGREEMENT of work.

## WORK WEEK AND OVERTIME – SECTION 11

Refer to Northern and/or Southern Addendum, SECTION 2.

## WORK ASSIGNMENT – SECTION 12

1. Nothing contained in this AGREEMENT shall be construed as preventing the COMPANY from assigning any of its employees to any available position; provided, however, that if an employee is temporarily assigned to another position and if he works in such position, he shall be paid the same rate of pay for the total time he works in such position that an employee regularly assigned to such position would have received, if such payment does not result in a reduction of pay. The parties agree that the establishment of master rates shall not alter past practices with respect to combining and/or altering job duties.

2. Workers assigned to dredges, tugs, scows, fill crew, and other attending plant shall not displace workers assigned to another piece of equipment.

## HOLIDAYS – SECTION 13

Refer to Northern and/or Southern Addendum, SECTION 3 for holiday schedule.

1. The days celebrated as such shall be as designated by the Federal Government.

2. 48 hours advance notice shall be posted on the bulletin board regarding the work schedules for holidays.

3. If any employee is not required to work on a holiday, he shall be paid 8 hours straight time wages for such holiday.

4. If an employee fails to report for work, except when specifically excused, on the day before or the day after a holiday or if an employee is ordered to work on any holiday and he fails to report for work and to perform the work required, in either of such events he shall receive no pay for such holiday.

5. Any employee called in and who performs the work required on a holiday shall be paid 8 hours straight time pay as holiday pay in addition to his earnings for the normal schedule of wages for that day's work.

6. If a holiday falls while an employee is on vacation, he shall be paid his holiday pay on the payday following his return from vacation.

<u>7.</u> An employee who has been in employment for 30 days or more prior to a holiday and is laid off in a week in which the holiday falls, shall receive the holiday pay when he receives his regular pay at the time of lay-off. If an employee is rehired within 2 weeks after being laid off and holiday occurs within that 2 week period, they shall be paid for such holiday.

## PAYMENT OF WAGES – SECTION 14

1. All wages under this AGREEMENT shall be due and payable on the job every week. Wages for the previous weekly pay period will be paid not later than 4 days after the end of that period. In the event an employee's check is not available within this 4 day period, said employee shall receive compensation at the rate of 8 hours straight time for each day, or fraction therof, that he is required to wait for paycheck hereinafter. If said employee is on their scheduled time off when the late check arrives at the jobsite office, the COMPANY shall overnight paycheck to employee's address. However, both parties recognize that on rare occasions, compliance with this 4-day rule would create a significant hardship on the COMPANY. In those rare instances, the parties will converse to achieve a mutually agreeable alternative.

2. If an employee is discharged through a normal reduction in force, and the COMPANY does not pay the accrued wages of such employee at the time of termination of employment, said employee may choose one of the following options:

   a) The COMPANY shall have employee's check at jobsite office ready for employee pickup within 24 hours.

    b)   Within 24 hours of termination, the COMPANY shall overnight employee's check to the address of employee's choosing.

Said employee shall receive compensation at the rate of 8 hours straight time for each day or fraction thereof that he is required to wait for his termination pay beyond the above mentioned time frames, depending on the option the employee has chosen.

3.   If an employee quits of his own accord or is discharged for cause, he shall wait for his pay until the next regular pay day. If employee makes no alternative arrangements, it shall be sent by mail to the employee's address on the records of the COMPANY.

## TRANSPORTATION – SECTION 15

1.   Any worker referred to the COMPANY for employment under Section 3 of this AGREEMENT shall receive a transportation allowance, payable on employee's first check, in accordance with the following schedule:

    a)   Jobsite less than 10 miles from the employee's home address: $0.00

    b)   Jobsite greater than 10 miles and less than 50 miles from the employee's home address: $70.00

    c)   Jobsite greater than 50 miles and less than 200 miles from the employee's home address: $230.00

    d)   Jobsite greater than 200 miles from the employee's home address: $500.00

    e)   In the event that the COMPANY requests a worker by name beyond the territorial limits of this AGREEMENT, the COMPANY will reimburse the worker for actual transportation expense.

2.   When an employee on the COMPANY payroll is required to travel from one jobsite to another jobsite, whether on the same assigned project or a different project, he shall receive 50% of the transportation allowance as outlined above except that the distances used shall be jobsite to jobsite, not home address to jobsite.

3.   When employees aboard towing tugs, dredges or other vessels, which are towed, or "light boated", to another port or location, the COMPANY shall provide return transportation back to originating location. If transportation is not provided, such employee shall be compensated until he arrives back to the originating location. Such compensation shall not exceed 12 hours.

4.   If an employee is discharged for cause or quits of his own accord, 50% of the transportation allowance they received shall be deducted from their final paycheck.

## PRE-JOB CONFERENCE – SECTION 16

If either the UNION or the COMPANY believes that the nature of the COMPANY'S operation covered by this collective bargaining AGREEMENT is unusual and requires a pre-job

conference, the parties agree that, upon notification to each other, such a pre-job conference shall be held before the commencement of the operation between the said UNION designee and the designated COMPANY official at a mutually agreeable time and place.

## SUBSISTENCE AND SUPPLIES – SECTION 17

1.  The COMPANY agrees that during the term of this AGREEMENT it will continue to make available to employees employed on work afloat or ashore, meals and sleeping quarters when the dredge is on contract or when mobilizing or demobilizing. When meals and sleeping quarters are not available to employees employed to work afloat or on shore, the COMPANY will grant each of such employees a subsistence allowance in a minimum amount of $34.00 per day effective October 1, 2006, $35.00 per day effective October 1, 2007.

2.  If a stewards department exists, the COMPANY agrees that adequate supplies will be furnished at all times to the stewards department of the various plants and that a balanced diet will be provided. Such diet to include fresh milk.

3.  The COMPANY shall furnish a coffeepot, coffee, cream, sugar, all other supplies for making coffee and all cleaning supplies. The subsistence allowance shall not be used to purchase cleaning supplies.

## MANNING – SECTION 18

1.  When a shoreline is utilized, which includes mobilization or demobilization, all dredges over 12" shall have at least 1 Assistant Fill Placer and 1 Shoreman per shift. Fill operations requiring additional shore personnel will be determined by the COMPANY after discussion with the UNION.

2.  All dredges, dredge related equipment and tending boats will be manned in accordance with industry standards for a safe and efficient operation. Any operations requiring additional personnel will be determined by the COMPANY after discussion with the UNION.

3.  Each dredge shall have an engineer on watch at all times when the dredge is in operation.

4.  All workers will be referred to the COMPANY by the UNION in accordance with Section 3 of this AGREEMENT.

## MEDICAL EXAMINATIONS – SECTION 19

All prospective employees required to take a physical and drug / alcohol screening will be compensated at a flat rate of $105.00 and the COMPANY will bear all costs for such procedures. Such compensation shall be paid no later than the second pay period following the physical examination and drug / alcohol screening. In the event the prospective employee fails the drug and/or alcohol screening, the allowance shall not be paid.

## WATCH ROTATION – SECTION 20

If more than 1 watch is employed, the watches shall be rotated on a regular basis as mutually agreed between the COMPANY and the UNION. Any employee not relieved at the end of his watch shall remain on watch until properly relieved and shall notify his supervisor and the Shop Steward as soon as possible.

## SAFETY – SECTION 21

All employees shall observe all measures set forth by the COMPANY for the safety of its employees and shall cooperate with the COMPANY in carrying out all of the COMPANY'S safety measures for accident prevention, as outlined in the latest edition of the COMPANY'S safety policy or handbook. All employees will acknowledge receipt of the COMPANY'S safety policy or handbook in writing.

## HAZARDOUS DUTY PAY – SECTION 22

Any employee not assigned to a drillboat operation that is required to handle, transport or work with any explosives, including an officially determined unexploded ordinance situation, shall be compensated at 120 % of Schedule "A" rates per hour for every hour in which they are engaged in this activity.

## HAZARDOUS MATERIAL PAY – SECTION 23

Any employee required to possess a Hazardous Material Training Certificate as a condition of employment for a particular project shall be compensated at 120% of Schedule "A" rates per hour for every hour in which they are engaged in such hazardous activity.

## EMPLOYEE QUARTERS – SECTION 24

It is understood that all employees covered by this AGREEMENT shall be provided with suitable washroom, sanitary facilities and quarters in which to change clothes. When lodging is provided, the employees shall be responsible for all articles issued to them, and no clean linen or towels shall be furnished unless and until the soiled linen and towels are turned in to the COMPANY. Towels, linens and soap (bathing and laundry) will be issued not less than twice a week. The COMPANY agrees to keep the employees' quarters clean and in a sanitary condition. It is understood that the employees will cooperate in keeping their quarters, mess rooms, washrooms and toilets in a clean and sanitary condition.

The COMPANY shall provide clean potable water, which shall be tested by an independent laboratory twice a year.

## GEAR FOR EMPLOYEES – SECTION 25

1. The COMPANY agrees to furnish the employees with hard hats and, for those working outside in inclement weather, rain suits, all of which must be returned to the COMPANY in

the same good order and condition as issued, normal wear and tear expected. If any employee fails to return any or all of the said equipment issued to him, he will be charged for it and the amount will be deducted from wages due.

2.  The COMPANY agrees to furnish and replace welding hoods, goggles and gloves which become unserviceable due to use on the job.

3.  No employee shall be required to furnish any tools.

## LANDING AREA – SECTION 26

1.  When possible, a suitable shanty is to be provided where the crew awaiting the change of crews can be protected in case of inclement weather. The landing where crews change must be safe and adequately lighted.

2.  When local conditions necessitate, the COMPANY must furnish a protected parking area and a uniformed security officer. In the event of damage to an employee's vehicle while parked in such a designated area, the COMPANY'S liability shall be limited to $250.

## SHELTER FOR SHORE FILL CREW – SECTION 27

1.  As of the first day of operation, the COMPANY agrees to provide the shore fill crew on each operation with a shanty equipped with adequate sanitary and heat facilities. Said shanty to be sufficiently large enough for employees to change and hang clothes and to be protected from inclement weather. Adequate sanitary facilities shall include a chemical toilet. Said shanty shall be reasonably accessible to employees' vehicles.

2.  When local conditions necessitate, the COMPANY must furnish a protected parking area and a uniformed security officer. In the event of damage to an employee's vehicle while parked in such a designated area, the COMPANY'S liability shall be limited to $250.

## LOSS OF PERSONAL EFFECTS – SECTION 28

If the personal effects of any employee become a total loss because of fire on, or sinking of, the equipment on which he is employed, he shall be paid by the COMPANY the sum of $400.00 in full compensation of such loss, whether or not the loss is greater or less than $400.00. If the personal effects of any employee are damaged but are not totally lost, because of fire on, or sinking of the equipment on which he is employed, he shall be paid by the COMPANY a sum equal to the fair amount of such damage, not to exceed $400.00. Payment of the above amount shall be made to the employee within 60 days of the date of the loss.

## UNION REPRESENTATIVES – SECTION 29

1.  The COMPANY agrees that it will allow accredited representatives of the UNION and of the Medical, Vacation and Annuity Plans access to the plant at all times during working hours, to perform official UNION or Plan business, and such representatives may use the

COMPANY'S transportation facilities from shore to plant. The UNION agrees that such representatives will not interfere with any of the COMPANY'S employees while at work.

2. In consideration for such permission, the UNION agrees to indemnify and hold the COMPANY harmless for any and all injuries and damage that may be suffered by its representatives when on or about the COMPANY'S plant, equipment or property, whether caused by negligence of the COMPANY, its agents, servants, or employees, the unseaworthiness of the plant and equipment, or any other cause whatsoever.

## PROMOTIONS OUT OF BARGAINING UNIT – SECTION 30

The COMPANY agrees that if any vacancy shall occur or a new position shall be created in the classification of Captain, Chief Engineer or Deck Captain, the first consideration in filling these classifications shall be given to employees who are covered by the provisions of this AGREEMENT.

## SHOP STEWARD – SECTION 31

1. The COMPANY will recognize 1 working employee on each dredge, who will be designated by the UNION and whose name shall be furnished to the COMPANY in writing, to act as Shop Steward for the purpose of processing job-site grievances arising under the terms of this AGREEMENT.

2. When there is a reduction in the work forces during periods of reduced employment, the Shop Steward shall be the last employee within that classification to be laid off, provided that said employee is qualified to perform the available work. Such employee shall also be the first to be recalled when work resumes, provided that he is qualified to perform the available work.

3. The Shop Steward shall be permitted to attend not more than 5 meetings per year called by the UNION without loss of pay. The UNION agrees to notify the COMPANY in advance of the holding of any such meeting and the Shop Steward, if he attends such meeting, shall be paid not more than 8 hours straight time pay for so attending.

## ARBITRATION – SECTION 32

All complaints, disputes or grievances arising between the parties hereto, relating to, or in connection with, or involving questions of interpretation or application of any clause of this AGREEMENT, or any acts, conduct or relations between the parties, directly or indirectly, shall be processed pursuant to this section. Except as otherwise provided, the UNION and the COMPANY agree that there shall be no strike or lockout or work stoppage, without having first utilized all procedures set forth herein.

1. Any employee covered by this AGREEMENT who alleges the existence of such a dispute must present his grievance, in writing, to the Vessel Captain or appropriate Supervisor within 7 working days of the date of the occurrence which is the subject of the grievance. The Captain or supervisor shall transmit the grievance to the COMPANY. The COMPANY shall answer the grievance in writing within 10 business days after receipt of the written grievance

submitted to the Captain or supervisor by the employee. The COMPANY shall provide this written response to both the grievant and the UNION.

2. If the grievance is not satisfactorily resolved on the basis of the COMPANY'S answer, the UNION, in its sole discretion, may submit the matter to the Quick Dispute Resolution Committee (the "Committee") or to arbitration, as set forth below, or determine not to pursue the grievance further. If the UNION submits the matter to the "Committee" or arbitration, it must do so in writing sent within ten 10 business days of receipt of the COMPANY'S answer pursuant to subsection (1).

3. The "Committee" shall consist of two representatives from the COMPANY and two from the UNION. The "Committee" may review any relevant employment records, reports, statements, letters or other documents or materials submitted by or on behalf of the grievant or the COMPANY, and may, in its discretion, request or permit persons to provide testimony whether in person or by phone, provided an equal number of "Committee" members from the UNION and COMPANY are present during such in-person or telephonic testimony as the "Committee" might require or allow. The "Committee" shall render its decision within 30 calendar days of receipt of the UNION'S written submission to the "Committee" as set forth in subsection (2). The decision shall be final and binding only if the majority of the members agree on the decision. The decision may be to uphold the COMPANY'S original action, to reverse it, or to modify it, and to determine the penalty or damages, if any. If the "Committee" does not reach a final and binding decision as defined above, or does not act within the 30-day period, the UNION may file for arbitration as set forth below.

4. If the UNION files for arbitration, it shall do so to the American Arbitration Association. The arbitration will be conducted under the rules of the American Arbitration Association. The parties may agree to extend the time limits set forth in subsection (3).

5. The UNION shall have the authority to file for arbitration on behalf of a group of employees or regarding a contract issue, and the COMPANY shall have the right to file for arbitration, within thirty 30 calendar days of discovery of the issue. Within that 30-day period, and prior to filing for arbitration, the party with the grievance must notify the other party of the issue in writing.

6. Only the UNION and COMPANY shall have the authority to file under subsections (2), (3), (4) and (5).

7. The decision of the arbitrator shall be final and binding upon both the UNION and the COMPANY. The arbitrator's fees and expenses and other arbitration costs shall be shared equally by the UNION and the COMPANY. The arbitrator shall have jurisdiction and authority only to interpret and apply the provisions of this AGREEMENT with respect to the controversy being arbitrated, and shall not have the authority to add to, detract from, alter, or amend any of the provisions contained herein. In the event one party alleges that the other party failed to comply with the procedures in this section, the arbitrator shall determine issue.

## CREW BOAT – SECTION 33

The COMPANY agrees, before the beginning and after the end of each shift, to provide a suitable crew boat to convey the crew from the dredge or plant to the nearest shore point convenient to overland transportation unless the dredge is working adjacent to a structure that allows for employees to board and depart safely without a crew boat.

In the event a round trip takes more than 60 minutes from dock to dredge and dredge to dock, a minimum of $9.00 will be paid for each additional 30-minute period or fraction thereof.

## VACATION NOTIFICATION – SECTION 34

Employees desiring time off for vacation shall give the COMPANY and the Shop Steward 2 weeks notice. Such requests shall be granted and the UNION will furnish relief subject to approval of the COMPANY, as mutually agreed upon by the COMPANY and UNION in accordance with Section 3 of this AGREEMENT.

## MEDICAL – SECTION 35

Refer to Northern and/or Southern Addendum, SECTION 4.

## PENSION – SECTION 36

Refer to Northern and/or Southern Addendum, SECTION 5.

## VACATION – SECTION 37

Refer to Northern Addendum and/or Southern Addendum, SECTION 6.

## ANNUITY – SECTION 38

Refer to Northern and/or Southern Addendum, SECTION 7.

## ALLOCATION OF WAGES TO PLANS – SECTION 39

The UNION reserves the right to allocate a portion of the negotiated wage increases to any of the Fringe Benefit Plans, as it deems necessary.

## EMPLOYEES OF THE UNION – SECTION 40

The COMPANY recognizes and agrees that the Local 25, Marine Division, International Union of Operating Engineers Medical, Vacation and Annuity Plans and Central Pension Fund, or any successor Plans or Funds, in addition to providing coverage for employees within the classifications set forth in this collective bargaining AGREEMENT, has covered and will cover those officers, business agents and employees of the UNION for whose benefits the UNION pays employer contributions in the same amounts as are contributed by the COMPANY herein and other contributing employers, pursuant to the provisions of Sections 35, 36, 37 & 38 of this AGREEMENT. Reports and payments to the various Plans or Funds shall be made under the same requirements as stated for contributing employers elsewhere in this AGREEMENT.

## PERFORMANCE BOND – SECTION 41

The COMPANY agrees to post a financial guarantee bond or cash equivalent as agreed to and established by the Board of Trustees of the Benefit Plans or Funds.

1. In the event that the COMPANY should become delinquent in its reports and payments to the Medical, Vacation or Annuity Plans or Central Pension or Training Funds, or their successor Plans or Funds, the UNION shall have the right to withhold employees covered by this AGREEMENT from the COMPANY. The COMPANY will, nevertheless, be obligated to continue the employees' wages at the rates listed in this collective bargaining AGREEMENT until such time as the delinquent reports and payments have been made in accordance with the below listed sections; the no strike clause notwithstanding, provided however:

    a) No employees shall be withheld from any COMPANY under this section where the COMPANY has posted a bond and/or cash to secure its obligation to make reports and payments to the Medical, Vacation or Annuity Plans or Central Pension or Training Funds, or their successor Plans or Funds, so established as hereinabove provided, so long as the amount of bond so posted and/or cash deposited as security is sufficient to satisfy all debts, arrears or deficits due the above listed Plans or Funds by said COMPANY.

2. No employees shall be withheld from any COMPANY under this section until:

    a) The Administrator of the various Plans or Funds mentioned above, or the designee of the UNION, shall have first communicated with the said COMPANY apprising it of the delinquency or arrearages.

    b) In the event that the said COMPANY fails to satisfy all its obligations to the above listed Plans or Funds, after receiving notification from the office of the Administrator, the UNION office shall be so notified. The Business Manager of the Local UNION shall contact the COMPANY to arrange for immediate satisfaction of all claims. If claims for delinquency or arrearages are not satisfied immediately, the UNION shall have the right to withhold its employees until such delinquency is satisfied.

3. Remittance will be due on the 20th day of each month. Such remittance will be made on forms that contain the necessary information and details as to date and hours of employment of employees covered by the terms of this AGREEMENT. If the COMPANY fails to remit such payments to the aforesaid Benefit Plans or Funds within 10 days of being due, the Administrator of the aforesaid Plans or Funds shall assess an interest rate and administrative fees as determined by the Board of Trustees.

4. It is understood that all contributors to the Medical, Vacation and Annuity Plans and Central Pension and Training Funds, or their successor Plans or Funds, shall sign the AGREEMENT. An executed copy of this AGREEMENT shall be transmitted to the Administrator of the aforesaid Plans or Funds.

## MAINTENANCE AND CURE – SECTION 42

Employees who are entitled to Maintenance and Cure under the general Maritime Law shall be paid Maintenance at the rate of $20.00 per day with payments to be made every two weeks.

## CONTINUATION OF BENEFITS FOR OCCUPATIONAL ILLNESS – SECTION 43

The COMPANY agrees to continue contributions to the Local 25 Medical Plan and Central Pension Fund for an employee who becomes unemployed by reportable occupational injuries or occupational illness. Unless modified by the Board of Trustees of the Medical Plan, payment shall be 8 hours per day for a maximum of 40 hours per week for 3 months or until employee returns to work or is found "fit for duty".

## DEATH IN FAMILY AND JURY DUTY – SECTION 44

1. In case of death in an employee's immediate family (i.e. spouse, child, mother, father, sister, brother, grandmother, grandfather) the COMPANY shall grant such employee a maximum of 3 days off with pay for the express purpose of attending services for the deceased, provided those days are regular scheduled work days. A death certificate or other satisfactory proof of death must be submitted to the employer. The employee must be working for the COMPANY on the date of death of the family member.

2. Any employee who is called for jury duty, whether state or federal, and serves in such capacity, shall be paid the difference between the compensation for jury duty and his regular rate of pay based on a 40 hour work week, not to exceed 2 weeks.

## LEGALITY – SECTION 45

It is mutually agreed that if the adoption of any state or federal legislation or regulation conflicts with or is contrary to any of the provisions of this AGREEMENT, negotiations will be opened to make the necessary adjustment in the AGREEMENT, but the negotiations will be confined to changes in existing law or regulations.

## TERMINATION FOR CAUSE – SECTION 46

If an employee is terminated for cause, the reason will be communicated to the employee and the UNION in writing. Failure to do so shall be considered evidence that the employee remains in good standing with the COMPANY.

## TERM OF AGREEMENT – SECTION 47

This AGREEMENT shall become effective as of October 1, 2006 and shall continue in force and effect until September 30, 2009, and from year to year thereafter unless either of the parties shall notify the other in writing, giving at least 60 days notice prior to October 1st of any year for which it may have been automatically renewed, that it desires to terminate or modify this AGREEMENT.

## FAVORED NATIONS – SECTION 48

The COMPANY has the right to review any labor agreements entered into by the UNION including but not limited to job agreements, letter agreements and verbal agreements. The COMPANY has the right to make any language in these other contracts a part of this contract at its option. The UNION will furnish the required contract information within 3 calendar days of the COMPANY'S request for such information.

## FULL UNDERSTANDING – SECTION 49

It is mutually agreed that this AGREEMENT covers the entire understanding between the parties and this AGREEMENT shall not be modified or changed in any way except by mutual consent in writing.

## EQUAL OPPORTUNITY, ADA, FAMILY LEAVE – SECTION 50

1. **Equal Opportunity:** The COMPANY and the UNION agree that there will be no discrimination against any employee or applicant for employment because of race, creed, color, sex, age or national origin. This non-discrimination policy will include, but not limited to, the following: employment, upgrading, demotion or transfer, lay-off or termination, rates of pay or other compensation, recruitment or recruitment advertising and selection for training.

2. **Americans with Disabilities Act (ADA):** The COMPANY agrees that it shall not discriminate against employees on the basis of a physical or mental disability. The UNION agrees that employees dispatched from the Hiring Halls will be qualified to perform the required shipboard duties. The parties agree that, in the event an employee suffering from a disabling condition requests an accommodation enabling them to perform essential functions aboard the vessel, every reasonable effort will be made to accommodate the employee. Such accommodation will not, however, be required if it would create an undue hardship or would represent a substantial threat to the safety and well being of the COMPANY, the employee requesting the accommodation or other crew members.

3. **Family Leave:** The parties hereby agree that the COMPANY will comply with the provisions of the Family and Medical Leave Act of 1993, which establishes minimum standards for family and medical leave. The COMPANY further agrees to incorporate the provisions of the Act in their COMPANY policy and make said policy available upon request.

## INNOVATIVE EQUIPMENT – SECTION 51

Both existing and innovative types of equipment, which are unanticipated at the initial implementation of this AGREEMENT, may come to be operated in connection with dredging operations and dredged material. In order to accommodate this possibility, the COMPANY and the UNION mutually agree to establish additional classifications and rates to be included in this AGREEMENT. Such classifications and rates, if so established, will be documented by letter agreement signed by the Business Manager of the UNION and the Authorized Representative of

the COMPANY and will exist for one job only or be extended for a period within the term of this AGREEMENT as mutually agreed.

## SIGNATORY PAGE OF STANDARD MASTER AGREEMENT

Effective dates: October 1, 2006 through September 30, 2009

**In Witness hereof,** the parties hereto have caused these presents to be signed and duly executed.

**FOR THE COMPANY:**

COMPANY NAME: _Langenfelder Marine Inc._

BY: _[signature]_ PRESIDENT

BY: _____

ATTEST: _Melissa A Rarneau_

DATE: _10/26/06_

**FOR THE UNION:**

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 25, MARINE DIVISION

BY: _Ernest J. Whelan_

BY: _[signature]_

ATTEST: _Lynde Dicksin_

DATE: _11-7-06_

# INTERNATIONAL UNION OF OPERATING ENGINEERS
# LOCAL 25, MARINE DIVISION
## AFL – CIO

# STANDARD NORTHERN ADDENDUM



### Effective:

### October 1, 2006
### through
### September 30, 2009

*Agreement #*
*184435*

**NORTHERN ADDENDUM**
**TABLE OF CONTENTS**

| SECTION | TITLE | PAGE |
|---|---|---|
| 1 | TERRITORIAL ZONE | 3 |
| 2 | WORK WEEK AND OVERTIME | 3 |
| 3 | HOLIDAYS | 4 |
| 4 | MEDICAL | 4 |
| 5 | PENSION | 4 |
| 6 | VACATION | 4 |
| 7 | ANNUITY | 4 |
| 8 | LEAD DREDGEMAN | 5 |
| 9 | PRIVATELY INSURED NON-OCCUPATIONAL BENEFITS | 6 |
| 10 | SUBCONTRACTRING | 6 |
| 11 | LEGALITY | 6 |
|  | NORTHERN SCHEDULE "A" WAGES | 7 |
|  | INCENTIVE PAY | 8 |
|  | SIGNATORY PAGE | 9 |

## TERRITORIAL ZONE – SECTION 1

Whenever work covered by Section 1 of the Standard Master AGREEMENT is carried out within the territorial zone on the Atlantic Coast from the Canadian border to the southerly border of the State of Maryland, and tributary waters in this zone, this Northern Addendum will be in full effect as a supplement to the Standard Master AGREEMENT.

## WORK WEEK AND OVERTIME – SECTION 2

1. All work done in excess of 40 hours in any work week and on Saturday or Sunday shall be overtime and compensated for at 1 1/2 times the regular rate of pay except that compensation for work done on a holiday provided for in this AGREEMENT, shall be as provided in Section 13 hereof.

2. When an employee reports for duty as directed, he shall be offered at least 8 hours work, or paid for 8 hours plus subsistence, less late time.

3. It is recognized by the COMPANY and the UNION that, as a vehicle to allow more time off, a modified work schedule may be put into effect by mutual agreement, subject to any such modified work schedule being ratified and approved by the crew.

4. Under normal dredging operations, The COMPANY shall make available to each employee who is on the job on Monday, 48 hours work per week, running from Monday through Sunday inclusive provided the dredge or equipment is operating. In the event the dredge is shut down and the employee is laid off, wages will be paid up through the day his employment is terminated.

5. The COMPANY shall give employees 24 hours advance notice of a forthcoming temporary or permanent tie-up of equipment. In the event such advance notice is not possible, the COMPANY shall continue to employ the employees on watch, at the time of such tie-up, to the completion of that watch and shall not deprive employees scheduled to report for the next 2 watches of their employment. In any event, the Lead Dredgeman and Shop Steward shall be notified of such temporary or permanent tie-up of equipment.

   a) Employees retained by the COMPANY after the above watches have been completed shall be employed on a 40 hours per week work schedule, and shall be given 24 hours advance notice of lay-off.

   b) The COMPANY and the UNION realize that the Christmas holiday presents unique problems for work scheduling. Every effort will be made by the COMPANY to post sufficient notice of the Christmas holiday schedule to allow adequate time for travel and work schedules to be arranged.

   c) Because of the nature of the work in the stewards department, a day's work shall consist of eight 8 hours within a spread of twelve 12 hours.

## HOLIDAYS – SECTION 3

Holidays under this AGREEMENT are as follows:

| | | |
|---|---|---|
| New Year's Day | Labor Day | Veterans Day |
| Memorial Day | Thanksgiving Day | Martin Luther King, Jr. Day |
| Independence Day | Good Friday | Christmas Day |

## MEDICAL – SECTION 4

The COMPANY shall contribute to Local 25, Marine Division, International Union of Operating Engineers Medical Plan, established by an Agreement and Declaration of Trust entered into as of the 1st day of October 1959, the sum of $4.10 per hour effective October 1, 2006; $4.35 per hour effective October 1, 2007; $4.60 per hour effective October 1, 2008, for each hour worked by its employees covered by this AGREEMENT. The COMPANY shall be bound by all of the provisions of said Agreement and Declaration of Trust as the same now exists or may be hereafter amended by the parties thereto.

## PENSION – SECTION 5

The COMPANY, as of October 1, 2006, shall contribute to the International Union of Operating Engineers Central Pension Fund, the sum of $2.00 per hour for each hour worked by its employees covered by the AGREEMENT.

The COMPANY and the UNION agree that contributions to the International Union of Operating Engineers Central Pension Fund shall be based upon the terms of the merger Agreement between the International Union of Operating Engineers Central Pension Plan and the International Union of Operating Engineers, Local 25 Pension Fund, and the terms of the governing instruments of the International Union of Operating Engineers Central Pension Fund.

## VACATION – SECTION 6

The COMPANY, as of October 1, 2005, shall contribute to Local 25, Marine Division, International Union of Operating Engineers Vacation Plan, established by an Agreement and Declaration of Trust entered into as of the 1st day of October 1962, 7% of the straight time rate, plus $.20, multiplied by the total hours worked. The COMPANY shall be bound by all of the provisions of said Agreement and Declaration of Trust as the same now exists or may be hereafter amended by the parties thereto.

## ANNUITY – SECTION 7

1. The COMPANY, as of October 1, 2006, shall contribute to Local 25, Marine Division, International UNION of Operating Engineers Annuity Plan, established by an Agreement and Declaration of Trust entered into as of the 1st day of October, 1990 and as thereafter amended, the following sums for each hour worked by its employees covered by this collective bargaining AGREEMENT. The COMPANY shall be bound by and shall comply with all of

the applicable provisions of said Plan and Agreement and Declaration of Trust as the same now exists or may be hereafter amended by the Trustees of the Plan. The design and the features of the Annuity Plan shall be determined and adopted by the Trustees of the Annuity Plan.

    a) For Classification A, B1 and B2: the sum of $1.25 per hour for each straight time hour of employment and the sum of $1.88 per hour for each time and one half hour of employment.

    b) For Classifications C1 and C2: the sum of $.95 per hour for each straight time hour of employment and the sum of $1.43 per hour for each time and one half hour of employment.

    c) For Classification D: the sum of $.65 per hour for each straight time hour of employment and the sum of $.98 per hour for each time and one half hour of employment.

2. Effective January 1, 2007, every employee shall have the right to elect to defer a portion of his gross earnings to the 401k component of the Annuity Plan, up to the maximum permitted by the Internal Revenue Code, in accordance with the rules of the Plan as adopted by the Trustees. No matching contributions will be provided by the COMPANY.

Effective January 1, 2007, the COMPANY will make or cause to be made payroll deductions from the COMPANY'S participating employees' wages, in accordance with such participating employees' salary deferral elections subject to compliance with ERISA and the relevant provisions of the Internal Revenue Code. The COMPANY will transmit all amounts that have been withheld pursuant to the employees' salary deferral elections to the Annuity Plan or such other entity designated by the Trustees of the Annuity Plan to receive said deferred wages in such time, form and manner as determined by the Trustees of the Annuity Plan.

## LEAD DREDGEMAN – SECTION 8

Because of the nature and mobility of the COMPANY'S dredges and auxiliary equipment, a Lead Dredgeman will be included in the bargaining unit. A Lead Dredgeman will be employed whenever the COMPANY employs workers in other classifications covered by this collective bargaining AGREEMENT within the territorial zone of this addendum. The UNION will designate the Lead Dredgeman, subject to the approval of the COMPANY. The duties of the Lead Dredgeman will be determined by the COMPANY. These duties may include assisting the COMPANY in procuring crews, requiring responsible performance of duties by various crew members under the direction of the COMPANY'S representative, assisting designated Shop Stewards whenever necessary in processing jobsite grievances and to generally act to promote the welfare of the parties to this AGREEMENT. Because of the nature of their duties, the Lead Dredgeman will be required to work eight 8 hours during a calendar day whenever the COMPANY employs workers in other classifications covered by this AGREEMENT or as directed by the COMPANY. The COMPANY will reimburse the Lead Dredgeman for telephone and/or travel expense authorized by the COMPANY on its behalf in connection with his duties. The COMPANY will designate a representative as immediate supervisor of the Lead Dredgeman to oversee and direct the daily activities of the Lead Dredgeman. The Lead Dredgeman shall be

permitted to attend all officially called regular meetings of the UNION and all special meetings as may be called from time to time without loss of pay or subsistence.

## PRIVATELY INSURED NON-OCCUPATIONAL BENEFITS – SECTION 9

Excluding only the States of New Jersey and Rhode Island where contributions are made to state funds established by law, the COMPANY agrees to provide in other states within the territorial limits of this AGREEMENT privately insured non-occupational sickness and accident benefits identical with the benefits provided under the New York State law.

## SUBCONTRACTING – SECTION 10

The COMPANY, to the extent that it is engaged in onsite construction work, agrees that it will not sublet any work coming under the jurisdiction of International UNION of Operating Engineers, Local 25, Marine Division to any contractor who is not a signatory to an AGREEMENT with the aforesaid Local UNION, except where subcontractors satisfactory to the COMPANY cannot be furnished. The UNION and the COMPANY agree to discuss the matter so that the COMPANY may sublet to a contractor who can fulfill the requirements.

## LEGALITY – SECTION 11

In the event there is a conflict between this addendum and the Master AGREEMENT, the parties agree that this addendum shall take precedence.

## NORTHERN SCHEDULE "A" WAGES

| CLASS | CLASSIFICATION | 10/01/06 To 09/30/07 | 10/01/07 To 09/30/08 | 10/01/08 To 09/30/09 |
|-------|----------------|----------------------|----------------------|----------------------|
| A | Lead Dredgeman Operator Leverman | 31.59 | 32.09 | 32.89 |
| A | Dozer Operator Frontend Loader | to conform to the prevailing union wage in the locality in which the work is being performed | | |
| B1 | Licensed Tug Operator over 1000 HP Derrick Operator Spider/Spill Barge Operator Engineer Electrician Chief Welder Chief Mate Fill Placer Operator II Maintenance Engineer | 27.49 | 27.94 | 28.49 |
| B2 | Licensed Boat Operator Certified Welder | 25.79 | 26.29 | 26.84 |
| C1 | Mate Drag Barge Operator Steward Assistant Fill Placer Welder | 25.04 *25.55* | 25.49 *25.55* | 26.14 |
| C2 | Boat Operator | 24.29 | 24.79 | 25.29 |
| D | Shoreman Deckhand Rodman Scowman Cook Messman Porter / Janitor Oiler | 20.34 *20.43* | 20.64 | 21.09 |

## INCENTIVE PAY

| CLASSIFICATION | LICENSE / CERTIFICATION | ADD TO HOURLY RATE |
|---|---|---|
| Operator | NCCCO | $0.50 |
| Licensed Tug Op. over 1000 HP (assigned as Master) | USCG licensed Master of Towing Vessels (MOTV) | $1.00 |
| Licensed Boat Operator (assigned as lead boat captain) | USCG licensed boat operator | $0.50 |
| Engineer | QMED and Tankerman endorsement or licensed engineer (USCG) | $0.50 |
| Oiler | QMED and Tankerman endorsement (USCG) | $0.50 |
| All classifications | Tankerman endorsement only (USCG) | $0.25 |
| Deckhand or Mate | AB w/ Lifeboatman endorsement (USCG) | $0.50 |
| All classifications | Lifeboatman endorsement only (USCG) | $0.25 |
| Welder | ABS certification | $0.50 |

## SIGNATORY PAGE OF STANDARD NORTHERN ADDENDUM

Effective dates: October 1, 2006 through September 30, 2009

**In Witness hereof,** the parties hereto have caused these presents to be signed and duly executed.

### FOR THE COMPANY:

COMPANY NAME: _Langenfelder Marine Inc._

BY: _[signature]_ PRESIDENT

BY: _____

ATTEST: _Melissa Rousseau_

DATE: _10/26/06_

### FOR THE UNION:

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 25, MARINE DIVISION

BY: _Ernest P. Whelan_

BY: _[signature]_

ATTEST: _Lynda Deslow_

DATE: _11-7-06_

# INTERNATIONAL UNION OF OPERATING ENGINEERS
# LOCAL 25, MARINE DIVISION
## AFL – CIO

# STANDARD
# SOUTHERN ADDENDUM



Southern
Agreement 190-0978

**Effective:**

**October 1, 2006**
**through**
**September 30, 2009**

SSA FINAL - 10/01/06 – 09/30/09

# SOUTHERN ADDENDUM
## TABLE OF CONTENTS

| SECTION) | TITLE | PAGE |
|---|---|---|
| 1 | TERRITORIAL ZONE | 3 |
| 2 | WORK WEEK AND OVERTIME | 3 |
| 3 | HOLIDAYS | 3 |
| 4 | MEDICAL | 3 |
| 5 | PENSION | 4 |
| 6 | VACATION | 4 |
| 7 | ANNUITY | 4 |
| 8 | MANDATED WAGE REVERTER | 5 |
| 9 | LEGALITY | 5 |
| | SOUTHERN SCHEDULE "A" WAGES | 6 |
| | INCENTIVE PAY | 7 |
| | SIGNATORY PAGE | 8 |

## TERRITORIAL ZONE – SECTION 1

Whenever work covered by Section 1 of the Standard Master AGREEMENT is carried out within the territorial zone of the Atlantic coast south of the southerly border of the State of Maryland and on the Gulf coast east of the westerly limit of the Jacksonville, Florida, Corps of Engineers' District and tributary waters in this zone, this Southern Addendum will be in full effect as a supplement to the Standard Master AGREEMENT.

## WORK WEEK AND OVERTIME – SECTION 2

1.  8 hours shall constitute a regular day's work and 48 hours shall constitute a regular week's work when plant is operating. Overtime shall be compensated for at 1 ½ times the regular rate of pay of an employee and overtime shall be paid for all work in excess of 40 hours in any workweek.  In the Steward's Department, a day's work shall consist of 8 hours within a spread of 12 hours.

2.  When an employee reports for duty as directed, he shall be offered at least 8 hours work or paid for 8 hours, plus subsistence, less late time.

3.  If an employee living aboard a dredge is required to return to work after completion of his watch, he shall be offered his choice of the following scenarios as follows:

    a) If an employee works less than 2 hours he shall receive 2 additional hours of pay.

    b) If an employee works more than 2 hours, he shall be paid for all hours worked.

4.  It is recognized by the COMPANY and the UNION that, as a vehicle to allow more time off, a modified work schedule may be put into effect by mutual agreement, subject to any such modified work schedule being ratified and approved by the crew.

## HOLIDAYS – SECTION 3

Holidays under this AGREEMENT are as follows:

| | | | |
|---|---|---|---|
| New Year's Day | Labor Day | Memorial Day | Thanksgiving Day |
| Independence Day | Good Friday | Christmas Day | |

## MEDICAL – SECTION 4

The COMPANY shall contribute to Local 25, Marine Division, International Union of Operating Engineers Medical Plan, established by an Agreement and Declaration of Trust entered into as of the 1st day of October 1959, the sum of $4.10 per hour effective October 1, 2006; $4.35 per hour effective October 1, 2007; $4.60 per hour effective October 1, 2008, for each hour worked by its employees covered by this collective bargaining AGREEMENT.  The COMPANY shall be bound by all of the provisions of said Agreement and Declaration of Trust as the same now exists or may be hereafter amended by the parties thereto.

## PENSION – SECTION 5

The COMPANY, as of February 1, 2004, shall contribute to the International Union of Operating Engineers Central Pension Fund, the sum of $1.40 per hour for each hour worked by its employees covered by this AGREEMENT.

The COMPANY and the UNION agree that contributions to the International Union of Operating Engineers Central Pension Fund shall be based upon the terms of the merger agreement between the International Union of Operating Engineers Central Pension Fund and the International Union of Operating Engineers, Local 25 Pension Fund, and the terms of the governing instruments of the International Union of Operating Engineers Central Pension Fund.

## VACATION – SECTION 6

The COMPANY, as of February 1, 2006, shall contribute to the Local 25, Marine Division, International Union of Operating Engineers' Vacation Plan, established by an Agreement and Declaration of Trust entered into as of the 1st day of October 1962, 7% of the straight time rate multiplied by the total hours worked. The COMPANY shall be bound by all of the provisions of said Agreement and Declaration of Trust as the same now exists or may be hereafter amended by the parties thereto.

## ANNUITY – SECTION 7

1.  The COMPANY, as of October 1, 2006, shall contribute to Local 25, Marine Division, International UNION of Operating Engineers Annuity Plan, established by an Agreement and Declaration of Trust entered into as of the 1st day of October, 1990 and as thereafter amended, the following sums for each hour worked by its employees covered by this collective bargaining AGREEMENT. The COMPANY shall be bound by and shall comply with all of the applicable provisions of said Plan and Agreement and Declaration of Trust as the same now exists or may be hereafter amended by the Trustees of the Plan. The design and the features of the Annuity Plan shall be determined and adopted by the Trustees of the Annuity Plan.

    a)  For Classifications A, B1 and B2: the sum of $.40 per hour for each straight-time hour of employment and the sum of $.60 per hour for each time and one-half of employment.

    b)  For Classifications C1 and C2: the sum of $.30 per hour for each straight-time hour of employment and the sum of $.45 per hour for each time and one-half hour of employment.

    c)  For Classification D: the sum of $.20 per hour for each straight-time hour of employment and the sum of $.30 per hour for each time and one-half hour of employment.

2.  Effective January 1, 2007, every employee shall have the right to elect to defer a portion of his gross earnings to 401k component of the Annuity Plan, up to the maximum permitted by the Internal Revenue Code, in accordance with the rules of the Plan as adopted by the Trustees. No matching contributions will be provided by the COMPANY.

Effective January 1, 2007, the COMPANY will make or cause to be made payroll deductions from the COMPANY'S participating employees' wages, in accordance with such participating employees' salary deferral elections subject to compliance with ERISA and the relevant provisions of the Internal Revenue Code. The COMPANY will transmit all amounts that have been withheld pursuant to the employees' salary deferral elections to the Annuity Plan or such other entity designated by the Trustees of the Annuity Plan to receive said deferred wages in such time, form and manner as determined by the Trustees of the Annuity Plan.

## MANDATED WAGE REVERTER – SECTION 8

1. In the event that the employer bids on projects subject to Davis-Bacon or other minimum wage rate determinations, the wage rates so posted shall apply for the duration of the project in lieu of the wage rates in this AGREEMENT. In no case shall the employee receive less than 85% of the wage rates set forth in this AGREEMENT. Benefits as set forth in this AGREEMENT will remain unchanged.

2. It is recognized by the parties that, in areas covered by the Standard Southern Addendum, the construction market has encountered strong competition. In those areas where there are no wage rate determinations, it is in the interest of the employer and the UNION to cooperate so that the collective bargaining employer may compete more effectively. It is agreed that under such conditions, the employer and the UNION will meet to negotiate wage rates that will be applicable on a job-by-job basis.

## LEGALITY – SECTION 9

In the event there is a conflict between this addendum and the Master AGREEMENT, the parties agree that this addendum shall take precedence.

## SOUTHERN SCHEDULE "A" WAGES

| CLASS | CLASSIFICATION | 10/01/06 To 09/30/07 | 10/01/07 To 09/30/08 | 10/01/08 To 09/30/09 |
|---|---|---|---|---|
| A | Leverman<br>Operator<br>Drill Foreman | 23.00 | 24.70 | 25.85 |
| B1 | Licensed Tug Operator over 1000 HP<br>Derrick Operator<br>Spider/Spill Barge Operator<br>Timber Fork Operator<br>Dozer Operator<br>Engineer<br>Blaster/Driller<br>Fill Placer<br>Electrician | 21.10 | 22.05 | 22.80 |
| B2 | Licensed Boat Operator<br>Certified Welder | 20.70 | 21.55 | 22.30 |
| C1 | Mate<br>Drag Barge Operator<br>Welder<br>Assistant Fill Placer<br>Steward | 18.65 | 19.90 | 20.80 |
| C2 | Boat Operator | 17.80 | 18.80 | 19.80 |
| D | Shoreman<br>Deckhand<br>Rodman<br>Scowman<br>Cook<br>Messman<br>Welder's Helper<br>Oiler<br>Drill Helper<br>Janitor<br>Drill Oiler | 14.65<br><br><br><br><br><br><br><br><br><br>*14.89* | 15.85 | 16.85 |

## INCENTIVE PAY

The following Incentive Pay Schedule is an attempt to encourage members to seek further skill enhancements and/or to ascertain or upgrade licenses, certifications and certified endorsements.

| CLASSIFICATION | LICENSE / CERTIFICATION | ADD TO HOURLY RATE |
|---|---|---|
| Operator | NCCCO | $0.50 |
| Licensed Tug Op. over 1000 HP (assigned as Master) | USCG licensed Master of Towing Vessels (MOTV) | $1.00 |
| Licensed Boat Operator (assigned as lead boat captain) | USCG licensed boat operator | $0.50 |
| Engineer | QMED and Tankerman endorsement or licensed engineer (USCG) | $0.50 |
| Oiler | QMED and Tankerman endorsement (USCG) | $0.50 |
| All classifications | Tankerman endorsement only (USCG) | $0.25 |
| Deckhand or Mate | AB w/ Lifeboatman endorsement (USCG) | $0.50 |
| All classifications | Lifeboatman endorsement only (USCG) | $0.25 |
| Welder | ABS certification | $0.50 |

If a new position/classification is created during the term of this agreement, the wage and incentive rate will be mutually developed by the UNION and the COMPANY.

\* Each tug over 1000 HP shall have at least one licensed Master assigned to the vessel. The Master shall be paid a minimum of $1.00 more per hour than the relevant Licensed Tug Operator rate.

\*\* Regardless of which boat they are assigned to, the COMPANY shall employ at least one Licensed Lead Boat Captain for every working crew boat and tender tug boat. The Licensed Lead Boat Captain shall be paid a minimum of $0.50 more per hour than the relevant Licensed Boat Operator rate.

\*\*\* In order to receive the wage rate or incentive pay for a licensed or MMD rated classification, the individual must be in full regulatory compliance to work under his license or rating.

## SIGNATORY PAGE OF STANDARD SOUTHERN ADDENDUM

Effective dates: October 1, 2006 through September 30, 2009

**In Witness hereof,** the parties hereto have caused these presents to be signed and duly executed.

**FOR THE COMPANY:**

COMPANY NAME: _Langen Feldur Marine Inc_

BY: _[signature]_ PRESIDENT

BY: _____

ATTEST: _[signature] Melissa A Hausman_

DATE: _10/26/06_

**FOR THE UNION:**

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 25, MARINE DIVISION

BY: _[signature] Ernest J. Whelan_

BY: _[signature]_

ATTEST: _Lynda Disbrow_

DATE: _11-7-06_

SSA FINAL - 10/01/06 – 09/30/09                                      8

Exhibit D

# CENTRAL PENSION FUND
## INTERNATIONAL UNION OF OPERATING ENGINEERS
### EMPLOYER REPORT OF CONTRIBUTIONS
### REMITTANCE FORM

| WORK PERIOD COVERED | |
|---|---|
| BEGINNING | ENDING |
| 03/26/07 | 04/22/07 |

| EMPLOYER NAME & ADDRESS |
|---|
| *Langenfelder Marine. Inc.* |
| FIRM NAME |
| *400 Pier Avenue* |
| ADDRESS |
| *Stevensville, MD 21666* |
| CITY / STATE / ZIP CODE |
| TELEPHONE No.    *(410) 643-5560* |

| MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS |
|---|
| **Central Pension Fund** |
| **Remittance Form Processing** |
| **Department 76** |
| **Washington, DC 20055-0076** |

MONTH ENDING:    **Apr-07**

| FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
|---|---|---|---|
| 0000000075 | Pension | 10,399.50 | |
| | | | |
| | SEE ATTACHED | | |
| | W/E 04/01, 04/08, 04/15, 04/22 | | |
| | | | |
| | | | |
| | | | |
| | CHECK (S) TOTAL: | | 10,399.50 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement, or other written obligation approved by the CPF Board of Trustees.

_____

Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty for which is a fine of $10,000 or imprisonment of five years or both.

**Langenfelder Marine, Inc.**

Period End Dates 03/26/07 through 04/22/07

Union Summary Report
Craft 99    Class A

5/20/2007

Union:
Local:     LOCAL 25
Class:     CRAFT 99

OPERATING ENGINEERS

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe 1.00 per st hr | Annuity OT Fringe 1.50 per st hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adams, Scott | 10324 | 150.00 | 0.00 | 150.00 | 562.50 | 300.00 | 3,417.60 | 239.23 | 150.00 | 0.00 | 60.00 |
| Ayala, Jose | 9212 | 148.00 | 3.50 | 151.50 | 568.13 | 303.00 | 2,893.65 | 202.56 | 148.00 | 5.25 | 60.60 |
| Bast, Robert | 10235 | 168.00 | 0.00 | 168.00 | 630.00 | 336.00 | 2,901.36 | 203.10 | 168.00 | 0.00 | 67.20 |
| Borden, Robert | 10111 | 42.00 | 0.00 | 42.00 | 157.50 | 84.00 | 956.93 | 66.99 | 42.00 | 0.00 | 16.80 |
| Corkell, Thomas | 10253 | 151.75 | 0.00 | 151.75 | 569.06 | 303.50 | 2,661.70 | 186.32 | 151.75 | 0.00 | 60.70 |
| Dennis, Brendan | 10154 | 252.00 | 0.00 | 252.00 | 945.00 | 504.00 | 5,370.12 | 375.91 | 252.00 | 0.00 | 100.80 |
| Denny, Rodney | 0 | 150.00 | 0.00 | 150.00 | 562.50 | 300.00 | 2,280.00 | 159.60 | 150.00 | 0.00 | 60.00 |
| Edwards, James | 10077 | 162.00 | 0.50 | 162.50 | 609.38 | 325.00 | 2,850.25 | 199.52 | 162.00 | 0.75 | 65.00 |
| Fickel, Corey | 10080 | 102.00 | 0.00 | 102.00 | 382.50 | 204.00 | 1,550.40 | 108.53 | 102.00 | 0.00 | 40.80 |
| Fulton, Arthur | 4718 | 152.00 | 0.00 | 152.00 | 570.00 | 304.00 | 2,796.80 | 195.78 | 152.00 | 0.00 | 60.80 |
| Gill, Seth | 10311 | 85.50 | 0.00 | 85.50 | 320.63 | 171.00 | 1,499.67 | 104.98 | 85.50 | 0.00 | 34.20 |
| Heckard, Kurtis | 10130 | 6.00 | 0.00 | 6.00 | 22.50 | 12.00 | 103.60 | 7.25 | 6.00 | 0.00 | 2.40 |
| Johnson, Buddy | 10120 | 152.00 | 0.00 | 152.00 | 570.00 | 304.00 | 2,666.08 | 186.63 | 152.00 | 0.00 | 60.80 |
| Kibler, Donald | 10092 | 216.00 | 0.00 | 216.00 | 810.00 | 432.00 | 5,240.16 | 366.81 | 216.00 | 0.00 | 86.40 |
| Kroschinsky, Richard | 7022 | 140.00 | 38.00 | 178.00 | 667.50 | 356.00 | 3,426.50 | 239.86 | 140.00 | 57.00 | 71.20 |
| Legg, Chris | 8963 | 149.00 | 6.50 | 155.50 | 583.13 | 311.00 | 2,641.95 | 184.94 | 149.00 | 9.75 | 62.20 |
| Liberty, John | 2000 | 258.00 | 0.00 | 258.00 | 967.50 | 516.00 | 4,455.66 | 311.90 | 258.00 | 0.00 | 103.20 |
| Marchand, Keith | 10143 | 210.00 | 0.00 | 210.00 | 787.50 | 420.00 | 3,192.00 | 223.44 | 210.00 | 0.00 | 84.00 |
| Moore, Brandon T. | 7012 | 144.00 | 4.00 | 148.00 | 555.00 | 286.00 | 2,553.00 | 178.71 | 144.00 | 6.00 | 59.20 |
| Mullikin, Mike | 10310 | 140.00 | 0.00 | 140.00 | 525.00 | 280.00 | 2,455.60 | 171.89 | 140.00 | 0.00 | 56.00 |
| Murray, Scott | 10088 | 210.00 | 0.00 | 210.00 | 787.50 | 420.00 | 5,094.60 | 356.62 | 210.00 | 0.00 | 84.00 |
| Norris, Sam | 10139 | 152.00 | 0.00 | 152.00 | 570.00 | 304.00 | 4,000.64 | 280.04 | 152.00 | 0.00 | 60.80 |
| O'Keefe, Sean | 10041 | 198.00 | 0.00 | 198.00 | 742.50 | 396.00 | 4,803.48 | 336.24 | 198.00 | 0.00 | 79.20 |
| Rankin, David | 10005 | 234.00 | 0.00 | 234.00 | 877.50 | 468.00 | 3,293.55 | 230.55 | 234.00 | 0.00 | 93.60 |
| Schavelin, David | 10197 | 136.00 | 0.00 | 136.00 | 510.00 | 272.00 | 2,385.44 | 166.98 | 136.00 | 0.00 | 54.40 |
| Tolson, Harry | 4466 | 152.00 | 6.50 | 158.50 | 594.38 | 317.00 | 3,051.13 | 213.58 | 152.00 | 9.75 | 63.40 |
| Walker, Freeston | 10315 | 112.00 | 0.00 | 112.00 | 420.00 | 224.00 | 1,964.48 | 137.51 | 112.00 | 0.00 | 44.80 |
| Zador, Michael | 8206 | 152.00 | 4.00 | 156.00 | 585.00 | 312.00 | 2,572.44 | 180.07 | 152.00 | 6.00 | 62.40 |
| Zaiser, Donald | 8012 | 222.00 | 0.00 | 222.00 | 832.50 | 444.00 | 5,058.05 | 354.06 | 222.00 | 0.00 | 88.80 |
| **GRAND TOTALS** | | 4,546.25 * | 63.00 * | 4,609.25 * | 17,284.69 * | 9,218.50 * | 88,136.84 * | 6,169.58 * | 4,546.25 * | 94.50 * | 1,843.70 |
| | | | | | | | | | | | $39,157.22 |

Union Summary Report
Craft 98    Class B

5/20/2007

*Langenfelder Marine, Inc.*

Period End Dates 03/26/07 through 04/22/07

Union:  **OPERATING ENGINEERS**
Local:  LOCAL 25
Class:  CRAFT 98

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .85 per st hr | Annuity OT Fringe 1.28 per ot hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Brennan, Patrick | 10320 | 198.00 | 0.00 | 198.00 | 742.50 | 396.00 | 2,601.72 | 182.12 | 168.30 | 0.00 | 79.20 |
| Palacios, Julian | 10306 | 152.00 | 0.50 | 152.50 | 571.88 | 305.00 | 1,805.60 | 126.39 | 129.20 | 0.64 | 61.00 |
| Perentesis, George | 10009 | 240.00 | 0.00 | 240.00 | 900.00 | 480.00 | 3,153.60 | 220.75 | 204.00 | 0.00 | 96.00 |
| | | 590.00 * | 0.50 * | 590.50 | 2,214.38 * | 1,181.00 * | 7,560.92 * | 529.26 * | 501.50 * | 0.64 * | 236.20 |
| | | | | | | | | | | | $4,662.98 |
| GRAND TOTALS | | 5,136.25 * | 63.50 * | 5,199.75 * | 19,499.06 * | 10,399.50 * | 95,697.76 * | 6,698.84 * | 5,047.75 * | 95.14 * | 2,079.90 |
| | | | | | | | | | | | $43,820.20 |

GRAND TOTALS of Both Pages

# CENTRAL PENSION FUND
# INTERNATIONAL UNION OF OPERATING ENGINEERS
## EMPLOYER REPORT OF CONTRIBUTIONS
## REMITTANCE FORM

| WORK PERIOD COVERED | |
|---|---|
| BEGINNING | ENDING |
| 03/26/07 | 04/22/07 |

| EMPLOYER NAME & ADDRESS |
|---|
| *Langenfelder Marine, Inc.* |
| FIRM NAME |
| *400 Pier Avenue* |
| ADDRESS |
| *Stevensville, MD 21666* |
| CITY / STATE / ZIP CODE |
| TELEPHONE No. (410) 643-5560 |

| MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS: |
|---|
| **Central Pension Fund** |
| **Remittance Form Processing** |
| **Department 76** |
| **Washington, DC 20055-0076** |

MONTH ENDING:  **Apr-07**

| | FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
|---|---|---|---|---|
| | 0000000075 | Pension | 80.00 | |
| | | | | |
| | | | | |
| | | SEE ATTACHED | | |
| | | W/E 04/01, 04/08, 04/15, 04/22 | | |
| | | | | |
| | | | | |
| | | | | |
| | | CHECK (S) TOTAL: | | 80.00 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true
and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement,
or other written obligation approved by the CPF Board of Trustees.

_____

Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty
for which is a fine of $10,000 or imprisonment of five years or both.

*Langenfelder Marine, Inc.*

Period End Dates 03/26/07 through 04/22/07

Union Summary Report
Craft 42   Class A & B

5/20/2007

Union:  OPERATING ENGINEERS
Local:  LOCAL 25
Class:  CRAFT 42

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe 1.25 per st hr | Annuity OT Fringe 1.88 per ot hr | Training .05 per hr | Dues-Amt Deduct 2.25% gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Edwards, James | 10077 | 16.00 | 0.00 | 16.00 | 65.60 | 32.00 | 505.44 | 38.58 | 20.00 | 0.00 | 0.80 | 11.37 |
| Kroschinsky, Richard | 7022 | 8.00 | 0.00 | 8.00 | 32.80 | 16.00 | 252.72 | 19.29 | 10.00 | 0.00 | 0.40 | 5.69 |
| Schavelin, David | 10197 | 16.00 | 0.00 | 16.00 | 65.60 | 32.00 | 505.44 | 38.58 | 20.00 | 0.00 | 0.80 | 11.37 |
| GRAND TOTALS | | 40.00 * | 0.00 * | 40.00 * | 164.00 * | 80.00 * | 1,263.60 * | 96.45 * | 50.00 * | 0.00 | 2.00 | 28.43 * |

$420.88

# CENTRAL PENSION FUND
# INTERNATIONAL UNION OF OPERATING ENGINEERS
## EMPLOYER REPORT OF CONTRIBUTIONS
## REMITTANCE FORM

| WORK PERIOD COVERED | |
|---|---|
| BEGINNING | ENDING |
| 04/23/07 | 05/20/07 |

| EMPLOYER NAME & ADDRESS |
|---|
| *Langenfelder Marine. Inc.* |
| FIRM NAME |
| *400 Pier Avenue* |
| ADDRESS |
| *Stevensville, MD 21666* |
| CITY / STATE / ZIP CODE |
| TELEPHONE No.    *(410) 643-5560* |

| MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS: |
|---|
| **Central Pension Fund** |
| **Remittance Form Processing** |
| **Department 76** |
| **Washington, DC 20055-0076** |

MONTH ENDING:    **May-07**

| FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
|---|---|---|---|
| 0000000075 | Pension | 10,226.00 | |
| | | | |
| | | | |
| | SEE ATTACHED | | |
| | W/E 04/29, 05/06, 05/13, 05/20 | | |
| | | | |
| | | | |
| | | | |
| CHECK (S) TOTAL: | | | 10,226.00 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true
and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement,
or other written obligation approved by the CPF Board of Trustees.

_____

Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty
for which is a fine of $10,000 or imprisonment of five years or both.

*Langenfelder Marine, Inc.*

Period End Dates 04/23/07 through 05/20/07

Union Summary Report
Craft 99    Class A

6/20/2007

Union: OPERATING ENGINEERS
Local: LOCAL 25
Class: CRAFT 99

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe 1.00 per st hr | Annuity OT Fringe 1.50 per ot hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adams, Scott | 10324 | 126.00 | 0.00 | 126.00 | 472.50 | 252.00 | 2,870.78 | 200.95 | 126.00 | 0.00 | 50.40 |
| Ayala, Jose | 9212 | 153.00 | 0.00 | 153.00 | 573.75 | 306.00 | 2,922.30 | 204.56 | 153.00 | 0.00 | 61.20 |
| Corkell, Thomas | 10253 | 160.00 | 0.25 | 160.25 | 600.94 | 320.50 | 2,810.79 | 196.76 | 160.00 | 0.38 | 64.10 |
| Dennis, Brendan | 10154 | 288.00 | 0.00 | 288.00 | 1,080.00 | 576.00 | 6,137.28 | 429.61 | 288.00 | 0.00 | 115.20 |
| Denny, Rodney | 0 | 157.50 | 0.00 | 157.50 | 590.63 | 315.00 | 2,394.00 | 167.58 | 157.50 | 0.00 | 63.00 |
| Edwards, James | 10077 | 149.50 | 15.50 | 165.00 | 618.75 | 330.00 | 2,984.58 | 208.92 | 149.50 | 23.25 | 66.00 |
| Fickel, Corey | 10080 | 156.00 | 0.00 | 156.00 | 585.00 | 312.00 | 2,371.20 | 165.98 | 156.00 | 0.00 | 62.40 |
| Fulton, Arthur | 4718 | 144.00 | 0.25 | 144.25 | 540.94 | 288.50 | 2,654.20 | 185.79 | 144.00 | 0.38 | 57.70 |
| Gill, Seth | 10311 | 107.50 | 0.00 | 107.50 | 403.13 | 215.00 | 1,885.55 | 131.99 | 107.50 | 0.00 | 43.00 |
| Heckard, Kurtis | 10130 | 144.00 | 0.00 | 144.00 | 540.00 | 288.00 | 2,486.30 | 174.04 | 144.00 | 0.00 | 57.60 |
| Johnson, Buddy | 10120 | 153.00 | 0.00 | 153.00 | 573.75 | 306.00 | 2,683.62 | 187.85 | 153.00 | 0.00 | 61.20 |
| Kibler, Donald | 10092 | 144.00 | 0.00 | 144.00 | 540.00 | 288.00 | 3,493.44 | 244.54 | 144.00 | 0.00 | 57.60 |
| Kroschinsky, Richard | 7022 | 160.00 | 60.00 | 220.00 | 825.00 | 440.00 | 4,235.00 | 296.45 | 160.00 | 90.00 | 88.00 |
| Legg, Chris | 8963 | 160.00 | 12.00 | 172.00 | 645.00 | 344.00 | 2,922.28 | 204.56 | 160.00 | 18.00 | 68.80 |
| Liberty, John | 2000 | 30.00 | 0.00 | 30.00 | 112.50 | 60.00 | 518.10 | 36.27 | 30.00 | 0.00 | 12.00 |
| Marchand, Keith | 10143 | 210.00 | 0.00 | 210.00 | 787.50 | 420.00 | 3,192.00 | 223.44 | 210.00 | 0.00 | 84.00 |
| McDowell, Edward | 8098 | 152.00 | 0.00 | 152.00 | 570.00 | 304.00 | 2,666.08 | 186.63 | 152.00 | 0.00 | 60.80 |
| Moore, Brandon T. | 7012 | 136.00 | 12.50 | 148.50 | 556.88 | 297.00 | 2,561.63 | 179.31 | 136.00 | 18.75 | 59.40 |
| Mullikin, Mike | 10310 | 83.00 | 0.00 | 83.00 | 311.25 | 166.00 | 1,455.82 | 101.91 | 83.00 | 0.00 | 33.20 |
| Murray, Scott | 10088 | 252.00 | 0.00 | 252.00 | 945.00 | 504.00 | 6,113.52 | 427.95 | 252.00 | 0.00 | 100.80 |
| Norris, Sam | 10139 | 136.00 | 0.00 | 136.00 | 510.00 | 272.00 | 3,579.52 | 250.57 | 136.00 | 0.00 | 54.40 |
| O'Keefe, Sean | 10041 | 186.00 | 0.00 | 186.00 | 697.50 | 372.00 | 4,512.36 | 315.87 | 186.00 | 0.00 | 74.40 |
| Rankin, David | 10005 | 198.00 | 0.00 | 198.00 | 742.50 | 396.00 | 2,786.85 | 195.08 | 198.00 | 0.00 | 79.20 |
| Schavelin, David | 10197 | 143.00 | 8.50 | 151.50 | 568.13 | 303.00 | 2,657.31 | 186.01 | 143.00 | 12.75 | 60.60 |
| Tolson, Harry | 4466 | 136.00 | 0.00 | 136.00 | 510.00 | 272.00 | 2,618.00 | 183.26 | 136.00 | 0.00 | 54.40 |
| Walker, Freeston | 10315 | 152.00 | 1.00 | 153.00 | 573.75 | 306.00 | 2,683.62 | 187.85 | 152.00 | 1.50 | 61.20 |
| Zador, Michael | 8206 | 133.50 | 26.00 | 159.50 | 598.13 | 319.00 | 2,630.16 | 184.11 | 133.50 | 39.00 | 63.80 |
| Zaiser, Donald | 8012 | 144.00 | 0.00 | 144.00 | 540.00 | 288.00 | 3,280.90 | 229.66 | 144.00 | 0.00 | 57.60 |
| GRAND TOTALS | | 4,294.00 * | 136.00 * | 4,430.00 * | 16,612.50 * | 8,860.00 * | 84,107.19 * | 5,887.50 * | 4,294.00 * | 204.00 * | 1,772.00 |
| | | | | | * | | | | | | $37,630.00 |

Union Summary Report
Craft 98    Class B

6/20/2007

*Langenfelder Marine, Inc.*

Period End Dates 04/23/07 through 05/20/07

Union: **OPERATING ENGINEERS**
Local: LOCAL 25
Class: CRAFT 98

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .85 per st hr | Annuity OT Fringe 1.28 per ot hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Artone, Alan | 10236 | 60.00 | 0.00 | 60.00 | 225.00 | 120.00 | 788.40 | 55.19 | 51.00 | 0.00 | 24.00 |
| Brennan, Patrick | 10320 | 255.00 | 0.00 | 255.00 | 956.25 | 510.00 | 3,350.70 | 234.55 | 216.75 | 0.00 | 102.00 |
| Palacios, Julian | 10306 | 158.00 | 0.00 | 158.00 | 592.50 | 316.00 | 1,870.72 | 130.95 | 134.30 | 0.00 | 63.20 |
| Perentesis, George | 10009 | 210.00 | 0.00 | 210.00 | 787.50 | 420.00 | 2,759.40 | 193.16 | 178.50 | 0.00 | 84.00 |
| | | 683.00 * | 0.00 * | 683.00 * | 2,561.25 * | 1,366.00 * | 8,769.22 * | 613.85 * | 580.55 * | 0.00 * | 273.20 |
| | | | | | | | | | | | $5,394.85 |
| GRAND TOTALS | | 4,977.00 * | 136.00 * | 5,113.00 * | 19,173.75 * | 10,226.00 * | 92,876.41 * | 6,501.35 * | 4,874.55 * | 204.00 * | 2,045.20 |
| | | | | | | | | | | | $43,024.85 |

GRAND TOTALS of Both Pages

# CENTRAL PENSION FUND
# INTERNATIONAL UNION OF OPERATING ENGINEERS
## EMPLOYER REPORT OF CONTRIBUTIONS
## REMITTANCE FORM

| WORK PERIOD COVERED | |
|---|---|
| BEGINNING | ENDING |
| 04/23/07 | 05/20/07 |

| EMPLOYER NAME & ADDRESS |
|---|
| *Langenfelder Marine, Inc.* |
| FIRM NAME |
| *400 Pier Avenue* |
| ADDRESS |
| *Stevensville, MD 21666* |
| CITY / STATE / ZIP CODE |
| **TELEPHONE No. (410) 643-5560** |

| MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS: |
|---|
| **Central Pension Fund** |
| **Remittance Form Processing** |
| **Department 76** |
| **Washington, DC 20055-0076** |

MONTH ENDING:    **May-07**

| FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
|---|---|---|---|
| 0000000075 | Pension | 120.00 | |
| | | | |
| | | SEE ATTACHED | |
| | | W/E 04/29, 05/06, 05/13, 05/20 | |
| | | | |
| | | | |
| | CHECK (S) TOTAL: | | 120.00 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true
and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement,
or other written obligation approved by the CPF Board of Trustees.

_____
Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty
for which is a fine of $10,000 or imprisonment of five years or both.

*Langenfelder Marine, Inc.*

Union Summary Report
Craft 42   Class A & B

6/20/2007

Period End Dates 04/23/07 through 05/20/07

Union:   OPERATING ENGINEERS
Local:   LOCAL 25
Class:   CRAFT 42

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe 1.25 per st hr | Annuity OT Fringe 1.88 per ot hr | Training .05 per hr | Dues-Amt Deduct 2.25% * gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Edwards, James | 10077 | 24.00 | 0.00 | 24.00 | 98.40 | 48.00 | 758.16 | 57.87 | 30.00 | 0.00 | 1.20 | 17.06 |
| Schavelin, David | 10197 | 9.00 | 0.00 | 9.00 | 36.90 | 18.00 | 284.31 | 21.70 | 11.25 | 0.00 | 0.45 | 6.40 |
| Zador, Michael | 8206 | 22.50 | 4.50 | 27.00 | 110.70 | 54.00 | 852.94 | 65.11 | 28.13 | 8.46 | 1.35 | 19.19 |
| GRAND TOTALS | | 55.50 * | 4.50 * | 60.00 * | 246.00 * | 120.00 * | 1,895.41 * | 144.68 * | 69.38 * | 8.46 | 3.00 | 42.65 * |

$634.16

# CENTRAL PENSION FUND
# INTERNATIONAL UNION OF OPERATING ENGINEERS
## EMPLOYER REPORT OF CONTRIBUTIONS
## REMITTANCE FORM

| WORK PERIOD COVERED | |
|---|---|
| BEGINNING | ENDING |
| 05/21/07 | 06/24/07 |

| EMPLOYER NAME & ADDRESS |
|---|
| *Langenfelder Marine. Inc.*<br>FIRM NAME<br>*400 Pier Avenue*<br>ADDRESS<br>*Stevensville, MD 21666*<br>CITY / STATE / ZIP CODE<br>TELEPHONE No.     *(410) 643-5560* |

| MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS: |
|---|
| **Central Pension Fund**<br>**Remittance Form Processing**<br>**Department 76**<br>**Washington, DC 20055-0076** |

MONTH ENDING:     **Jun-07**

| FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
|---|---|---|---|
| 0000000075 | Pension | 13,798.50 | |
| | | | |
| | SEE ATTACHED | | |
| | W/E 05/27, 06/03, 06/10, 06/17, 06/24 | | |
| | | | |
| | | | |
| | | | |
| CHECK (S) TOTAL: | | | 13,798.50 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement, or other written obligation approved by the CPF Board of Trustees.

_____
Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty for which is a fine of $10,000 or imprisonment of five years or both.

*Langenfelder Marine, Inc.*

Union Summary Report
Craft 99    Class A

7/20/2007

Period End Dates 05/21/07 through 06/24/07

Union: OPERATING ENGINEERS
Local: LOCAL 25
Class: CRAFT 99

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe 1.00 per st pay | Annuity OT Fringe 1.50 per st hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alaniz, Alfredo | 0 | 160.00 | 91.00 | 251.00 | 941.25 | 502.00 | 4,919.94 | 344.40 | 160.00 | 136.50 | 100.40 |
| Ayala, Jose | 9212 | 192.00 | 31.50 | 223.50 | 838.13 | 447.00 | 4,268.85 | 298.82 | 192.00 | 47.25 | 89.40 |
| Baker, Jason | 0 | 40.00 | 17.00 | 57.00 | 213.75 | 114.00 | 999.78 | 69.98 | 40.00 | 25.50 | 22.80 |
| Corkell, Thomas | 10253 | 184.00 | 18.00 | 202.00 | 757.50 | 404.00 | 3,543.08 | 248.02 | 184.00 | 27.00 | 80.80 |
| Dennis, Brendan | 10154 | 246.00 | 0.00 | 246.00 | 922.50 | 492.00 | 5,302.55 | 371.18 | 246.00 | 0.00 | 98.40 |
| Denny, Rodney | 0 | 212.00 | 0.00 | 212.00 | 795.00 | 424.00 | 3,222.40 | 225.57 | 212.00 | 0.00 | 84.80 |
| Edwards, James | 10077 | 205.50 | 69.50 | 275.00 | 1,031.25 | 550.00 | 5,041.74 | 352.92 | 205.50 | 104.25 | 110.00 |
| Fulton, Arthur | 4718 | 192.00 | 10.25 | 202.25 | 758.44 | 404.50 | 3,721.40 | 260.50 | 192.00 | 15.38 | 80.90 |
| Gill, Seth | 10311 | 131.50 | 0.00 | 131.50 | 493.13 | 263.00 | 2,306.51 | 161.46 | 131.50 | 0.00 | 52.60 |
| Godfrey, Andrew | 0 | 204.00 | 0.00 | 204.00 | 765.00 | 408.00 | 3,523.08 | 246.62 | 204.00 | 0.00 | 81.60 |
| Harrison, William | 10283 | 120.00 | 4.00 | 124.00 | 465.00 | 248.00 | 2,174.96 | 152.25 | 120.00 | 6.00 | 49.60 |
| Heckard, Kurtis | 10130 | 192.00 | 0.00 | 192.00 | 720.00 | 384.00 | 3,315.07 | 232.05 | 192.00 | 0.00 | 76.80 |
| Johnson, Buddy | 10120 | 176.00 | 0.00 | 176.00 | 660.00 | 352.00 | 3,087.04 | 216.09 | 176.00 | 0.00 | 70.40 |
| Kibler, Donald | 10092 | 300.00 | 0.00 | 300.00 | 1,125.00 | 600.00 | 7,528.74 | 527.01 | 300.00 | 0.00 | 120.00 |
| Kroschinsky, Richard | 7022 | 80.00 | 25.50 | 105.50 | 395.63 | 211.00 | 2,030.88 | 142.16 | 80.00 | 38.25 | 42.20 |
| Legg, Chris | 8963 | 191.50 | 93.00 | 284.50 | 1,066.88 | 569.00 | 4,833.66 | 338.36 | 191.50 | 139.50 | 113.80 |
| Liberty, John | 2000 | 168.00 | 0.00 | 168.00 | 630.00 | 336.00 | 2,900.69 | 203.05 | 168.00 | 0.00 | 67.20 |
| Marchand, Keith | 10143 | 336.00 | 0.00 | 336.00 | 1,260.00 | 672.00 | 5,107.20 | 357.50 | 336.00 | 0.00 | 134.40 |
| McDowell, Edward | 8098 | 164.00 | 17.50 | 181.50 | 680.63 | 363.00 | 3,183.51 | 222.85 | 164.00 | 26.25 | 65.60 |
| Moore, Brandon T. | 7012 | 192.00 | 100.00 | 292.00 | 1,095.00 | 584.00 | 5,037.00 | 352.59 | 192.00 | 150.00 | 116.80 |
| Mullikin, Mike | 10310 | 55.00 | 0.00 | 55.00 | 206.25 | 110.00 | 964.70 | 67.53 | 55.00 | 0.00 | 22.00 |
| Murray, Scott | 10088 | 276.00 | 0.00 | 276.00 | 1,035.00 | 552.00 | 6,910.68 | 483.75 | 276.00 | 0.00 | 110.40 |
| Norris, Sam | 10139 | 163.00 | 13.00 | 176.00 | 660.00 | 352.00 | 4,632.32 | 324.26 | 163.00 | 19.50 | 70.40 |
| O'Keefe, Sean | 10041 | 324.00 | 0.00 | 324.00 | 1,215.00 | 648.00 | 8,087.10 | 566.10 | 324.00 | 0.00 | 129.60 |
| Rankin, David | 10005 | 222.00 | 0.00 | 222.00 | 832.50 | 444.00 | 3,124.65 | 218.73 | 222.00 | 0.00 | 88.80 |
| Schavelin, David | 10197 | 178.50 | 22.50 | 201.00 | 753.75 | 402.00 | 3,525.54 | 246.79 | 178.50 | 33.75 | 80.40 |
| Stewart, Carl | 10145 | 138.00 | 0.00 | 138.00 | 517.50 | 276.00 | 2,097.60 | 146.83 | 138.00 | 0.00 | 55.20 |
| Tolson, Harry | 4466 | 182.00 | 36.50 | 218.50 | 819.38 | 437.00 | 4,206.13 | 294.43 | 182.00 | 54.75 | 87.40 |
| Walker, Freeston | 10315 | 192.00 | 36.00 | 228.00 | 855.00 | 456.00 | 3,999.12 | 279.94 | 192.00 | 54.00 | 91.20 |
| Zador, Michael | 8206 | 192.00 | 84.00 | 276.00 | 1,035.00 | 552.00 | 4,551.24 | 318.59 | 192.00 | 126.00 | 110.40 |
| Zaiser, Donald | 8012 | 42.00 | 0.00 | 42.00 | 157.50 | 84.00 | 956.93 | 66.99 | 42.00 | 0.00 | 16.80 |
| GRAND TOTALS | | 5,651.00 * | 669.25 * | 6,320.25 * | 23,700.94 * | 12,640.50 * | 119,104.09 * | 8,337.29 * | 5,651.00 * | 1,003.88 * | 2,528.10 |

$53,861.70

Union Summary Report
Craft 98   Class B

7/20/2007

*Langenfelder Marine, Inc.*

Period End Dates 05/21/07 through 06/24/07

Union: **OPERATING ENGINEERS**
Local: LOCAL 25
Class: CRAFT 98

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .85 per st hr | Annuity OT Fringe 1.28 per ot hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bowman, Brian | 10269 | 150.00 | 3.00 | 153.00 | 573.75 | 306.00 | 2,354.67 | 164.83 | 127.50 | 3.84 | 61.20 |
| Brennan, Patrick | 10320 | 42.00 | 0.00 | 42.00 | 157.50 | 84.00 | 551.88 | 38.63 | 35.70 | 0.00 | 16.80 |
| Palacios, Julian | 10306 | 40.00 | 0.00 | 40.00 | 150.00 | 80.00 | 473.60 | 33.15 | 34.00 | 0.00 | 16.00 |
| Perentesis, George | 10009 | 252.00 | 0.00 | 252.00 | 945.00 | 504.00 | 3,311.28 | 231.79 | 214.20 | 0.00 | 100.80 |
| Schrock, James | 10112 | 68.00 | 24.00 | 92.00 | 345.00 | 184.00 | 1,212.56 | 84.88 | 57.80 | 30.72 | 36.80 |
| | | 552.00 * | 27.00 * | 579.00 | 2,171.25 * | 1,158.00 * | 7,903.99 * | 553.28 * | 469.20 * | 34.56 * | 231.60 |
| | | | | | * | * | | | | | $4,617.89 |
| GRAND TOTALS | | 6,203.00 * | 696.25 * | 6,899.25 * | 25,872.19 * | 13,798.50 * | 127,008.08 * | 8,890.57 * | 6,120.20 * | 1,038.44 * | 2,759.70 |
| | | | | | * | * | | | | | $58,479.59 |

GRAND TOTALS of Both Pages

# CENTRAL PENSION FUND
# INTERNATIONAL UNION OF OPERATING ENGINEERS
## EMPLOYER REPORT OF CONTRIBUTIONS
## REMITTANCE FORM

| WORK PERIOD COVERED | |
|---|---|
| BEGINNING | ENDING |
| 05/21/07 | 06/24/07 |

| EMPLOYER NAME & ADDRESS |
|---|
| *Langenfelder Marine, Inc.*<br>FIRM NAME<br>***400 Pier Avenue***<br>ADDRESS<br>***Stevensville, MD 21666***<br>CITY / STATE / ZIP CODE<br>**TELEPHONE No. (410) 643-5560** |

| MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS: |
|---|
| **Central Pension Fund**<br>**Remittance Form Processing**<br>**Department 76**<br>**Washington, DC 20055-0076** |

MONTH ENDING:     **Jun-07**

| | FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
|---|---|---|---|---|
| | 0000000075 | Pension | 147.00 | |
| | | | | |
| | | SEE ATTACHED | | |
| | | W/E 05/27, 06/03, 06/10, 06/17, 06/24 | | |
| | | | | |
| | | | | |
| | | | | |
| | | **CHECK(S) TOTAL:** | | 147.00 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement, or other written obligation approved by the CPF Board of Trustees.

_____
Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty for which is a fine of $10,000 or imprisonment of five years or both.

Langenfelder Marine, Inc.

Period End Dates 05/21/07 through 06/24/07

Union Summary Report
Craft 42   Class A & B

7/20/2007

Union:  OPERATING ENGINEERS
Local:  LOCAL 25
Class:  CRAFT 42

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe 1.25 per st hr | Annuity OT Fringe 1.88 per ot hr | Training .05 per hr | Dues-Amt Deduct 2.25% * gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Edwards, James | 10077 | 24.00 | 0.00 | 24.00 | 98.40 | 48.00 | 758.16 | 57.87 | 30.00 | 0.00 | 1.20 | 17.06 |
| Norris, Sam | 10139 | 24.00 | 0.00 | 24.00 | 98.40 | 48.00 | 770.16 | 58.71 | 30.00 | 0.00 | 1.20 | 17.33 |
| Schavelin, David | 10197 | 9.50 | 0.00 | 9.50 | 38.95 | 19.00 | 300.11 | 22.91 | 11.88 | 0.00 | 0.48 | 6.75 |
| Tolson, Harry | 4466 | 10.00 | 6.00 | 16.00 | 65.60 | 32.00 | 505.44 | 38.58 | 12.50 | 11.28 | 0.80 | 11.37 |
| GRAND TOTALS | | 67.50 * | 6.00 * | 73.50 * | 301.35 * | 147.00 * | 2,333.87 * | 178.07 * | 84.38 * | 11.28 | 3.68 * | 52.51 * |

$778.26

# CENTRAL PENSION FUND
# INTERNATIONAL UNION OF OPERATING ENGINEERS
## EMPLOYER REPORT OF CONTRIBUTIONS
## REMITTANCE FORM

| WORK PERIOD COVERED | |
|---|---|
| BEGINNING | ENDING |
| 06/25/07 | 07/22/07 |

| EMPLOYER NAME & ADDRESS |
|---|
| *Langenfelder Marine, Inc.* |
| FIRM NAME |
| *400 Pier Avenue* |
| ADDRESS |
| *Stevensville, MD 21666* |
| CITY / STATE / ZIP CODE |
| TELEPHONE No. (410) 643-5560 |

| MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS: |
|---|
| **Central Pension Fund** |
| **Remittance Form Processing** |
| **Department 76** |
| **Washington, DC 20055-0076** |

MONTH ENDING:    **Jul-07**

| FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
|---|---|---|---|
| 0000000075 | Pension | 7,843.00 | |
| | | | |
| | | SEE ATTACHED | |
| | | W/E 07/01, 07/08, 07/15, 07/22 | |
| | | | |
| | | | |
| | CHECK (S) TOTAL: | | 7,843.00 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement, or other written obligation approved by the CPF Board of Trustees.

_____
Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty for which is a fine of $10,000 or imprisonment of five years or both.

*Langenfelder Marine, Inc.*

8/20/2007

Union Summary Report
Craft 42   Class A & B

Period End Dates 06/25/07 through 07/22/07

Union:   OPERATING ENGINEERS
Local:   LOCAL 25
Class:   CRAFT 42

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe 1.25 per st hr | Annuity OT Fringe 1.88 per st hr | Training .05 per hr | Dues-Amt Deduct 2.25% gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alaniz, Alfredo | 10318 | 80.00 | 116.00 | 196.00 | 803.60 | 392.00 | 6,191.64 | 472.61 | 100.00 | 218.08 | 9.80 | 139.31 |
| Alaniz, Antonio | 10333 | 80.00 | 81.00 | 161.00 | 660.10 | 322.00 | 5,085.99 | 388.22 | 100.00 | 152.28 | 8.05 | 114.43 |
| Baker, Jason | 10321 | 40.00 | 49.00 | 89.00 | 364.90 | 178.00 | 2,161.81 | 169.13 | 50.00 | 92.12 | 4.45 | 48.64 |
| Brewer, Robert | 10214 | 160.00 | 142.00 | 302.00 | 1,238.20 | 604.00 | 8,301.98 | 641.54 | 200.00 | 266.96 | 15.10 | 186.79 |
| Edwards, James | 10077 | 8.50 | 17.00 | 25.50 | 104.55 | 51.00 | 805.55 | 61.49 | 10.63 | 31.96 | 1.28 | 18.12 |
| Fulton, Arthur | 4718 | 15.00 | 0.00 | 15.00 | 61.50 | 30.00 | 387.00 | 30.09 | 18.75 | 0.00 | 0.75 | 8.71 |
| Harrison, William | 10283 | 88.00 | 72.00 | 160.00 | 656.00 | 320.00 | 5,054.40 | 385.81 | 110.00 | 135.36 | 8.00 | 113.72 |
| Norris, Sam | 10139 | 37.00 | 12.00 | 49.00 | 200.90 | 98.00 | 1,428.16 | 109.77 | 46.25 | 22.56 | 2.45 | 32.13 |
| Parsons, Shirley | 10330 | 80.00 | 116.00 | 196.00 | 803.60 | 392.00 | 5,388.04 | 416.36 | 100.00 | 218.08 | 9.80 | 121.23 |
| Robinson, Philip | 0 | 80.00 | 114.00 | 194.00 | 795.40 | 388.00 | 5,333.06 | 412.11 | 100.00 | 214.32 | 9.70 | 119.99 |
| Schavelin, David | 10197 | 91.00 | 144.00 | 235.00 | 963.50 | 470.00 | 7,423.65 | 566.66 | 113.75 | 270.72 | 11.75 | 167.03 |
| Sellmann, Richard | 10331 | 80.00 | 120.00 | 200.00 | 820.00 | 400.00 | 5,244.00 | 407.08 | 100.00 | 225.60 | 10.00 | 117.99 |
| Tolson, Harry | 4466 | 14.00 | 39.00 | 53.00 | 217.30 | 106.00 | 1,674.27 | 127.80 | 17.50 | 73.32 | 2.65 | 37.67 |
| Walker, Freeston | 10315 | 19.00 | 32.00 | 51.00 | 209.10 | 102.00 | 1,401.99 | 108.34 | 23.75 | 60.16 | 2.55 | 31.54 |
| Aguado, Daniel | 10329 | 80.00 | 91.00 | 171.00 | 701.10 | 342.00 | 4,700.79 | 363.26 | 100.00 | 171.08 | 8.55 | 105.77 |
| Patillo, Ricardo | 10317 | 40.00 | 44.00 | 84.00 | 344.40 | 168.00 | 2,309.16 | 178.44 | 50.00 | 82.72 | 4.20 | 51.96 |
| GRAND TOTALS | | 992.50 * | 1,189.00 * | 2,181.50 * | 8,944.15 * | 4,363.00 * | 62,891.49 * | 4,838.70 * | 1,240.63 * | 2,235.32 | 109.08 * | 1,415.06 * |

$23,145.93

*Langenfelder Marine, Inc.*

8/20/2007

Union Summary Report
Craft 43   Class C

Period End Dates 06/25/07 through 07/22/07

Union:   OPERATING ENGINEERS
Local:   LOCAL 25
Class:   CRAFT 43

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .95 per st hr | Annuity OT Fringe 1.43 per ot hr | Training .05 per hr | Dues-Amt Deduct 2.25% * gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| McDowell, Edward | 8098 | 70.00 | 61.00 | 131.00 | 537.10 | 262.00 | 3,347.05 | 260.49 | 66.50 | 87.23 | 6.55 | 75.31 |
| Hair, William | 10335 | 76.00 | 68.00 | 144.00 | 590.40 | 288.00 | 3,623.76 | 282.46 | 72.20 | 97.24 | 7.20 | 81.53 |
| GRAND TOTALS | | 146.00 * | 129.00 * | 275.00 * | 1,127.50 * | 550.00 * | 6,970.81 * | 542.96 * | 138.70 * | 184.47 | 13.75 | 156.84 |

$2,714.22

*Langenfelder Marine, Inc.*

8/20/2007

Union Summary Report
Craft 47   Class D

Period End Dates 06/25/07 through 07/22/07

Union:   OPERATING ENGINEERS
Local:   LOCAL 25
Class:   CRAFT 47

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .65 per st hr | Annuity OT Fringe .98 per ot hr | Training .05 per hr | Dues-Amt Deduct 2.25% gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benton, Robert | 6228 | 80.00 | 84.00 | 164.00 | 672.40 | 328.00 | 3,335.76 | 266.30 | 52.00 | 82.32 | 8.20 | 75.05 |
| Carbone, Anthony | 10104 | 80.00 | 78.00 | 158.00 | 647.80 | 316.00 | 3,227.94 | 257.56 | 52.00 | 76.44 | 7.90 | 72.63 |
| Crutchlow, Irvin | 10332 | 80.00 | 90.00 | 170.00 | 697.00 | 340.00 | 3,457.80 | 276.05 | 52.00 | 88.20 | 8.50 | 77.80 |
| Denny, Rodney | 10186 | 11.00 | 0.00 | 11.00 | 45.10 | 22.00 | 214.28 | 17.20 | 7.15 | 0.00 | 0.55 | 4.82 |
| Denson, Vincent | 10286 | 72.00 | 69.00 | 141.00 | 578.10 | 282.00 | 2,867.94 | 228.96 | 46.80 | 67.62 | 7.05 | 64.53 |
| Lowery, James | 10061 | 80.00 | 109.00 | 189.00 | 774.90 | 378.00 | 3,844.26 | 306.90 | 52.00 | 106.82 | 9.45 | 86.50 |
| Patillo, Ricardo | 10317 | 40.00 | 48.00 | 88.00 | 360.80 | 176.00 | 1,789.92 | 142.89 | 26.00 | 47.04 | 4.40 | 40.27 |
| Thompson, John | 10334 | 76.00 | 69.00 | 145.00 | 594.50 | 290.00 | 2,962.35 | 236.36 | 49.40 | 67.62 | 7.25 | 66.65 |
| White, Douglas | 10184 | 80.00 | 94.00 | 174.00 | 713.40 | 348.00 | 3,554.82 | 283.64 | 52.00 | 92.12 | 8.70 | 79.98 |
| Zador, Michael | 8206 | 91.00 | 134.00 | 225.00 | 922.50 | 450.00 | 4,576.50 | 365.36 | 59.15 | 131.32 | 11.25 | 102.97 |
| GRAND TOTALS | | 690.00 * | 775.00 * | 1,465.00 * | 6,006.50 * | 2,930.00 * | 29,831.57 * | 2,381.21 * | 448.50 * | 759.50 | 73.25 | 671.21 |
| | | | | | * | | | | | | | * |
| GRAND TOTALS for all Three Pages | | 1,828.50 * | 2,093.00 * | 3,921.50 * | 16,078.15 * | 7,843.00 * | 99,693.87 * | 7,762.87 * | 1,827.83 * | 3,179.29 | 196.08 | 2,243.11 * |
| | | | | | | | | | | | | 0.00 * |
| | | | | | | | | | | | | $39,130.33 |

$13,270.17

# CENTRAL PENSION FUND
# INTERNATIONAL UNION OF OPERATING ENGINEERS
## EMPLOYER REPORT OF CONTRIBUTIONS
## REMITTANCE FORM

| WORK PERIOD COVERED | |
|---|---|
| BEGINNING | ENDING |
| 06/25/07 | 07/22/07 |

| EMPLOYER NAME & ADDRESS |
|---|
| **Langenfelder Marine, Inc.** |
| FIRM NAME |
| **400 Pier Avenue** |
| ADDRESS |
| **Stevensville, MD 21666** |
| CITY / STATE / ZIP CODE |
| TELEPHONE No.    **(410) 643-5560** |

| MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS: |
|---|
| **Central Pension Fund** |
| **Remittance Form Processing** |
| **Department 76** |
| **Washington, DC 20055-0076** |

MONTH ENDING:    **Jul-07**

| FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
|---|---|---|---|
| 0000000075 | Pension | 10,250.00 | |
| | | | |
| | | | |
| | SEE ATTACHED | | |
| | W/E 07/01, 07/08, 07/15, 07/22 | | |
| | | | |
| | | | |
| | | | |
| | CHECK (S) TOTAL: | | 10,250.00 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement, or other written obligation approved by the CPF Board of Trustees.

_____
Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty for which is a fine of $10,000 or imprisonment of five years or both.

**Langenfelder Marine, Inc.**

Period End Dates 06/25/07 through 07/22/07

Union Summary Report
Craft 99   Class A

8/20/2007

Union: OPERATING ENGINEERS
Local: LOCAL 25
Class: CRAFT 99

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe 1.00 per st hr | Annuity OT Fringe 1.50 per ot hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alaniz, Alfredo | 10318 | 110.00 | 40.00 | 150.00 | 562.50 | 300.00 | 2,631.00 | 184.17 | 110.00 | 60.00 | 60.00 |
| Ayala, Jose | 9212 | 152.00 | 31.00 | 183.00 | 686.25 | 366.00 | 3,495.30 | 244.67 | 152.00 | 46.50 | 73.20 |
| Barber, Alvin | 10045 | 48.00 | 0.00 | 48.00 | 180.00 | 96.00 | 675.84 | 47.31 | 48.00 | 0.00 | 19.20 |
| Corkell, Thomas | 10253 | 152.00 | 12.00 | 164.00 | 615.00 | 328.00 | 2,876.56 | 201.36 | 152.00 | 18.00 | 65.60 |
| Dennis, Brendan | 10154 | 258.00 | 0.00 | 258.00 | 967.50 | 516.00 | 5,697.41 | 398.82 | 258.00 | 0.00 | 103.20 |
| Denny, Rodney | 10186 | 146.00 | 0.00 | 146.00 | 547.50 | 292.00 | 2,219.20 | 155.34 | 146.00 | 0.00 | 58.40 |
| Edwards, James | 10077 | 151.50 | 88.50 | 240.00 | 900.00 | 480.00 | 4,209.60 | 294.67 | 151.50 | 132.75 | 96.00 |
| Fulton, Arthur | 4718 | 137.00 | 4.50 | 141.50 | 530.63 | 283.00 | 2,603.60 | 182.25 | 137.00 | 6.75 | 56.60 |
| Gill, Seth | 10311 | 120.00 | 0.00 | 120.00 | 450.00 | 240.00 | 2,104.80 | 147.34 | 120.00 | 0.00 | 48.00 |
| Godfrey, Andrew | 10323 | 114.00 | 0.00 | 114.00 | 427.50 | 228.00 | 1,968.78 | 137.81 | 114.00 | 0.00 | 45.60 |
| Harrison, William | 10283 | 64.00 | 1.00 | 65.00 | 243.75 | 130.00 | 1,140.10 | 79.81 | 64.00 | 1.50 | 26.00 |
| Johnson, Buddy | 10120 | 148.50 | 0.00 | 148.50 | 556.88 | 297.00 | 2,604.69 | 182.33 | 148.50 | 0.00 | 59.40 |
| Kibler, Donald | 10092 | 210.00 | 0.00 | 210.00 | 787.50 | 420.00 | 5,512.50 | 385.88 | 210.00 | 0.00 | 84.00 |
| Legg, Chris | 8963 | 152.00 | 87.50 | 239.50 | 898.13 | 479.00 | 4,069.11 | 284.84 | 152.00 | 131.25 | 95.80 |
| Liberty, John | 2000 | 222.00 | 0.00 | 222.00 | 832.50 | 444.00 | 3,833.05 | 268.31 | 222.00 | 0.00 | 88.80 |
| Marchand, Keith | 10143 | 240.00 | 0.00 | 240.00 | 900.00 | 480.00 | 3,648.00 | 255.36 | 240.00 | 0.00 | 96.00 |
| McDowell, Edward | 8098 | 80.00 | 21.00 | 101.00 | 378.75 | 202.00 | 1,771.54 | 124.01 | 80.00 | 31.50 | 40.40 |
| Moore, Brandon T. | 7012 | 160.00 | 58.50 | 218.50 | 819.38 | 437.00 | 3,769.13 | 263.84 | 160.00 | 87.75 | 87.40 |
| Murray, Scott | 10088 | 252.00 | 0.00 | 252.00 | 945.00 | 504.00 | 6,615.00 | 463.05 | 252.00 | 0.00 | 100.80 |
| Norris, Sam | 10139 | 115.00 | 17.00 | 132.00 | 495.00 | 264.00 | 3,474.24 | 243.20 | 115.00 | 25.50 | 52.80 |
| O'Keefe, Sean | 10041 | 198.00 | 0.00 | 198.00 | 742.50 | 396.00 | 5,197.50 | 363.83 | 198.00 | 0.00 | 79.20 |
| Rankin, David | 10005 | 258.00 | 0.00 | 258.00 | 967.50 | 516.00 | 3,631.35 | 254.19 | 258.00 | 0.00 | 103.20 |
| Schavelin, David | 10197 | 69.00 | 3.00 | 72.00 | 270.00 | 144.00 | 1,262.88 | 88.40 | 69.00 | 4.50 | 28.80 |
| Stewart, Carl | 10145 | 198.00 | 0.00 | 198.00 | 742.50 | 396.00 | 3,034.44 | 212.41 | 198.00 | 0.00 | 79.20 |
| Tolson, Harry | 4466 | 138.00 | 10.00 | 148.00 | 555.00 | 296.00 | 2,849.00 | 199.43 | 138.00 | 15.00 | 59.20 |
| Walker, Freeston | 10315 | 106.00 | 15.00 | 121.00 | 453.75 | 242.00 | 2,262.66 | 158.39 | 106.00 | 22.50 | 48.40 |
| Zador, Michael | 8206 | 69.00 | 33.50 | 102.50 | 384.38 | 205.00 | 1,690.23 | 118.32 | 69.00 | 50.25 | 41.00 |
| GRAND TOTALS | | 4,068.00 * | 422.50 * | 4,490.50 * | 16,839.38 * | 8,981.00 * | 84,847.51 * | 5,939.33 * | 4,068.00 * | 633.75 * | 1,796.20 |

$38,257.65

8/20/2007

Union Summary Report
Craft 98   Class B

**Langenfelder Marine, Inc.**

Period End Dates 06/25/07 through 07/22/07

| Union: | OPERATING ENGINEERS |
| Local: | LOCAL 25 |
| Class: | CRAFT 98 |

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .85 per st hr | Annuity OT Fringe 1.28 per ot hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bowman, Brian | 10269 | 149.00 | 0.00 | 149.00 | 558.75 | 298.00 | 2,293.11 | 160.52 | 126.65 | 0.00 | 59.60 |
| Lowery, James | 10061 | 72.00 | 13.00 | 85.00 | 318.75 | 170.00 | 1,120.30 | 78.42 | 61.20 | 16.64 | 34.00 |
| Perentesis, George | 10009 | 168.00 | 0.00 | 168.00 | 630.00 | 336.00 | 2,207.52 | 154.53 | 142.80 | 0.00 | 67.20 |
| Schrock, James | 10112 | 160.00 | 72.50 | 232.50 | 871.88 | 465.00 | 3,064.35 | 214.50 | 136.00 | 92.80 | 93.00 |
| | | 549.00 * | 85.50 * | 634.50 * | 2,379.38 * | 1,269.00 * | 8,685.28 * | 607.97 * | 466.65 * | 109.44 * | 253.80 |
| | | | | | | | | | | | $5,086.23 |
| GRAND TOTALS | | 4,617.00 * | 508.00 * | 5,125.00 * | 19,218.75 * | 10,250.00 * | 93,532.79 * | 6,547.30 * | 4,534.65 * | 743.19 * | 2,050.00 |
| | | | | | | | | | | | $43,343.89 |

GRAND TOTALS of Both Pages

# CENTRAL PENSION FUND
# INTERNATIONAL UNION OF OPERATING ENGINEERS
## EMPLOYER REPORT OF CONTRIBUTIONS
## REMITTANCE FORM

| WORK PERIOD COVERED | |
|---|---|
| BEGINNING | ENDING |
| 07/23/07 | 08/19/07 |

### EMPLOYER NAME & ADDRESS

**Langenfelder Marine, Inc.**
FIRM NAME
**400 Pier Avenue**
ADDRESS
**Stevensville, MD 21666**
CITY / STATE / ZIP CODE
**TELEPHONE No. (410) 643-5560**

### MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS:

**Central Pension Fund**
**Remittance Form Processing**
**Department 76**
**Washington, DC 20055-0076**

MONTH ENDING:    **Aug-07**

| FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
|---|---|---|---|
| 0000000075 | Pension | 14,245.00 | |
| | | | |
| | | | |
| | SEE ATTACHED | | |
| | W/E 07/29, 08/05, 08/12, 08/19 | | |
| | | | |
| | | | |
| | CHECK (S) TOTAL: | | 14,245.00 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true
and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement,
or other written obligation approved by the CPF Board of Trustees.

_____
Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty
for which is a fine of $10,000 or imprisonment of five years or both.

*Langenfelder Marine, Inc.*

9/20/2007

Union Summary Report
Craft 42   Class A & B

Period End Dates 07/23/07 through 08/19/07

Union:  OPERATING ENGINEERS
Local:  LOCAL 25
Class:  CRAFT 42

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe 1.25 per st hr | Annuity OT Fringe 1.88 per ot hr | Training .05 per hr | Dues-Amt Deduct 2.25% gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aguado, Daniel | 10329 | 160.00 | 134.00 | 294.00 | 1,205.40 | 588.00 | 8,082.06 | 624.54 | 200.00 | 251.92 | 14.70 | 181.85 |
| Alaniz, Alfredo | 10318 | 160.00 | 153.00 | 313.00 | 1,283.30 | 626.00 | 9,887.67 | 754.74 | 200.00 | 287.64 | 15.65 | 222.47 |
| Alaniz, Antonio | 10333 | 160.00 | 192.00 | 352.00 | 1,443.20 | 704.00 | 11,119.68 | 848.78 | 200.00 | 360.96 | 17.60 | 250.19 |
| Alaniz, Tiburcio | 0 | 142.50 | 79.50 | 222.00 | 910.20 | 444.00 | 7,012.98 | 535.31 | 45.00 | 149.46 | 11.10 | 157.79 |
| Brewer, Robert | 10214 | 160.00 | 170.00 | 330.00 | 1,353.00 | 660.00 | 9,071.70 | 701.02 | 200.00 | 319.60 | 16.50 | 204.11 |
| Edwards, James | 10077 | 36.00 | 24.00 | 60.00 | 246.00 | 120.00 | 1,577.40 | 122.42 | 45.00 | 45.12 | 3.00 | 35.49 |
| Fulton, Arthur | 4718 | 0.00 | 22.00 | 22.00 | 90.20 | 44.00 | 610.28 | 47.12 | 0.00 | 41.36 | 1.10 | 13.73 |
| Hair, William | 10335 | 160.00 | 177.00 | 337.00 | 1,381.70 | 674.00 | 8,691.23 | 675.79 | 200.00 | 332.76 | 16.85 | 195.55 |
| Harrison, William | 10283 | 160.00 | 130.00 | 290.00 | 1,189.00 | 580.00 | 9,161.10 | 699.28 | 200.00 | 244.40 | 14.50 | 206.12 |
| Norris, Sam | 10139 | 99.00 | 21.00 | 120.00 | 492.00 | 240.00 | 3,850.80 | 293.56 | 123.75 | 39.48 | 6.00 | 86.64 |
| Parsons, Shirley | 10330 | 157.00 | 156.00 | 313.00 | 1,283.30 | 626.00 | 8,604.37 | 664.91 | 196.25 | 293.28 | 15.65 | 193.60 |
| Patillo, Ricardo | 10317 | 152.00 | 110.00 | 262.00 | 1,074.20 | 524.00 | 7,202.38 | 556.57 | 190.00 | 206.80 | 13.10 | 162.05 |
| Robinson, Philip | 10197 | 160.00 | 181.00 | 341.00 | 1,398.10 | 682.00 | 9,374.09 | 724.39 | 200.00 | 340.28 | 17.05 | 210.92 |
| Schavelin, David | 10197 | 133.00 | 144.00 | 277.00 | 1,135.70 | 554.00 | 8,750.43 | 667.93 | 166.25 | 270.72 | 13.85 | 196.88 |
| Sellmann, Richard | 10331 | 144.00 | 133.00 | 277.00 | 1,135.70 | 554.00 | 7,282.33 | 565.16 | 180.00 | 250.04 | 13.85 | 163.85 |
| Tolson, Harry | 4466 | 160.00 | 96.00 | 256.00 | 1,049.60 | 512.00 | 8,087.04 | 617.29 | 200.00 | 180.48 | 12.80 | 181.96 |
| GRAND TOTALS | | 2,143.50 * | 1,922.50 * | 4,066.00 * | 16,670.60 * | 8,132.00 * | 118,365.54 * | 9,098.79 * | 2,679.38 * | 3,614.30 | 203.30 * | 2,663.22 * |

$43,061.59

**Langenfelder Marine, Inc.**

Period End Dates 07/23/07 through 08/19/07

Union Summary Report
Craft 43   Class C

9/20/2007

Union:  OPERATING ENGINEERS
Local:  LOCAL 25
Class:  CRAFT 43

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .95 per st hr | Annuity OT Fringe 1.43 per ot hr | Training .05 per hr | Dues-Amt Deduct 2.25% gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Corkell, Thomas | 10253 | 8.00 | 12.50 | 20.50 | 84.05 | 41.00 | 523.78 | 40.76 | 7.60 | 17.88 | 1.03 | 11.79 |
| McDowell, Edward | 8098 | 160.00 | 149.00 | 309.00 | 1,266.90 | 618.00 | 7,894.95 | 614.45 | 152.00 | 213.07 | 15.45 | 177.64 |
| Zador, Michael | 8206 | 40.00 | 35.00 | 75.00 | 307.50 | 150.00 | 1,878.00 | 146.46 | 38.00 | 50.05 | 3.75 | 42.26 |
| GRAND TOTALS | | 208.00 * | 196.50 * | 404.50 * | 1,658.45 * | 809.00 * | 10,296.73 * | 801.67 * | 197.60 * | 281.00 * | 20.23 * | 231.68 * |

$3,999.62

*Langenfelder Marine, Inc.*

Union Summary Report
Craft 47   Class D

9/20/2007

Period End Dates 07/23/07 through 08/19/07

Union:   OPERATING ENGINEERS
Local:   LOCAL 25
Class:   CRAFT 47

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .65 per st hr | Annuity OT Fringe .98 per ot hr | Training .05 per hr | Dues-Amt Deduct 2.25% * gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benton, Robert | 6228 | 160.00 | 119.00 | 279.00 | 1,143.90 | 558.00 | 5,674.86 | 453.04 | 104.00 | 116.62 | 13.95 | 127.68 |
| Carbone, Anthony | 10104 | 160.00 | 172.00 | 332.00 | 1,361.20 | 664.00 | 6,782.76 | 541.19 | 104.00 | 168.56 | 16.60 | 152.61 |
| Crutchlow, Irvin | 10332 | 160.00 | 140.00 | 300.00 | 1,230.00 | 600.00 | 6,102.00 | 487.14 | 104.00 | 137.20 | 15.00 | 137.30 |
| Denson, Vincent | 10286 | 140.00 | 149.00 | 289.00 | 1,184.90 | 578.00 | 5,878.26 | 469.28 | 91.00 | 146.02 | 14.45 | 132.26 |
| Legg, Chris | 8963 | 142.00 | 120.00 | 262.00 | 1,074.20 | 524.00 | 5,329.08 | 425.44 | 92.30 | 117.60 | 13.10 | 119.90 |
| Lowery, James | 10061 | 160.00 | 137.00 | 297.00 | 1,217.70 | 594.00 | 6,040.98 | 482.27 | 104.00 | 134.26 | 14.85 | 135.92 |
| Thompson, John | 10334 | 160.00 | 176.00 | 336.00 | 1,377.60 | 672.00 | 6,864.48 | 547.71 | 104.00 | 172.48 | 16.80 | 154.45 |
| White, Douglas | 10184 | 160.00 | 174.00 | 334.00 | 1,369.40 | 668.00 | 6,823.62 | 544.45 | 104.00 | 170.52 | 16.70 | 153.53 |
| Zador, Michael | 8206 | 120.00 | 103.00 | 223.00 | 914.30 | 446.00 | 4,535.82 | 362.11 | 78.00 | 100.94 | 11.15 | 102.06 |
| GRAND TOTALS | | 1,362.00 * | 1,290.00 * | 2,652.00 * | 10,873.20 * | 5,304.00 * | 54,031.86 * | 4,312.63 * | 885.30 * | 1,264.20 | 132.60 | 1,215.72 |
| | | | | | | | | | | | | $23,987.65 |
| GRAND TOTALS for all Three Pages | | 3,713.50 * | 3,409.00 * | 7,122.50 * | 29,202.25 * | 14,245.00 * | 182,694.13 * | 14,213.09 * | 3,762.28 * | 5,159.50 | 356.13 | 4,110.62 * |
| | | | | | | | | | | | | 0.00 * |
| | | | | | | | | | | | | $71,048.86 |

# CENTRAL PENSION FUND
# INTERNATIONAL UNION OF OPERATING ENGINEERS
## EMPLOYER REPORT OF CONTRIBUTIONS
## REMITTANCE FORM

| WORK PERIOD COVERED | |
|---|---|
| BEGINNING | ENDING |
| 07/23/07 | 08/19/07 |

| EMPLOYER NAME & ADDRESS |
|---|
| *Langenfelder Marine, Inc.* |
| FIRM NAME |
| *400 Pier Avenue* |
| ADDRESS |
| *Stevensville, MD 21666* |
| CITY / STATE / ZIP CODE |
| TELEPHONE No.    *(410) 643-5560* |

| MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS: |
|---|
| **Central Pension Fund** |
| **Remittance Form Processing** |
| **Department 76** |
| **Washington, DC 20055-0076** |

MONTH ENDING:    **Aug-07**

| FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
|---|---|---|---|
| 0000000075 | Pension | 7,555.00 | |
| | | | |
| | | SEE ATTACHED | |
| | | W/E 07/29, 08/05, 08/12, 08/19 | |
| | | | |
| | | | |
| | CHECK(S) TOTAL | | 7,555.00 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement, or other written obligation approved by the CPF Board of Trustees.

_____
Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty for which is a fine of $10,000 or imprisonment of five years or both.

*Langenfelder Marine, Inc.*

Period End Dates 07/23/07 through 08/19/07

Union Summary Report
Craft 99    Class A

9/20/2007

Union: **OPERATING ENGINEERS**
Local: LOCAL 25
Class: CRAFT 99

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe 1.00 per st hr | Annuity OT Fringe 1.50 per st hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ayala, Jose | 9212 | 150.00 | 6.00 | 156.00 | 585.00 | 312.00 | 2,979.60 | 208.57 | 150.00 | 9.00 | 62.40 |
| Corkell, Thomas | 10253 | 152.00 | 6.00 | 158.00 | 592.50 | 316.00 | 2,771.32 | 193.99 | 152.00 | 9.00 | 63.20 |
| Dennis, Brendan | 10154 | 210.00 | 0.00 | 210.00 | 787.50 | 420.00 | 4,637.43 | 324.62 | 210.00 | 0.00 | 84.00 |
| Denny, Rodney | 10186 | 136.00 | 0.00 | 136.00 | 510.00 | 272.00 | 2,067.20 | 144.70 | 136.00 | 0.00 | 54.40 |
| Edwards, James | 10077 | 60.00 | 0.00 | 60.00 | 225.00 | 120.00 | 1,290.48 | 90.33 | 60.00 | 0.00 | 24.00 |
| Fulton, Arthur | 4718 | 160.00 | 0.00 | 160.00 | 600.00 | 320.00 | 2,944.00 | 206.08 | 160.00 | 0.00 | 64.00 |
| Gill, Seth | 10311 | 109.00 | 0.00 | 109.00 | 408.75 | 218.00 | 1,911.86 | 133.83 | 109.00 | 0.00 | 43.60 |
| Johnson, Buddy | 10120 | 158.50 | 4.50 | 163.00 | 611.25 | 326.00 | 2,859.02 | 200.13 | 158.50 | 6.75 | 65.20 |
| Kibler, Donald | 10092 | 252.00 | 0.00 | 252.00 | 945.00 | 504.00 | 6,615.00 | 463.05 | 252.00 | 0.00 | 100.80 |
| Legg, Chris | 8963 | 16.00 | 0.00 | 16.00 | 60.00 | 32.00 | 271.84 | 19.03 | 16.00 | 0.00 | 6.40 |
| Liberty, John | 2000 | 252.00 | 0.00 | 252.00 | 945.00 | 504.00 | 4,351.03 | 304.57 | 252.00 | 0.00 | 100.80 |
| Marchand, Keith | 10143 | 336.00 | 0.00 | 336.00 | 1,260.00 | 672.00 | 5,206.56 | 364.46 | 336.00 | 0.00 | 134.40 |
| Moore, Brandon T. | 7012 | 142.00 | 6.00 | 148.00 | 555.00 | 296.00 | 2,553.00 | 178.71 | 142.00 | 9.00 | 59.20 |
| Murray, Scott | 10088 | 210.00 | 0.00 | 210.00 | 787.50 | 420.00 | 5,512.50 | 385.88 | 210.00 | 0.00 | 84.00 |
| O'Keefe, Sean | 10041 | 252.00 | 0.00 | 252.00 | 945.00 | 504.00 | 6,615.00 | 463.05 | 252.00 | 0.00 | 100.80 |
| Rankin, David | 10005 | 195.00 | 0.00 | 195.00 | 731.25 | 390.00 | 2,744.63 | 192.12 | 195.00 | 0.00 | 78.00 |
| Stewart, Carl | 10145 | 228.00 | 0.00 | 228.00 | 855.00 | 456.00 | 3,465.60 | 242.59 | 228.00 | 0.00 | 91.20 |
| Walker, Freeston | 10315 | 112.00 | 14.00 | 126.00 | 472.50 | 252.00 | 2,210.04 | 154.70 | 112.00 | 21.00 | 50.40 |
| GRAND TOTALS | | 3,130.50 * | 36.50 * | 3,167.00 * | 11,876.25 * | 6,334.00 * | 61,006.11 * | 4,270.43 * | 3,130.50 * | 54.75 * | 1,266.80 |

$26,932.73

9/20/2007

Union Summary Report
Craft 98    Class B

**Langenfelder Marine, Inc.**

Period End Dates 07/23/07 through 08/19/07

| Union: | OPERATING ENGINEERS |
| Local: | LOCAL 25 |
| Class: | CRAFT 98 |

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .85 per st hr | Annuity OT Fringe 1.28 per ot hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bowman, Brian | 10269 | 134.00 | 4.00 | 138.00 | 517.50 | 276.00 | 2,123.82 | 148.67 | 113.90 | 5.12 | 55.20 |
| Perentesis, George | 10009 | 210.00 | 0.00 | 210.00 | 787.50 | 420.00 | 2,759.40 | 193.16 | 178.50 | 0.00 | 84.00 |
| Rosario, Javier | 10337 | 72.00 | 6.00 | 78.00 | 292.50 | 156.00 | 923.52 | 64.65 | 61.20 | 7.68 | 31.20 |
| Schrock, James | 10112 | 160.00 | 24.50 | 184.50 | 691.88 | 369.00 | 2,431.71 | 170.22 | 136.00 | 31.36 | 73.80 |
| | | 576.00 * | 34.50 * | 610.50 * | 2,289.38 * | 1,221.00 * | 8,238.45 * | 576.69 * | 489.60 * | 44.16 * | 244.20 |
| | | | | | | | | | | | $4,865.03 |
| GRAND TOTALS | | 3,706.50 * | 71.00 * | 3,777.50 * | 14,165.63 * | 7,555.00 * | 69,244.56 * | 4,847.12 * | 3,620.10 * | 98.91 * | 1,511.00 |
| | | | | | | | | | | | $31,797.75 |

GRAND TOTALS of Both Pages

# CENTRAL PENSION FUND
# INTERNATIONAL UNION OF OPERATING ENGINEERS
## EMPLOYER REPORT OF CONTRIBUTIONS
## REMITTANCE FORM

| WORK PERIOD COVERED | |
|---|---|
| BEGINNING | ENDING |
| 08/20/07 | 09/23/07 |

| EMPLOYER NAME & ADDRESS |
|---|
| *Langenfelder Marine, Inc.* |
| FIRM NAME |
| *400 Pier Avenue* |
| ADDRESS |
| *Stevensville, MD 21666* |
| CITY / STATE / ZIP CODE |
| **TELEPHONE No. (410) 643-5560** |

| MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS: |
|---|
| **Central Pension Fund** |
| **Remittance Form Processing** |
| **Department 76** |
| **Washington, DC 20055-0076** |

MONTH ENDING: **Sep-07**

| FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
|---|---|---|---|
| 0000000075 | Pension | 15,381.00 | |
| | | | |
| | | | |
| | | SEE ATTACHED | |
| | | W/E 8/26, 09/02, 09/9, 09/16, 09/23 | |
| | | | |
| | | | |
| | | | |
| | CHECK(S) TOTAL: | | 15,381.00 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true
and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement,
or other written obligation approved by the CPF Board of Trustees.

_____
Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty
for which is a fine of $10,000 or imprisonment of five years or both.

*Langenfelder Marine, Inc.*

Union Summary Report
Craft 42   Class A & B

10/20/2007

Period End Dates 08/20/07 through 09/23/07

Union:  OPERATING ENGINEERS
Local:  LOCAL 25
Class:  CRAFT 42

| Employees | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st hr | Annuity Fringe 1.25 per st hr | Annuity OT Fringe 1.88 per ot hr | Training .05 per hr | Dues-Amt Deduct 2.25% gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Aguado, Daniel | 10329 | 186.00 | 157.00 | 343.00 | 1,406.30 | 686.00 | 9,429.07 | 728.63 | 232.50 | 295.16 | 17.15 | 212.15 |
| Alaniz, Alfredo | 10318 | 200.00 | 230.00 | 430.00 | 1,763.00 | 860.00 | 13,583.70 | 1,036.86 | 250.00 | 432.40 | 21.50 | 305.63 |
| Alaniz, Antonio | 10333 | 184.00 | 184.00 | 368.00 | 1,508.80 | 736.00 | 11,625.12 | 887.36 | 230.00 | 345.92 | 18.40 | 261.57 |
| Alaniz, Tiburcio | 10336 | 64.00 | 25.50 | 89.50 | 366.95 | 179.00 | 2,827.31 | 215.81 | 80.00 | 47.94 | 4.48 | 63.61 |
| Brewer, Robert | 10214 | 138.00 | 118.00 | 256.00 | 1,049.60 | 512.00 | 7,037.44 | 543.82 | 172.50 | 221.84 | 12.80 | 158.34 |
| Edwards, James | 10077 | 101.00 | 56.00 | 157.00 | 643.70 | 314.00 | 4,127.53 | 320.33 | 126.25 | 105.28 | 7.85 | 92.87 |
| Hair, William | 10335 | 178.00 | 172.00 | 350.00 | 1,435.00 | 700.00 | 9,026.50 | 701.86 | 222.50 | 323.36 | 17.50 | 203.10 |
| Harrison, William | 10283 | 104.00 | 92.00 | 196.00 | 803.60 | 392.00 | 6,191.64 | 472.61 | 130.00 | 172.96 | 9.80 | 139.31 |
| Jaggers, Thomas | 10250 | 80.00 | 66.00 | 146.00 | 598.60 | 292.00 | 3,838.34 | 297.88 | 100.00 | 124.08 | 7.30 | 86.36 |
| Norris, Sam | 10139 | 65.00 | 25.50 | 90.50 | 371.05 | 181.00 | 2,904.15 | 221.39 | 81.25 | 47.94 | 4.53 | 65.34 |
| Parsons, Shirley | 10330 | 200.00 | 220.00 | 420.00 | 1,722.00 | 840.00 | 11,545.80 | 892.21 | 250.00 | 413.60 | 21.00 | 259.78 |
| Patillo, Ricardo | 10317 | 108.00 | 125.00 | 233.00 | 955.30 | 466.00 | 6,405.17 | 494.96 | 135.00 | 235.00 | 11.65 | 144.12 |
| Robinson, Philip | 0 | 184.00 | 182.00 | 366.00 | 1,500.60 | 732.00 | 10,389.34 | 800.45 | 230.00 | 342.16 | 18.30 | 233.76 |
| Schavelin, David | 10197 | 184.00 | 205.00 | 389.00 | 1,594.90 | 778.00 | 12,288.51 | 938.00 | 230.00 | 385.40 | 19.45 | 276.49 |
| Sellmann, Richard | 10331 | 120.00 | 108.00 | 228.00 | 934.80 | 456.00 | 5,994.12 | 465.19 | 150.00 | 203.04 | 11.40 | 134.87 |
| Thompson, John | 10334 | 4.00 | 44.00 | 48.00 | 196.80 | 96.00 | 1,319.52 | 101.97 | 5.00 | 82.72 | 2.40 | 29.69 |
| Tolson, Harry | 4466 | 65.00 | 25.50 | 90.50 | 371.05 | 181.00 | 2,858.90 | 218.22 | 81.25 | 47.94 | 4.53 | 64.33 |
| GRAND TOTALS | | 2,165.00 * | 2,035.50 * | 4,200.50 * | 17,222.05 * | 8,401.00 * | 121,392.16 * | 9,337.55 * | 2,706.25 * | 3,826.74 | 210.03 * | 2,731.32 * |

$44,434.94

*Langenfelder Marine, Inc.*

Union Summary Report
Craft 43   Class C

10/20/2007

Period End Dates 08/20/07 through 09/23/07

Union:   OPERATING ENGINEERS
Local:   LOCAL 25
Class:   CRAFT 43

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .95 per st hr | Annuity OT Fringe 1.43 per ot hr | Training .05 per hr | Dues-Amt Deduct 2.25% * gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| McDowell, Edward | 8098 | 196.00 | 122.00 | 318.00 | 1,303.80 | 636.00 | 8,124.90 | 632.34 | 186.20 | 174.46 | 15.90 | 182.81 |
| Zador, Michael | 8206 | 132.00 | 140.00 | 272.00 | 1,115.20 | 544.00 | 6,810.88 | 531.16 | 125.40 | 200.20 | 13.60 | 153.24 |
| GRAND TOTALS | | 328.00 * | 262.00 * | 590.00 * | 2,419.00 * | 1,180.00 * | 14,935.78 * | 1,163.50 * | 311.60 * | 374.66 * | 29.50 * | 336.06 |

$5,814.32

*Langenfelder Marine, Inc.*

Union Summary Report
Craft 47   Class D

10/20/2007

Period End Dates 08/2007 through 09/23/07

Union:   **OPERATING ENGINEERS**
Local:   LOCAL 25
Class:   CRAFT 47

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 4.10 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .65 per st hr | Annuity OT Fringe .98 per ot hr | Training .05 per hr | Dues-Amt Deduct 2.25% gross wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alaniz, Tiburcio | 10336 | 133.00 | 123.00 | 256.00 | 1,049.60 | 512.00 | 5,208.21 | 415.77 | 86.45 | 120.54 | 12.80 | 117.18 |
| Benton, Robert | 6228 | 196.00 | 164.00 | 360.00 | 1,476.00 | 720.00 | 7,322.40 | 584.57 | 127.40 | 160.72 | 18.00 | 164.75 |
| Carbone, Anthony | 10104 | 200.00 | 178.00 | 378.00 | 1,549.80 | 756.00 | 7,722.54 | 616.18 | 130.00 | 174.44 | 18.90 | 173.76 |
| Crutchlow, Irvin | 10332 | 184.00 | 132.00 | 316.00 | 1,295.60 | 632.00 | 6,427.44 | 513.12 | 119.60 | 129.36 | 15.80 | 144.62 |
| Denny, Rodney | 10186 | 24.00 | 30.00 | 54.00 | 221.40 | 108.00 | 1,103.22 | 88.03 | 15.60 | 29.40 | 2.70 | 24.82 |
| Denson, Vincent | 10286 | 80.00 | 62.00 | 142.00 | 582.20 | 284.00 | 2,888.28 | 230.58 | 52.00 | 60.76 | 7.10 | 64.99 |
| Gnayck, Vernon | 10186 | 12.00 | 24.00 | 36.00 | 147.60 | 72.00 | 732.24 | 58.46 | 7.80 | 23.52 | 1.80 | 16.48 |
| Legg, Chris | 8963 | 148.00 | 124.00 | 272.00 | 1,115.20 | 544.00 | 5,532.48 | 441.67 | 96.20 | 121.52 | 13.60 | 124.48 |
| Lowery, James | 10061 | 196.00 | 176.00 | 372.00 | 1,525.20 | 744.00 | 7,994.88 | 634.04 | 127.40 | 172.48 | 18.60 | 179.88 |
| Thompson, John | 10334 | 196.00 | 177.00 | 373.00 | 1,529.30 | 746.00 | 7,620.39 | 608.03 | 127.40 | 173.46 | 18.65 | 171.46 |
| White, Douglas | 10184 | 120.00 | 85.00 | 205.00 | 840.50 | 410.00 | 4,188.15 | 334.17 | 78.00 | 83.30 | 10.25 | 94.23 |
| Zador, Michael | 8206 | 68.00 | 68.00 | 136.00 | 557.60 | 272.00 | 2,766.24 | 220.84 | 44.20 | 66.64 | 6.80 | 62.24 |
| **GRAND TOTALS** | | 1,557.00 * | 1,343.00 * | 2,900.00 * | 11,890.00 * | 5,800.00 * | 59,506.47 * | 4,745.45 * | 1,012.05 * | 1,316.14 | 145.00 | 1,338.90 |
| | | | | | | | | | | | | $26,247.54 * |
| **GRAND TOTALS for all Three Pages** | | 4,050.00 * | 3,640.50 * | 7,690.50 | 31,531.05 * | 15,381.00 * | 195,834.41 * | 15,246.51 * | 4,029.90 * | 5,517.54 | 384.53 | 4,406.27 * |
| | | | | | | | | | | | | 0.00 * |
| | | | | | | | | | | | | $76,496.80 |

# CENTRAL PENSION FUND
# INTERNATIONAL UNION OF OPERATING ENGINEERS
## EMPLOYER REPORT OF CONTRIBUTIONS
## REMITTANCE FORM

| WORK PERIOD COVERED | |
| --- | --- |
| BEGINNING | ENDING |
| 08/20/07 | 09/23/07 |

| EMPLOYER NAME & ADDRESS |
| --- |
| *Langenfelder Marine, Inc.* |
| FIRM NAME |
| *400 Pier Avenue* |
| ADDRESS |
| *Stevensville, MD 21666* |
| CITY / STATE / ZIP CODE |
| TELEPHONE No.        *(410) 643-5560* |

| MAIL 1 COPY OF THE REPORT AND REMITTANCE FORM TO THE FOLLOWING ADDRESS: |
| --- |
| **Central Pension Fund** |
| **Remittance Form Processing** |
| **Department 76** |
| **Washington, DC 20055-0076** |

MONTH ENDING:        **Sep-07**

| FRINGE ID | FRINGE TYPE | TOTAL CONTRIBUTIONS | CHECK AMOUNT |
| --- | --- | --- | --- |
| 0000000075 | Pension | 10,898.50 | |
| | | | |
| | SEE ATTACHED | | |
| | W/E 8/26, 09/02, 09/9, 09/16, 09/23 | | |
| | | | |
| | | | |
| | CHECK (S) TOTAL: | | 10,898.50 |

We certify that this Remittance Form, and the accompanying Employer Report(s) of contributions, are true
and complete reports of all contributions required to be paid under the applicable IUOE Local Union agreement,
or other written obligation approved by the CPF Board of Trustees.

_____

Authorized Signature of Employer

Note: Any false statement or representation made in reporting on this form may subject you to prosecution under 18 U.S.C. $ 1027, the penalty
for which is a fine of $10,000 or imprisonment of five years or both.

*Langenfelder Marine, Inc.*

Period End Dates 08/20/07 through 09/23/07

Union Summary Report
Craft 99    Class A

10/20/2007

Union: OPERATING ENGINEERS
Local: LOCAL 25
Class: CRAFT 99

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe 1.00 per st hr | Annuity OT Fringe 1.50 per st hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ayala, Jose | 9212 | 192.00 | 34.00 | 226.00 | 847.50 | 452.00 | 4,316.60 | 302.16 | 192.00 | 51.00 | 90.40 |
| Corkell, Thomas | 10253 | 192.00 | 40.00 | 232.00 | 870.00 | 464.00 | 4,069.28 | 284.85 | 192.00 | 60.00 | 92.80 |
| Dennis, Brendan | 10154 | 294.00 | 0.00 | 294.00 | 1,102.50 | 588.00 | 6,492.40 | 454.47 | 294.00 | 0.00 | 117.60 |
| Denny, Rodney | 10186 | 173.00 | 0.00 | 173.00 | 648.75 | 346.00 | 2,629.60 | 184.07 | 173.00 | 0.00 | 69.20 |
| Edwards, James | 10077 | 88.00 | 0.00 | 88.00 | 330.00 | 176.00 | 1,980.00 | 138.60 | 88.00 | 0.00 | 35.20 |
| Fulton, Arthur | 4718 | 192.00 | 21.75 | 213.75 | 801.56 | 427.50 | 3,933.00 | 275.31 | 192.00 | 32.63 | 85.50 |
| Gill, Seth | 10311 | 131.00 | 1.00 | 132.00 | 495.00 | 264.00 | 2,315.28 | 162.07 | 131.00 | 1.50 | 52.80 |
| Heckard, Kurtis | 10131 | 294.00 | 0.00 | 294.00 | 1,102.50 | 588.00 | 5,077.38 | 355.42 | 294.00 | 0.00 | 117.60 |
| Johnson, Buddy | 10120 | 189.00 | 23.50 | 212.50 | 796.88 | 425.00 | 3,727.25 | 260.91 | 189.00 | 35.25 | 85.00 |
| Kibler, Donald | 10092 | 270.00 | 0.00 | 270.00 | 1,012.50 | 540.00 | 7,087.50 | 496.13 | 270.00 | 0.00 | 108.00 |
| Legg, Chris | 8963 | 32.00 | 0.00 | 32.00 | 120.00 | 64.00 | 543.68 | 38.06 | 32.00 | 0.00 | 12.80 |
| Liberty, John | 2000 | 252.00 | 0.00 | 252.00 | 945.00 | 504.00 | 4,351.03 | 304.57 | 252.00 | 0.00 | 100.80 |
| Marchand, Keith | 10143 | 252.00 | 0.00 | 252.00 | 945.00 | 504.00 | 4,352.04 | 304.64 | 252.00 | 0.00 | 100.80 |
| Moore, Brandon T. | 7012 | 192.00 | 18.50 | 210.50 | 789.38 | 421.00 | 3,631.13 | 254.18 | 192.00 | 27.75 | 84.20 |
| Murray, Scott | 10088 | 294.00 | 0.00 | 294.00 | 1,102.50 | 588.00 | 7,717.50 | 540.23 | 294.00 | 0.00 | 117.60 |
| Norris, Sam | 10139 | 120.00 | 3.50 | 123.50 | 463.13 | 247.00 | 3,250.52 | 227.54 | 120.00 | 5.25 | 49.40 |
| O'Keefe, Sean | 10041 | 198.00 | 0.00 | 198.00 | 742.50 | 396.00 | 5,197.50 | 363.83 | 198.00 | 0.00 | 79.20 |
| Rankin, David | 10005 | 306.00 | 0.00 | 306.00 | 1,147.50 | 612.00 | 4,306.95 | 301.49 | 306.00 | 0.00 | 122.40 |
| Stewart, Carl | 10145 | 282.00 | 0.00 | 282.00 | 1,057.50 | 564.00 | 4,286.40 | 300.05 | 282.00 | 0.00 | 112.80 |
| Tolson, Harry | 4466 | 124.00 | 11.50 | 135.50 | 508.13 | 271.00 | 2,608.38 | 182.59 | 124.00 | 17.25 | 54.20 |
| Walker, Freeston | 10315 | 100.00 | 1.00 | 101.00 | 378.75 | 202.00 | 1,771.54 | 124.01 | 100.00 | 1.50 | 40.40 |
| GRAND TOTALS | | 4,167.00 * | 154.75 * | 4,321.75 * | 16,206.56 * | 8,643.50 * | 83,644.96 * | 5,855.15 * | 4,167.00 * | 232.13 * | 1,728.70 |

$36,833.03

10/20/2007

**Union Summary Report**
Craft 98    Class B

*Langenfelder Marine, Inc.*

Period End Dates 08/20/07 through 09/23/07

Union:    **OPERATING ENGINEERS**
Local:    LOCAL 25
Class:    CRAFT 98

| Employees | | Regular Hours | Overtime Hours | Total Hours | H&W Fringe 3.75 per hr | Pension Fringe 2.00 per hr | Straight Time Pay | Vacation Fringe 7% per st pay | Annuity Fringe .85 per st hr | Annuity OT Fringe 1.28 per ot hr | Dues-Amt Deduct 0.40 per hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bowman, Brian | 10269 | 183.00 | 13.00 | 196.00 | 735.00 | 392.00 | 3,016.44 | 211.15 | 155.55 | 16.64 | 78.40 |
| Howard, Nathan | 10338 | 143.50 | 34.00 | 177.50 | 665.63 | 355.00 | 2,101.60 | 147.11 | 121.98 | 43.52 | 71.00 |
| Perentesis, George | 10009 | 294.00 | 0.00 | 294.00 | 1,102.50 | 588.00 | 3,863.16 | 270.42 | 249.90 | 0.00 | 117.60 |
| Rosario, Javier | 10337 | 192.00 | 34.00 | 226.00 | 847.50 | 452.00 | 2,675.84 | 187.31 | 163.20 | 43.52 | 90.40 |
| Schrock, James | 10112 | 184.00 | 50.00 | 234.00 | 877.50 | 468.00 | 3,084.12 | 215.89 | 156.40 | 64.00 | 93.60 |
| | | 996.50 * | 131.00 * | 1,127.50 * | 4,228.13 * | 2,255.00 * | 14,741.16 * | 1,031.88 * | 847.03 * | 167.68 * | 451.00 |
| | | | | | | | | | | | $8,980.71 |
| GRAND TOTALS | | 5,163.50 * | 285.75 * | 5,449.25 * | 20,434.69 * | 10,898.50 * | 98,386.12 * | 6,887.03 * | 5,014.03 * | 399.81 * | 2,179.70 |
| | | | | | | | | | | | $45,813.75 |

GRAND TOTALS of Both Pages

Exhibit E

# Participant Basic Data Report

BARBER, ALVIN
XXX-XX-6825

## Participant

| | |
|---|---|
| **Name** | BARBER, ALVIN |
| **Birth** | |
| **Death** | |
| **Gender** | Male |
| **Address** | |

NORFOLK, VA 23508-2409

**SSN** XXX-XX-6825

| | |
|---|---|
| **Active Status** | Active |
| **Register#** | 2457233 |
| **Marital St.** | |

**Participant ID** 1283025

| | |
|---|---|
| **Marriage Date** | |
| **Divorce Date** | |

## Spouse Info        SSN

| | |
|---|---|
| **Name** | |
| **Birth** | |
| **Death** | |
| **Gender** | |
| **Address** | |

## Credited Service

| | CPF | Merger |
|---|---|---|
| Credited Future Svc | 0.80 | 0.00 |
| Credited Past Svc | 0.00 | 0.00 |
| Vested Future Svc | 0.00 | 0.00 |
| Vested Past Svc | 0.00 | 0.00 |
| Total Service | 0.80 | |
| Vesting Status | No | |

## Union Service

| | |
|---|---|
| First Report Date | 21-Apr-2002 |
| Employment Date | |
| IPD Date | 01-Apr-2002 |
| Home Local | 147 |
| Initiation Date | 01-Dec-2001 |
| Last Period End | 22-Jul-2007 |

## Beneficiary List

| SSN | Last Name | First Name | Birth Date | Relation Type |
|---|---|---|---|---|
| | | | | |

## Benefits

| |
|---|
| Monthly Benefit |
| Retirement Date |
| Benefit Types |

## Disability Info

| |
|---|
| Disability Date |
| Reconfirmation Date |

## Merger Record

| Merger Name | Accrued Benefit | Hours | Contribution |
|---|---|---|---|
| | | | |

## IUOE History

| Start Date | End Date | Report Date | Description | Eligible for Past Service | Local | Override |
|---|---|---|---|---|---|---|
| 24-Dec-2002 | | | Suspension | No | 147 | No |

CBS-PR-16

BARBER, ALVIN
XXX-XX-6825

# Participant Basic Data Report

| Start Date | End Date | Report Date | Description | Eligible for Past Service | Local | Override |
|---|---|---|---|---|---|---|
| 01-Dec-2001 | 23-Dec-2002 | | Initiation | Yes | 147 | No |

# Participant Basic Data Report

BARBER, ALVIN
XXX-XX-6825

## Annual Contribution Summary

| Years | Credited Hours | Contributions | Credited Future |
|---|---|---|---|
| 2002 | 401.1 | $320.88 | 0.40 |
| 2003 | 465 | $465.00 | 0.40 |
| 2005 | 54 | $81.00 | 0.00 |
| 2007 | 48 | $96.00 | 0.00 |
| **Summary:** | 968.1 | $962.88 | 0.80 |

CBS-PR-16

Printed On: 06/19/2008

Page  3  of  4

## Participant Basic Data Report

BARBER, ALVIN
XXX-XX-6825

### ER Detail

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs | Rate | Posted |
|----------|---------------|--------------|-------|------------|--------------|----------------|---------------|------------|------|--------|
| 11835 | GG SHARP INC | 106802 | 435 | 04/21/2002 | 06/2002 | 95.8 | $76.64 | 0 | .8 | Yes |
| 11835 | GG SHARP INC | 177030 | 820 | 05/31/2002 | 10/2002 | 128 | $102.40 | 0 | .8 | Yes |
| 11835 | GG SHARP INC | 106802 | 861 | 06/28/2002 | 11/2002 | 177.3 | $141.84 | 0 | .8 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 613 | 08/31/2003 | 10/2003 | 126 | $126.00 | 0 | 1 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 388 | 09/30/2003 | 10/2003 | 225 | $225.00 | 0 | 1 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 447 | 10/26/2003 | 11/2003 | 114 | $114.00 | 0 | 1 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 563 | 08/31/2005 | 09/2005 | 24 | $36.00 | 0 | 1.5 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 321 | 09/30/2005 | 10/2005 | 30 | $45.00 | 0 | 1.5 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 689 | 07/22/2007 | 04/2008 | 48 | $96.00 | 0 | 2 | Yes |

CBS-PR-16

# Participant Basic Data Report

FICKEL, COREY L
XXX-XX-8163

## Participant

| | | |
|---|---|---|
| Name | FICKEL, COREY L | |
| Birth | | |
| Death | | |
| Gender | Male | |
| Address | | |
| | NORFOLK, VA 23518-2100 | |

SSN XXX-XX-8163    Participant ID 1561606

Active Status    Active    Marriage Date
Register#    2529100    Divorce Date
Marital St.

## Spouse Info

SSN XXX-XX-0885

| | |
|---|---|
| Name | |
| Birth | |
| Death | |
| Gender | Female |
| Address | |

## Credited Service

| | CPF | Merger |
|---|---|---|
| Credited Future Svc | 3.70 | 0.00 |
| Credited Past Svc | 0.00 | 0.00 |
| Vested Future Svc | 0.00 | 0.00 |
| Vested Past Svc | 0.00 | 0.00 |
| Total Service | 3.70 | |
| Vesting Status | No | |

## Union Service

| | |
|---|---|
| First Report Date | 29-Feb-2004 |
| Employment Date | |
| IPD Date | 01-Feb-2004 |
| Home Local | 025 |
| Initiation Date | 24-Aug-2004 |
| Last Period End | 24-Feb-2008 |

## Beneficiary List

| SSN | Last Name | First Name | Birth Date | Relation Type |
|---|---|---|---|---|
| XXX-XX-0885 | | | | |

## Benefits

| | |
|---|---|
| Monthly Benefit | |
| Retirement Date | |
| Benefit Types | |

## Disability Info

| | |
|---|---|
| Disability Date | |
| Reconfirmation Date | |

## Merger Record

| Merger Name | Accrued Benefit | Hours | Contribution |
|---|---|---|---|

## IUOE History

| Start Date | End Date | Report Date | Description | Eligible for Past Service | Local | Override |
|---|---|---|---|---|---|---|
| 27-Jun-2007 | | | Suspension | No | 025 | No |

CBS-PR-16

Printed On: 06/19/2008

Page    1    of    6

FICKEL, COREY L
XXX-XX-8163

# Participant Basic Data Report

| Start Date | End Date | Report Date | Description | Eligible for Past Service | Local | Override |
|---|---|---|---|---|---|---|
| 10-Oct-2006 | 26-Jun-2007 | | Reinstatement | Yes | 025 | No |
| 28-Jun-2006 | 09-Oct-2006 | | Suspension | No | 025 | No |
| 24-Aug-2004 | 27-Jun-2006 | | Initiation | Yes | 025 | No |

CBS-PR-16

Printed On: 06/19/2008

Page 2 of 6

# Participant Basic Data Report

FICKEL, COREY L
XXX-XX-8163

## Annual Contribution Summary

| Years | Credited Hours | Contributions | Credited Future |
|---|---|---|---|
| 2004 | 2540 | $3,175.00 | 1.00 |
| 2005 | 1770 | $2,655.00 | 1.00 |
| 2006 | 1995 | $3,497.25 | 1.00 |
| 2007 | 714 | $1,428.00 | 0.70 |
| 2008 | 294 | $588.00 | 0.00 |
| Summary: | 7313 | $11,343.25 | 3.70 |

CBS-PR-16

Printed On: 06/19/2008

# Participant Basic Data Report

FICKEL, COREY L
XXX-XX-8163

## ER Detail

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs | Rate | Posted |
|---|---|---|---|---|---|---|---|---|---|---|
| 24911 | LANGENFELDER MARINE INC | 180917 | 381 | 02/29/2004 | 03/2004 | 84 | $105.00 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 436 | 03/31/2004 | 04/2004 | 222 | $277.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 498 | 04/30/2004 | 05/2004 | 258 | $322.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 559 | 05/31/2004 | 06/2004 | 222 | $277.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 315 | 06/15/2004 | 07/2004 | 254 | $317.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 380 | 07/31/2004 | 08/2004 | 252 | $315.00 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 444 | 08/24/2004 | 09/2004 | 282 | $352.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 507 | 09/19/2004 | 10/2004 | 282 | $352.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 576 | 10/31/2004 | 11/2004 | 300 | $375.00 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 330 | 11/24/2004 | 12/2004 | 198 | $247.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 384 | 12/24/2004 | 01/2005 | 186 | $232.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | ADJ | 01/31/2005 | 08/2005 | 0 | $49.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 446 | 01/31/2005 | 02/2005 | 198 | $247.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 504 | 02/28/2005 | 03/2005 | 252 | $315.00 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | ADJ | 02/28/2005 | 08/2005 | 0 | $63.00 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | ADJ | 03/20/2005 | 08/2005 | 0 | $63.00 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 567 | 03/20/2005 | 04/2005 | 252 | $315.00 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 321 | 04/24/2005 | 05/2005 | 126 | $157.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | ADJ | 04/24/2005 | 08/2005 | 0 | $31.50 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | ADJ | 05/31/2005 | 08/2005 | 0 | $63.00 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 381 | 05/31/2005 | 06/2005 | 252 | $315.00 | 0 | 1.25 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 437 | 06/19/2005 | 07/2005 | 198 | $297.00 | 0 | 1.5 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 500 | 07/24/2005 | 08/2005 | 258 | $387.00 | 0 | 1.5 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 563 | 08/31/2005 | 09/2005 | 150 | $225.00 | 0 | 1.5 | Yes |

CBS-PR-16

Printed On: 06/19/2008

# Participant Basic Data Report

FICKEL, COREY L
XXX-XX-8183

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs | Rate | Posted |
|---|---|---|---|---|---|---|---|---|---|---|
| 24911 | LANGENFELDER MARINE INC | 180917 | 321 | 09/30/2005 | 10/2005 | 84 | $126.00 | 0 | 1.5 | Yes |
| 24911 | LANGENFELDER MARINE INC | 190978 | KGC | 10/31/2005 | 10/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 565 | 01/31/2006 | 02/2006 | 54 | $94.50 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 323 | 02/24/2006 | 03/2006 | 144 | $252.00 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 405 | 03/31/2006 | 05/2006 | 258 | $451.50 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 460 | 04/23/2006 | 06/2006 | 102 | $178.50 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 577 | 05/31/2006 | 07/2006 | 0 | $0.00 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 333 | 06/30/2006 | 08/2006 | 18 | $31.50 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 190978 | 333 | 06/30/2006 | 08/2006 | 42 | $58.80 | 0 | 1.4 | Yes |
| 24911 | LANGENFELDER MARINE INC | 190978 | 374 | 07/31/2006 | 09/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 374 | 07/31/2006 | 09/2006 | 255 | $446.25 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 404 | 08/31/2006 | 09/2006 | 228 | $399.00 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 404 | 08/31/2006 | 09/2006 | 24 | $43.20 | 0 | 1.8 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 471 | 09/30/2006 | 10/2006 | 258 | $451.50 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 566 | 10/22/2006 | 12/2006 | 114 | $199.50 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 336 | 11/19/2006 | 01/2007 | 168 | $294.00 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 573 | 12/24/2006 | 04/2007 | 78 | $156.00 | 0 | 2 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 459 | 12/24/2006 | 03/2007 | 228 | $399.00 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 452 | 12/31/2006 | 10/2007 | 24 | $42.00 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 452 | 01/21/2007 | 10/2007 | 30 | $60.00 | 0 | 2 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 452 | 01/21/2007 | 10/2007 | 84 | $168.00 | 0 | 2 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 520 | 02/18/2007 | 11/2007 | 0 | $0.00 | 0 | 2 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 520 | 02/18/2007 | 11/2007 | 0 | $0.00 | 0 | 2 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 690 | 03/25/2007 | 11/2007 | 54 | $108.00 | 0 | 2 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 367 | 04/22/2007 | 01/2008 | 102 | $204.00 | 0 | 2 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 644 | 05/20/2007 | 02/2008 | 156 | $312.00 | 0 | 2 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 367 | 11/25/2007 | 01/2008 | 120 | $240.00 | 0 | 2 | Yes |

CBS-PR-16

Printed On: 06/19/2008

## Participant Basic Data Report

FICKEL, COREY L
XXX-XX-8163

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs | Rate | Posted |
|---|---|---|---|---|---|---|---|---|---|---|
| 24911 | LANGENFELDER MARINE INC | 190978 | 367 | 11/25/2007 | 01/2008 | 0 | $0.00 | 0 | 1.4 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 644 | 12/23/2007 | 02/2008 | 188 | $336.00 | 0 | 2 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 661 | 01/20/2008 | 03/2008 | 252 | $504.00 | 0 | 2 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 681 | 02/24/2008 | 04/2008 | 42 | $84.00 | 0 | 2 | Yes |
| 24911 | LANGENFELDER MARINE INC | 184439 | 694 | 03/23/2008 | 05/2008 | 0 | $0.00 | 0 | 2 | No |
| 24911 | LANGENFELDER MARINE INC | 184439 | 618 | 04/20/2008 | 06/2008 | 0 | $0.00 | 0 | 2 | No |

CBS-PR-16

Printed On: 06/19/2008

Page 6 of 6

# Participant Basic Data Report

HAYES, JOHNNY T
XXX-XX-1499

## Participant

| | | |
|---|---|---|
| Name | HAYES, JOHNNY T | Participant ID | 1834460 |
| Birth | | Active Status | Active | Marriage Date |
| Death | | Register# | 2572903 | Divorce Date |
| Gender | Male | Marital St. | |
| Address | | | |

SSN XXX-XX-1499

LUMBERTON, NC 28358

## Credited Service

| | CPF | Merger |
|---|---|---|
| Credited Future Svc | 2.70 | 0.00 |
| Credited Past Svc | 0.00 | 0.00 |
| Vested Future Svc | 0.00 | 0.00 |
| Vested Past Svc | 0.00 | 0.00 |
| Total Service | 2.70 | |
| Vesting Status | No | |

## Union Service

| | |
|---|---|
| First Report Date | 15-Sep-2005 |
| Employment Date | |
| IPD Date | 01-Sep-2005 |
| Home Local | 025 |
| Initiation Date | 14-Dec-2005 |
| Last Period End | 20-Jan-2008 |

## Benefits

Monthly Benefit
Retirement Date
Benefit Types

## Disability Info

Disability Date
Reconfirmation Date

## Spouse Info

Name
Birth
Death
Gender
Address

SSN

## Beneficiary List

| SSN | Last Name | First Name | Birth Date | Relation Type |
|---|---|---|---|---|

## Merger Record

| Merger Name | Accrued Benefit | Hours | Contribution |
|---|---|---|---|

## IUOE History

| Start Date | End Date | Report Date | Description | Eligible for Past Service | Local | Override |
|---|---|---|---|---|---|---|
| 14-Dec-2005 | | | Initiation | Yes | 025 | No |

CBS-PR-16

HAYES, JOHNNY T
XXX-XX-1499

# Participant Basic Data Report

## Annual Contribution Summary

| Years | Credited Hours | Contributions | Credited Future |
|-------|----------------|---------------|-----------------|
| 2005 | 742 | $1,038.80 | 0.70 |
| 2006 | 1983 | $2,905.00 | 1.00 |
| 2007 | 2008 | $2,811.20 | 1.00 |
| 2008 | 42 | $58.80 | 0.00 |
| **Summary:** | 4775 | $6,813.80 | 2.70 |

CBS-PR-16

Printed On: 06/19/2008

# Participant Basic Data Report

HAYES, JOHNNY T
XXX-XX-1499

## ER Detail

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs | Rate | Posted |
|---|---|---|---|---|---|---|---|---|---|---|
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 652 | 09/15/2005 | 10/2005 | 92 | $128.80 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 682 | 10/14/2005 | 11/2005 | 216 | $302.40 | 0 | 1.4 | Yes |
| 24911 | LANGENFELDER MARINE INC | 190978 | KGC | 10/31/2005 | 10/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 607 | 11/30/2005 | 12/2005 | 211 | $295.40 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 619 | 12/15/2005 | 01/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 626 | 12/31/2005 | 01/2006 | 223 | $312.20 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 626 | 01/03/2006 | 01/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 652 | 01/31/2006 | 02/2006 | 258 | $361.20 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 666 | 02/05/2006 | 03/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 673 | 02/26/2006 | 03/2006 | 216 | $302.40 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 697 | 03/31/2006 | 04/2006 | 219 | $306.60 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 622 | 04/30/2006 | 05/2006 | 248 | $347.20 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 648 | 05/31/2006 | 06/2006 | 132 | $184.80 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 674 | 06/30/2006 | 07/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 24911 | LANGENFELDER MARINE INC | 190978 | 333 | 06/30/2006 | 08/2006 | 202 | $282.80 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 600 | 07/31/2006 | 08/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 24911 | LANGENFELDER MARINE INC | 190978 | 374 | 07/31/2006 | 09/2006 | 124 | $173.60 | 0 | 1.4 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 374 | 07/31/2006 | 09/2006 | 25 | $43.75 | 0 | 1.75 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 397 | 08/31/2006 | 09/2006 | 0 | $0.00 | 0 | 1.4 | Yes |

CBS-PR-16

Printed On: 06/19/2008

Page 3 of 4

# Participant Basic Data Report

HAYES, JOHNNY T
XXX-XX-1499

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs | Rate | Posted |
|---|---|---|---|---|---|---|---|---|---|---|
| 24911 | LANGENFELDER MARINE INC | 180917 | 404 | 08/31/2006 | 09/2006 | 223 | $390.25 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 471 | 09/30/2006 | 10/2006 | 120 | $210.00 | 0 | 1.75 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 566 | 10/22/2006 | 12/2006 | 0 | $0.00 | 0 | 1.75 | Yes |
| 27678 | MANSON CONSTRUCTION CO | 200838 | 623 | 12/24/2006 | 01/2007 | 216 | $302.40 | 0 | 1.4 | Yes |
| 27678 | MANSON CONSTRUCTION CO | 200838 | 438 | 01/18/2007 | 02/2007 | 216 | $302.40 | 0 | 1.4 | Yes |
| 27678 | MANSON CONSTRUCTION CO | 200838 | 493 | 02/18/2007 | 03/2007 | 199 | $278.60 | 0 | 1.4 | Yes |
| 27678 | MANSON CONSTRUCTION CO | 200838 | 320 | 03/25/2007 | 04/2007 | 347 | $485.80 | 0 | 1.4 | Yes |
| 27678 | MANSON CONSTRUCTION CO | 200838 | 344 | 04/22/2007 | 05/2007 | 236 | $330.40 | 0 | 1.4 | Yes |
| 27678 | MANSON CONSTRUCTION CO | 200838 | 454 | 05/31/2007 | 06/2007 | 443 | $620.20 | 0 | 1.4 | Yes |
| 27678 | MANSON CONSTRUCTION CO | 200838 | 530 | 06/30/2007 | 07/2007 | 174 | $243.60 | 0 | 1.4 | Yes |
| 24911 | LANGENFELDER MARINE INC | 190978 | 367 | 11/25/2007 | 01/2008 | 160 | $224.00 | 0 | 1.4 | Yes |
| 24911 | LANGENFELDER MARINE INC | 190978 | 644 | 12/23/2007 | 02/2008 | 233 | $326.20 | 0 | 1.4 | Yes |
| 24911 | LANGENFELDER MARINE INC | 190978 | 661 | 01/20/2008 | 03/2008 | 42 | $58.80 | 0 | 1.4 | Yes |

CBS-PR-16

Printed On: 06/19/2008

# Participant Basic Data Report

## Participant

**Name** FRY, JEFFRY
**Birth**
**Death**
**Gender** Male
**Address**
NORFOLK, VA 23513-4215

**SSN** XXX-XX-4164

**Active Status** Active
**Register#** 2461246
**Marital St.**

**Participant ID** 1255318

**Marriage Date**
**Divorce Date**

## Spouse Info

**Name**
**Birth**
**Death**
**Gender**
**Address**

**SSN**

## Credited Service

| | CPF | Merger |
|---|---|---|
| Credited Future Svc | 6.00 | 0.00 |
| Credited Past Svc | 0.00 | 0.00 |
| Vested Future Svc | 0.00 | 0.00 |
| Vested Past Svc | 0.00 | 0.00 |
| Total Service | 6.00 | |
| Vesting Status | Yes | |

## Union Service

| | |
|---|---|
| First Report Date | 27-Jan-2002 |
| Employment Date | |
| IPD Date | 01-Jan-2002 |
| Home Local | 025 |
| Initiation Date | 24-Apr-2002 |
| Last Period End | 28-Jan-2008 |

## Beneficiary List

| SSN | Last Name | First Name | Birth Date | Relation Type |
|---|---|---|---|---|
| | | | | |

## Benefits

**Monthly Benefit**
**Retirement Date**
**Benefit Types**

## Disability Info

**Disability Date**
**Reconfirmation Date**

## Merger Record

| Merger Name | Accrued Benefit | Report Date | Description | Hours | Contribution |
|---|---|---|---|---|---|
| | | | | | |

## IUOE History

| Start Date | End Date | Report Date | Description | Eligible for Past Service | Local | Override |
|---|---|---|---|---|---|---|
| 24-Apr-2002 | | | Initiation | Yes | 025 | No |

CBS-PR-16

Printed On: 06/19/2008

FRY, JEFFRY
XXX-XX-4164

Page 1 of 8

# Participant Basic Data Report

FRY, JEFFRY
XXX-XX-4164

## Annual Contribution Summary

| Years | Credited Hours | Contributions | Credited Future |
|---|---|---|---|
| 2002 | 2825 | $2,607.40 | 1.00 |
| 2003 | 3495 | $4,278.25 | 1.00 |
| 2004 | 2710 | $3,794.00 | 1.00 |
| 2005 | 3142 | $4,398.80 | 1.00 |
| 2006 | 3164 | $3,159.10 | 1.00 |
| 2007 | 3435 | $4,706.80 | 1.00 |
| 2008 | 62 | $86.80 | 0.00 |
| **Summary:** | 18833 | $23,031.15 | 6.00 |

CBS-PR-16

Printed On: 06/19/2008

Page  2  of  8

# Participant Basic Data Report

## ER Detail

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs | Rate | Posted |
|---|---|---|---|---|---|---|---|---|---|---|
| 16270 | WEEKS MARINE INC | 169123 | 172 | 01/27/2002 | 03/2002 | 48 | $60.00 | 0 | 1.25 | Yes |
| 16270 | WEEKS MARINE INC | 169000 | 203 | 02/26/2002 | 04/2002 | 470.5 | $387.00 | 103.5 | 1 | Yes |
| 16270 | WEEKS MARINE INC | 169000 | 273 | 03/31/2002 | 04/2002 | 330 | $330.00 | 0 | 1 | Yes |
| 16270 | WEEKS MARINE INC | 169000 | 354 | 04/21/2002 | 05/2002 | 318 | $318.00 | 0 | 1 | Yes |
| 16270 | WEEKS MARINE INC | 169000 | 454 | 04/30/2002 | 06/2002 | 289 | $289.00 | 0 | 1 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 454 | 05/31/2002 | 06/2002 | 64 | $64.00 | 0 | 1 | Yes |
| 16270 | WEEKS MARINE INC | 169000 | 454 | 05/31/2002 | 06/2002 | 0 | $0.00 | 0 | 1 | Yes |
| 13230 | CENTRAL SITE CONTRACTORS INC | 169004 | 610 | 07/24/2002 | 08/2002 | 72 | $56.88 | 0 | .79 | Yes |
| 13230 | CENTRAL SITE CONTRACTORS INC | 169004 | 691 | 08/18/2002 | 09/2002 | 228 | $180.12 | 0 | .79 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 803 | 09/22/2002 | 10/2002 | 300.5 | $237.40 | 0 | .79 | Yes |
| 24911 | LANGENFELDER MARINE INC | 180917 | 898 | 10/20/2002 | 11/2002 | 0 | $0.00 | 0 | .79 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 907 | 10/24/2002 | 11/2002 | 108 | $108.00 | 0 | 1 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 993 | 11/30/2002 | 12/2002 | 297 | $297.00 | 0 | 1 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 074 | 12/24/2002 | 01/2003 | 300 | $300.00 | 0 | 1 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 165 | 01/29/2003 | 03/2003 | 362 | $362.00 | 0 | 1 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 233 | 02/28/2003 | 03/2003 | 36 | $45.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 321 | 03/31/2003 | 04/2003 | 205 | $256.25 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 408 | 04/15/2003 | 06/2003 | 260 | $325.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 508 | 05/15/2003 | 07/2003 | 253 | $316.25 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 560 | 06/24/2003 | 07/2003 | 347 | $433.75 | 0 | 1.25 | Yes |

CBS-PR-16

Printed On: 06/19/2008

# Participant Basic Data Report

FRY, JEFFRY
XXX-XX-4164

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs | Rate | Posted |
|---|---|---|---|---|---|---|---|---|---|---|
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 661 | 07/24/2003 | 08/2003 | 416 | $520.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 613 | 07/26/2003 | 10/2003 | 0 | $0.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 338 | 08/31/2003 | 10/2003 | 238 | $297.50 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 613 | 09/21/2003 | 10/2003 | 0 | $0.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 631 | 09/24/2003 | 10/2003 | 244 | $305.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 391 | 09/27/2003 | 10/2003 | 0 | $0.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 658 | 09/29/2003 | 11/2003 | 0 | $0.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 658 | 10/15/2003 | 11/2003 | 0 | $0.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 677 | 10/21/2003 | 12/2003 | 390 | $487.50 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 658 | 11/16/2003 | 11/2003 | 0 | $0.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 605 | 11/18/2003 | 01/2004 | 303 | $378.75 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 650 | 11/22/2003 | 02/2004 | 0 | $0.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 612 | 12/15/2003 | 01/2004 | 148 | $185.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 650 | 12/17/2003 | 02/2004 | 293 | $366.25 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 818 | 02/02/2004 | 04/2004 | 99 | $123.75 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | ADJ | 02/02/2004 | 09/2004 | 0 | $14.85 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | ADJ | 02/29/2004 | 09/2004 | 0 | $29.85 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 680 | 02/29/2004 | 03/2004 | 199 | $248.75 | 0 | 1.25 | Yes |
| 23057 | GREAT LAKES DREDGE & DOCK CO | 168958 | 650 | 04/24/2004 | 06/2004 | 129 | $180.60 | 0 | 1.4 | Yes |
| 23057 | GREAT LAKES DREDGE & DOCK CO | 168958 | 666 | 05/31/2004 | 06/2004 | 0 | $0.00 | 0 | 1.4 | Yes |

CBS-PR-16

Printed On: 06/19/2008

Page   4   of   8

# Participant Basic Data Report

FRY, JEFFRY
XXX-XX-4164

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs | Rate | Posted |
|---|---|---|---|---|---|---|---|---|---|---|
| 23057 | GREAT LAKES DREDGE & DOCK CO | 168958 | ADJ | 05/31/2004 | 06/2004 | 103 | $144.20 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 671 | 05/31/2004 | 08/2004 | 60 | $75.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | ADJ | 05/31/2004 | 09/2004 | 0 | $9.00 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 325 | 06/30/2004 | 07/2004 | 315 | $393.75 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | ADJ | 06/30/2004 | 09/2004 | 0 | $47.25 | 0 | 1.25 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 616 | 07/24/2004 | 08/2004 | 390 | $546.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 636 | 07/26/2004 | 01/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 407 | 08/31/2004 | 09/2004 | 198 | $277.20 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 689 | 09/02/2004 | 11/2004 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 472 | 09/30/2004 | 10/2004 | 237 | $331.80 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 689 | 10/02/2004 | 11/2004 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 697 | 10/24/2004 | 12/2004 | 356 | $498.40 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 607 | 10/26/2004 | 04/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 619 | 11/20/2004 | 12/2004 | 334 | $467.60 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 636 | 11/30/2004 | 01/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 630 | 12/10/2004 | 01/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 636 | 12/15/2004 | 01/2005 | 290 | $406.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 638 | 12/20/2004 | 01/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 681 | 12/22/2004 | 03/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 444 | 01/10/2005 | 02/2005 | 0 | $0.00 | 0 | 1.4 | Yes |

CBS-PR-16

Printed On: 06/19/2008

# Participant Basic Data Report

FRY, JEFFRY
XXX-XX-4164

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs Rate | Posted |
|---|---|---|---|---|---|---|---|---|---|
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 681 | 01/25/2005 | 02/2005 | 286 | $400.40 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 672 | 01/27/2005 | 03/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 681 | 01/29/2005 | 03/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 672 | 02/10/2005 | 03/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 681 | 02/16/2005 | 03/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 684 | 02/28/2005 | 03/2005 | 225 | $315.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 672 | 03/10/2005 | 03/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 607 | 03/24/2005 | 04/2005 | 334 | $467.60 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 631 | 03/26/2005 | 05/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 631 | 04/14/2005 | 05/2005 | 130 | $182.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 631 | 04/18/2005 | 05/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 631 | 05/02/2005 | 05/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 651 | 05/15/2005 | 06/2005 | 186 | $260.40 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 682 | 06/30/2005 | 07/2005 | 243 | $340.20 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 699 | 07/31/2005 | 08/2005 | 328 | $459.20 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 623 | 08/28/2005 | 09/2005 | 0 | $0.00 | 0 | 1.4 | Yes |
| 23069 | NORFOLK DREDGING COMPANY | 169119 | 524 | 08/31/2005 | 09/2005 | 264 | $369.60 | 0 | 1.4 | Yes |
| 23069 | NORFOLK DREDGING COMPANY | 169119 | 312 | 09/30/2005 | 10/2005 | 264 | $369.60 | 0 | 1.4 | Yes |
| 23069 | NORFOLK DREDGING COMPANY | 169119 | 370 | 10/31/2005 | 11/2005 | 332 | $464.80 | 0 | 1.4 | Yes |
| 23069 | NORFOLK DREDGING COMPANY | 169119 | 423 | 11/30/2005 | 12/2005 | 263 | $368.20 | 0 | 1.4 | Yes |
| 23069 | NORFOLK DREDGING COMPANY | 169119 | 499 | 12/31/2005 | 01/2006 | 287 | $401.80 | 0 | 1.4 | Yes |

CBS-PR-16

Printed On: 08/19/2008

Page    6    of    8

# Participant Basic Data Report

FRY, JEFFRY
XXX-XX-4164

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs Rate | Posted |
|---|---|---|---|---|---|---|---|---|---|
| 23069 | NORFOLK DREDGING COMPANY | 169119 | 566 | 01/31/2006 | 02/2006 | 243 | $340.20 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 662 | 02/04/2006 | 03/2006 | 24 | $33.60 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 662 | 02/06/2006 | 03/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 662 | 02/08/2006 | 03/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 662 | 02/10/2006 | 03/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 23069 | NORFOLK DREDGING COMPANY | 169119 | 598 | 02/28/2006 | 03/2006 | 6 | $8.40 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 690 | 03/26/2006 | 04/2006 | 108 | $151.20 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 611 | 03/31/2006 | 05/2006 | 160 | $224.00 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 634 | 04/23/2006 | 06/2006 | 96 | $134.40 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 611 | 04/23/2006 | 05/2005 | 176 | $201.60 | 32 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 634 | 05/21/2006 | 06/2006 | 300 | $420.00 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 665 | 06/25/2006 | 07/2006 | 300 | $420.00 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 195967 | 665 | 06/25/2006 | 07/2006 | 36 | $25.20 | 0 | .7 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 674 | 06/30/2006 | 07/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 195967 | 674 | 06/30/2006 | 07/2006 | 0 | $0.00 | 0 | .7 | Yes |
| 16270 | WEEKS MARINE INC | 195967 | 691 | 07/23/2006 | 08/2006 | 336 | $235.20 | 0 | .7 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 691 | 07/23/2006 | 08/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 617 | 08/27/2006 | 09/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 195967 | 617 | 08/27/2006 | 09/2006 | 287 | $200.90 | 0 | .7 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 644 | 09/30/2006 | 10/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 195967 | 644 | 09/30/2006 | 10/2006 | 259 | $181.30 | 0 | .7 | Yes |
| 16270 | WEEKS MARINE INC | 195967 | 668 | 10/22/2006 | 11/2006 | 222 | $155.40 | 0 | .7 | Yes |
| 16270 | WEEKS MARINE INC | 169123 | 668 | 10/22/2006 | 11/2006 | 0 | $0.00 | 0 | 1.4 | Yes |
| 16270 | WEEKS MARINE INC | 195967 | 693 | 11/26/2006 | 12/2006 | 310 | $217.00 | 0 | .7 | Yes |
| 16270 | WEEKS MARINE INC | 195967 | 613 | 12/24/2006 | 01/2007 | 301 | $210.70 | 0 | .7 | Yes |
| 16270 | WEEKS MARINE INC | 195967 | 627 | 01/21/2007 | 02/2007 | 146 | $102.20 | 0 | .7 | Yes |

CBS-PR-16

Printed On: 06/19/2008

# Participant Basic Data Report

FRY, JEFFRY
XXX-XX-4164

| Employer | Employer Name | Empl Account | Batch | Period End | Process Date | Credited Hours | Contributions | Unpaid Hrs Rate | Posted |
|---|---|---|---|---|---|---|---|---|---|
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 455 | 01/28/2007 | 02/2007 | 115 | $161.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 525 | 02/25/2007 | 03/2007 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 649 | 02/25/2007 | 03/2007 | 325 | $455.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 523 | 03/31/2007 | 03/2007 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 664 | 03/31/2007 | 04/2007 | 266 | $372.40 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 378 | 04/29/2007 | 05/2007 | 314 | $439.60 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 358 | 04/29/2007 | 05/2007 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 391 | 05/23/2007 | 05/2007 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 600 | 05/23/2007 | 06/2007 | 265 | $371.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 543 | 06/30/2007 | 07/2007 | 335 | $469.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 319 | 07/29/2007 | 08/2007 | 289 | $404.60 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 336 | 08/30/2007 | 09/2007 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 413 | 08/30/2007 | 09/2007 | 309 | $432.60 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 496 | 09/30/2007 | 10/2007 | 231 | $323.40 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 665 | 09/30/2007 | 10/2007 | 0 | $0.00 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 577 | 10/28/2007 | 11/2007 | 232 | $324.80 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 608 | 11/25/2007 | 12/2007 | 256 | $358.40 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 440 | 12/30/2007 | 01/2008 | 352 | $492.80 | 0 | 1.4 | Yes |
| 12405 | GREAT LAKES DREDGE & DOCK CO | 169117 | 655 | 01/28/2008 | 02/2008 | 82 | $86.80 | 0 | 1.4 | Yes |

CBS-PR-16

Printed On: 06/19/2008

Exhibit F

**Price, Jay G.**                                                *langenfelder Marine*
                                                                 *180917, 184439*

From:      Dave Howson [DHowson@langenfeldermarine.com]
Sent:      Monday, October 08, 2007 4:43 PM
To:        Long, Phyllis; Price, Jay G.
Subject:   Pension Fund Payments

We had anticipated an improvement in our cash flow during the last eight weeks that would have permitted us to significantly catch up with our arrearages by this time; however that has been delayed by factors out of our control.

Today we mailed the checks for the January 2007 pension contributions-you should receive those by Wednesday. We have also developed the following payment schedule to address the arrearages and the future obligations as they accrue:

- Between 10/20 and 10/31 we will send the September 2007 payments.
- Between 11/20 and 11/30 we will send the February 2007 and the October 2007 payments.
- Between 12/20 and 12/31 we will send the March and April 2007 and the November 2007 payments.
- Between 1/20/08 and 1/31/08 we will send the May and June 2007 and the December 2007 payments.
- Between 2/20/08 and 2/29/08 we will send the July 2007 and the January 2008 payments.
- Between 3/20/08 and 3/31/08 we will send the August 2007 and the February 2008 payments.

This plan would make current payments for pension contributions starting with September 2007 along with payments each month towards the arrearages. An alternative would be to make payments on the oldest due until it is all caught up. Please let me know if it is better to handle it that way and I will make a revision. The time frame to catch up is approximately the same in both cases.

The reason I have built some flexibility in to when the checks would go out is because this plan is based on projected receipts-realistically we do experienced slippage from our customers from time to time and this range of dates attempts to recognize that. We are confident that we can meet this overall schedule, but the timing of the payments will depend upon our actual receipts.

We appreciate your consideration of this schedule. Please understand that we are working hard to correct this situation and look forward to the time when we are once again current. Please let me know if you have any questions or need any further information.

Thank you,

Dave

David G. Howson
Vice President
**LANGENFELDER MARINE, INC.**
Voice (410) 643-5560
Fax (410) 643-4164

Exhibit G

## Langenfelder Delinquency as of July 31, 2008

| Date of Payment | Total Delinquency Balance | Principle Balance |
|---|---|---|
| | $100,943.50 (contributions owed) | $100,943.50 |
| | $20,188.70 (20% liquidated damages) | |
| | $4,071.10 (9% interest to 12/27/07) | |
| | $125,203.30 | |
| 12/27/2007 | -$10,479.50 | -$10,479.50 |
| | $114,723.80 | $90,943.50 |
| | (interest to 1/30/08 @ $22.31 per day on "A" only) | |
| | $758.54 | |
| | $115,482.34 | |
| 1/30/2008 | -$10,346.00 | -$10,346.00 |
| | $105,136.34 | $80,118.00 |
| | (interest to 3/3/08 @ $19.76 per day on "B" only) | |
| | $652.08 | |
| | $105,788.42 | |
| 3/3/2008 | -$13,945.50 | -$13,945.50 |
| | $91,842.92 | $66,172.50 |
| | (interest to 4/18/08 @ $16.32 per day on "C" only) | |
| | $750.72 | |
| | $92,593.64 | |
| 4/18/2008 | -$18,093.00 | -$18,093.00 |
| | $74,500.64 | $48,079.50 |
| | (interest to 7/31/08 @ $11.86 per day on "D" only) | |
| | $1,233.44 | |
| | $75,734.08 | |

176564

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING,              :

        Plaintiff,           :

             :

        v.            :    Civil Action No. 1:07-cv-2182-PLF

             :

LANGENFELDER MARINE, INC.,        :

             :

        Defendant.

## DECLARATION OF RICHARD HOPP

I, Richard Hopp, of O'Donoghue & O'Donoghue LLP, hereby certify, declare and verify under penalty of perjury pursuant to 28 U.S.C. § 1746, in Washington, D.C. the following:

1.    That I am a partner with the law firm of O'Donoghue & O'Donoghue LLP, the counsel of record for the Plaintiff. I graduated from the University of Maryland School of Law, with honors, in 1989. After law school, I clerked for the Honorable Joseph C. Howard, United States District Court Judge for the District of Maryland for two years. I have practiced exclusively in the field of labor and employee benefits law since joining O'Donoghue & O'Donoghue LLP in 1991.

2.    That I am over the age of eighteen and competent to testify to the facts contained in this Declaration from my own personal knowledge.

3.    Attached to this Declaration as Exhibit A is a true and accurate copy of Defendant Langenfelder Marine, Inc.'s responses to the Plaintiff's Requests for Answers to Interrogatories.

4.    Attached to this Declaration as Exhibit B is a true and accurate copy of the Request for Admission served on the Defendant Langenfelder Marine, Inc. by certified mail, return receipt requested, on March 13, 2008.

5.     Attached to this Declaration as Exhibit C is a true and accurate copy of correspondence I sent to counsel for the Defendant identifying that responses to the Plaintiff's Request for Admissions were due on or before June 9, 2008.  To date the Defendant has failed to respond to the Requests for Admission.

6.     O'Donoghue & O'Donoghue LLP expended 41.40 hours in the above-captioned case on behalf of Plaintiff.  Attached to this Declaration as Exhibit D is a chart identifying the date and nature of work performed on this case on behalf of the Plaintiff.  The total amount of attorney's fees incurred by the Plaintiff in this action through June 23, 2008, is $8,280.00.

7.     The amount of time expended is within the usual and customary time spent by an attorney on this type of case.

8.     O'Donoghue & O'Donoghue LLP's negotiated fee with the Plaintiff for the performance of this type of legal representation is $200.00 per hour for attorney time.  This hourly fee is below the usual and customary fee charged for this type of work in Washington, D.C.

9.     The Plaintiff incurred a filing fee in the amount of $350.00.  A true and accurate copy of the money order and receipt is attached to this Declaration as Exhibit E.

10.     In addition, the Plaintiff incurred a fee for service of process in the amount of $95.00.  A true and accurate copy of the invoice is attached to this Declaration as Exhibit F.

Dated: June 23, 2008                                   R. Richard Hopp
Washington, D.C.

176609_1

2

Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING, as CHIEF EXECUTIVE :
OFFICER OF THE CENTRAL PENSION FUND,  :
                                           :

              Plaintiff,                : CA No.: 1:07-cv-2182-PLF
                                           :

      v.                               :
                                           :

LANGENFELDER MARINE, INC.            :
                                         :

             Defendant.              :

## DEFENDANT'S ANSWERS TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

      Langenfelder Marine, Inc. hereby answers Plaintiff's First Set of Interrogatories

as follows:

INTERROGATORY NO. 1:  State the amount of contributions owed by you to the
Plaintiff for each of the following months in 2007: April, May, June, July, August and
September.

ANSWER:  See Attachment 1.

INTERROGATORY NO. 2:  For each amount of monthly contributions identified by you
in response to Interrogatory No. 1, state the amount you paid toward those contributions
and the date payment was made for each month.

ANSWER:  See Attachment 1.

INTERROGATORY NO. 3:  Identify all persons who are likely to have personal
knowledge of any fact alleged in the Complaint or in your Answer to the Complaint, and
state the subject matter of the personal knowledge possessed by each such person.

ANSWER:  James Matters, President, Langenfelder Marine
              David Howson, Vice President, Langenfelder Marine.

INTERROGATORY NO. 4:  Describe the facts you intend to rely upon in support of
your denial of Paragraph 7 of the Complaint.

ANSWER:  Langenfelder Marine is a party to collective bargaining agreements that refer

to the Restated Agreement and Declaration of Trust.  Langenfelder Marine has not signed

the Restated Agreement and Declaration of Trust.

INTERROGATORY NO. 5: Describe the facts you intend to rely upon in support of
your denial of Paragraph 10 of the Complaint.

ANSWER:  The denial was based on Langenfelder Marine's affirmative defense.

INTERROGATORY NO. 6:  Describe the facts you intend to rely upon in support of
your denial of Paragraph 16 of the Complaint.

ANSWER:  This denial was based on the affirmative defense.

INTERROGATORY NO. 7:  Describe the facts you intend to rely upon in support of
your denial of Paragraph 17 of the Complaint.

ANSWER:  This denial was based on the affirmative defense.

INTERROGATORY NO. 8:  Describe the facts you intend to rely upon in support of
your denial of Paragraph 18 of the Complaint.

ANSWER:  This denial was based on the affirmative defense.

INTERROGATORY NO. 9.:  Describe the facts you intend to rely upon in support of
your denial of Paragraph 19 of the Complaint.

ANSWER:  This denial was based on the affirmative defense.

INTERROGATORY NO. 10.:  Describe the facts you intend to rely upon in support of
your denial of Paragraph 22 of the Complaint.

ANSWER:  This denial was based on the affirmative defense.

INTERROGATORY NO. 11.:  Describe the facts you intend to rely upon in support of
your denial of Paragraph 25 of the Complaint.

ANSWER:  Defendant objects to this interrogatory on the grounds that paragraph 25 is

argumentative.

INTERROGATORY NO. 12.:  Describe the facts you intend to rely upon in support of
the affirmative defense(s) contained in your Answer to the Complaint.

2

ANSWER: Like the construction industry, employment in the dredging industry is project-based. To allow employees in the industry to earn retirement, medical and other fringe benefits from a single source, the industry has established multi-employer funds. To promote continuity of employment with contributing employers, the collective bargaining agreements, including the collective bargaining agreements between Langenfelder Marine and IUOE Local 25, require employers to obtain new employees from the Union's hiring hall. The hiring hall is to give first preference to employees who have a history of employment with employers making contributions to the Medical Fund. This arrangement also benefits the employers, by providing them a source of trained employees and ensuring that their fund contributions are credited to employees who actually stand to gain from the contributions.

Unfortunately, Local 25's hiring hall has referred few employees to Langenfelder Marine and not provided the Company with the out of work list. As a result, the Company has been forced to recruit on its own, at some expense and inconvenience. The employees whom it hires normally have no history of employment with employers who contribute to the funds. When the employees leave, for various reasons including completion of the project, they normally do not obtain new jobs with contributing employers. (The Company's knowledge of its employees' work histories and jobs after leaving Langenfelder is based on their job applications and conversations with them.) The result is that while contributions to the funds are made based on their hours worked, they have little prospect of ever qualifying for benefits. Langenfelder Marine understands that multi-employer plans are funded on the assumption that not all employees will vest or qualify for benefits, but this case does not involve normal turn-over among employees.

3

Rather, it involves the failure of a bedrock assumption—the assumption that Langenfelder would be referred, and make contributions on behalf of, employees with continuity of employment in the industry.

The Company developed two spreadsheets, which were provided on March 7, 2008. The first has two sheets. The first sheet lists employees whom the Company hired on its own, without benefit of the hiring hall, for the years 2003-2007. The second sheet lists the contributions allocable to them, by contribution period, during the same years.

The second spreadsheet lists the contributions allocable to employees discussed above, limited to the period April-December 2007. This corresponds to the period in which the complaints allege delinquent contributions.

The Company has requested from the Pension Fund information that will allow it to determine whether the employees listed in the spreadsheets were ever pension plan participants or individuals who might become participants upon meeting eligibility standards

INTERROGATORY NO. 13:  Identify all collective bargaining agreements to which the Defendants were/are signatory.

ANSWER:  Defendant is/was signatory to the Master Agreement and its Northern Addenda and Southern addenda (10/1/06-9/30/09) and the Oyster Shell Agreement (1/1/05—12/31/07).

INTERROGATORY NO. 14.:  State the dates during which the Defendants were bound to each collective bargaining identified in Interrogatory No. 13 above.

ANSWER:  See answer no. 13.

INTERROGATORY NO. 15:  Describe each account receivable and state the amount owed for each account referred to in Eric Hemmendinger's February 29, 2008, correspondence to the attorney for Plaintiff.

4

ANSWER:  The Company will produce the its accounts receivable reports for February

29, 2008.

INTERROGATORY NO. 16:  Identify each employee who had no prospect of future
participation in the plans as referred to in Eric Hemmendinger's February 29, and March
7, 2008, correspondence to the attorney for Plaintiff.

ANSWER:  The employees in questions are listed in a spreadsheet which was provided to

counsel for the funds on March 7, 2008.

INTERROGATORY NO. 17.:  Identify each employee who had no history of
participation in the plans referred to in Eric Hemmendinger's February 29, and March
7,2008, correspondence to the attorney for Plaintiff.

ANSWER:  :  The employees in questions are listed in a spreadsheet which was provided

to counsel for the funds on March 7, 2008.

INTERROGATORY NO. 18.:  State the facts supporting the claim in Eric
Hemmendinger's February 29, 2008, correspondence to the attorney for Plaintiff that the
union was unable to refer employees through the hiring hall as contemplated by the
collective bargaining agreements.

ANSWER:  See answer no. 5.

INTERROGATORY NO. 19.:  State the recruitment expenses referred to in Eric
Hemmendinger's March 7, 2007, correspondence to the attorney for the Plaintiff.

ANSWER:  Defendant has agreed to produce documentation of the expenses.

INTERROGATORY NO. 20:  For each Request for Admission propounded by the
Plaintiff and denied by you, describe the facts upon which you base your denial.

ANSWER:  Not applicable.

Respectfully submitted,

_____

Eric Hemmendinger
SHAWE & ROSENTHAL, LLP
11th Floor, Sun Life Building

5

20 S. Charles Street
Baltimore, MD 21201
410/752-1040 Telephone
410/752-8861 Facsimile
*Counsel for Defendant*

May 1, 2008

6

Defendant's Answers to Plaintiff's First Set of Interogatories

Interogatory No 1 and No 2:

| Pension Contribution Period | Amount Owed | Amount Remitted | Date Remitted |
|---|---|---|---|
| Apr-07 | $ 10,479.50 | $ 10,479.50 | 27-Dec-07 |
| May-07 | $ 10,346.00 | $ 10,346.00 | 29-Jan-08 |
| Jun-07 | $ 13,945.50 | $ 13,945.50 | 27-Feb-08 |
| Jul-07 | $ 18,093.00 | $ 18,093.00 | 17-Apr-08 |
| Aug-07 | $ 21,800.00 | $ - | |
| Sep-07 | $ 26,279.50 | $ - | |

# SHAWE
# ROSENTHAL LLP

20 S. Charles Street
11th Floor
Baltimore, MD 21201
P: 410-752-1040
F: 410-752-8861

**shawe.com**

**Eric Hemmendinger**
eh@shawe.com
410-843-3457

May 21, 2008

Richard Hopp, Esquire
O'Donoghue & O'Donoghue LLP
4748 Wisconsin Ave., NW
Washington, DC 20016

Re:    **Michael R. Fanning, as CEO of the Central Pension Fund of the Int'l Union of
       Operating Engineers and Participating Employers
       USDC for DC #1:07-cv-02182**

Dear Richard:

Enclosed is Langenfelder Marine, Inc.'s Answers to Interrogatories signature page executed by
James Matters.

Sincerely,

SHAWE & ROSENTHAL, LLP

Eric Hemmendinger
EH/sgs
Enclosures

179147

## VERIFICATION

Langenfelder Marine, Inc. certifies under penalty of perjury that the Answers to the foregoing Interrogatories are true and correct.

Langenfelder Marine, Inc.

By:    James Matters
Title:  President

Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING, as CHIEF EXECUTIVE :
OFFICER OF THE CENTRAL PENSION FUND :
                                   :
          Plaintiff,                   : CA No.: 1:07-cv-2182-PLF
                                     :
                 v.                        :
                                     :
LANGENFELDER MARINE, INC.        :
                                     :
          Defendant.                :

## PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS
## TO DEFENDANT

Plaintiff, by and through undersigned counsel, pursuant to Federal Rules of Civil Procedure 26 and 36 (and their amendments), hereby requests the Defendant to admit or deny the truth of the following matters.

## INSTRUCTIONS

1.      These Requests for Admissions are continuing to the full extent provided by Federal Rule of Civil Procedure 26(e). Accordingly, the Defendant is required to reasonably supplement and amend the answers thereto should the Defendant or its attorney come into possession of further or different facts or information pertinent to the matters inquired into herein.

2.      At their end, please attach a verification of the responses, including information as to the name(s), address(es), and title(s) of the person(s) verifying the answers.

3.      Responses shall be served thirty days after service in accordance with Federal Rule of Civil Procedure 36(a), upon counsel for the Defendant, R. Richard Hopp, O'Donoghue & O'Donoghue LLP, 4748 Wisconsin Avenue, N.W., Washington, D.C. 20016.

4.      The term "bargaining unit work" refers to the work, territory and job classifications covered by the Defendant's collective bargaining agreement, including all addenda and schedules, with International Union of Operating Engineers Local No. 25.

## REQUESTS FOR ADMISSION

REQUEST NO. 1:  Admit that on December 7, 2007, you paid the contributions owed to the Plaintiff for bargaining unit work performed by your employees during the month of April 2007.

   RESPONSE:


REQUEST NO. 2:  Admit that on January 30, 2008, you paid the contributions owed to the Plaintiff for bargaining unit work performed by your employees during the month of May 2007.

   RESPONSE:


REQUEST NO. 3:  Admit that on March 3, 2008, you paid the contributions owed to the Plaintiff for work bargaining unit performed by your employees during the month of June 2007.

   RESPONSE:


REQUEST NO. 4:  Admit that you owe contributions to the Plaintiff in the amount of $18,093.00 for bargaining unit work performed by your employees during the month of July 2007.

   RESPONSE:


REQUEST NO. 5:  Admit that you have not paid any contributions to the Plaintiff for bargaining unit work performed by your employees during the month of July 2007.

   RESPONSE:


REQUEST NO. 6:  Admit that you owe contributions to the Plaintiff in the amount of $21,800.00 for bargaining unit work performed by your employees during the month of August 2007.

   RESPONSE:

REQUEST NO. 7:  Admit that you have not paid any contributions to the Plaintiff for bargaining unit work performed by your employees during the month of August 2007.

RESPONSE:


REQUEST NO. 8:  Admit that you owe contributions to the Plaintiff in the amount of $26,279.50 for bargaining unit work performed by your employees during the month of September 2007.

RESPONSE:


REQUEST NO. 9:  Admit that you have not paid any contributions to the Plaintiff for bargaining unit work performed by your employees during the month of September 2007.

RESPONSE:


Dated:  March 13, 2008                    By:  _____
                                               R. Richard Hopp, DC Bar # 432221
                                               O'DONOGHUE & O'DONOGHUE, LLP
                                               4748 Wisconsin Avenue, N.W.
                                               Washington, D.C.  20016
                                               202/362-0041 - Telephone
                                               202/237-1200 - Facsimile

                                               *Attorneys for Plaintiff*


3

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March, 2008, a copy of the forgoing was sent via posted-prepaid U.S. mail, certified, return receipt requested to:

Mr. Eric Hemmendinger
Shaw & Rosenthal LLP
11th Floor, Sun Life Building
20 South Charles Street
Baltimore, MD 21201

_____
R. Richard Hopp

173525_1

173524_1

_____
R. Richard Hopp

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.28 |

3/13/08

Hemmendinger Shaw & Rosenthal LLP
20 S. Charles St. 11th Fl. Sun Life
Baltimore MO 21201

PS Form 3800, June 2002     See Reverse for Instructions

COMPLETE THIS SECTION
s 1, 2, and 3. Also complete
cted Delivery is desired.
e and address on the reverse
return the card to you.
d to the back of the mailpiece,
if space permits.

d to:
Hemmendinger
senthal LLP
Sun Life Bldg.
Charles St.
Baltimore, MD 21201

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ ☑ Agent
☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
Condre Smith   3/17/08

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7005 1820 0003 6315 6472

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

Exhibit C

LAW OFFICES

# O'DONOGHUE & O'DONOGHUE LLP

DONALD J. CAPUANO
JAMES R. O'CONNELL (DC & MD)
ROBERT MATISOFF
JOYCE A. MADER (DC & PA)
SALLY M. TEDROW
BRIAN A. POWERS
JOHN L. BOHMAN
FRANCIS J. MARTORANA (DC, MD & VA)
NICHOLAS R. FEMIA (DC & PA)
ELLEN O. BOARDMAN
CHARLES W. GILLIGAN (DC & MD)
LOUIS P. MALONE III
JOHN LEARY
MARY C. FELLER (DC & PA)
JOHN R. HARNEY (DC, MD & VA)
RICHARD HOPP (DC & MD)
GERARD M. WAITES (DC & PA)

PHYLLIS C. BORZI
OF COUNSEL

4748 WISCONSIN AVENUE, NW
WASHINGTON, DC 20016
(202) 362-0041
FAX (202) 362-2640

9 NORTH ADAMS STREET
ROCKVILLE, MD 20850
(301) 251-0929

CONSTITUTION PLACE
SUITE 515
325 CHESTNUT STREET
PHILADELPHIA, PA 19106
(215) 629-4970

MARK W. KUNST (DC & MD)
ROBERT P. CURLEY (PA ONLY)
JOHN M. McINTIRE (DC & MD)
GREGORY F. MOORE (DC & MD)
DINAH S. LEVENTHAL (DC & MD)
KEITH R. BOLEK (DC & MD)
DAVID D. CAPUANO (PA ONLY)
JENNIFER R. SIMON (DC & MD)
CATHERINE R. FAYETTE
RICHARD V. S. LUNA (DC & MD)
AARON D. LLOYD (DC & MD)

MARTIN F. O'DONOGHUE
(1902-1973)
PATRICK C. O'DONOGHUE
(1930-1979)
JOSEPH P. BOYLE
(1954-1998)

May 9, 2008

Mr. Eric Hemmendinger
Shaw & Rosenthal LLP
11th Floor, Sun Life Building
20 South Charles Street
Baltimore, MD  21201

Re:    Fanning v. Langenfelder Marine, Inc.
        Civil Action No. 1:07-cv-2182-PLF

Dear Mr. Hemmendinger:

Please find enclosed the Plaintiff's Response to the Defendant's Interrogatory.

I note that I have not received the Defendant's executed discovery responses as ordered by Judge Friedman.  As a result, all of the Defendant's objections, except for privilege, now have been waived.  Marens v. Carrabba's Italian Grill, Inc., 196 F.R.D. 35 (D. Md. 2000); Thompson v. HUD, 199 F.R.D. 168 (D. Md. 2001); Godsey v. United States, 133 F.R.D. 111, 112-13 (S.D. Miss. 1991); Henderson v. Zurn Indus., 131 F.R.D. 460, 568 (S.D. Ind. 1990).  Please supply the Defendant's executed responses within five days of the date of this letter or I will be forced to seek judicial intervention.

Based on Judge Robinson's rulings today, the Defendant's Responses to the Plaintiff's Requests for Admission are now due on or before June 9, 2008.  The Defendant's Responses to the Admissions will also require supplemental Interrogatory and Document Production responses.  In the meantime, if you have any questions or need additional information, please contact the undersigned.

Very truly yours,

R. Richard Hopp

Enclosure
cc:    Mr. Michael A. Crabtree (w/o encl.)
175420_1

Exhibit D

FANNING V. LANGENFELDER MARINE, INC.
07-2182
ATTORNEY FEES DETAIL

| Date | Hours | Amount | Attorney | Description |
|------|-------|--------|----------|-------------|
| 12/03/07 | 2.50 | 500.00 | RRH | Communications with client, review materials, research local rules, draft and finalize complaint and related materials for filing. |
| 12/04/07 | 2.50 | 500.00 | RRH | Finalize complaint and related documents for filing, file complaint in clerk's office and arrange for service of process. |
| 12/27/07 | .30 | 60.00 | RRH | File affidavit of return of service and communication with client regarding status. |
| 01/10/08 | 1.00 | 200.00 | RRH | Research local rules, telephone conference with attorney for Langenfelder and communication with fund office regarding settlement terms and answer, draft scheduling report. |
| 01/11/08 | 1.50 | 300.00 | RRH | Research affirmative defenses, communication with client regarding settlement strategy and calculate current delinquency amount, prepare Rule 16 report for court. |
| 01/16/08 | 1.00 | 200.00 | RRH | Finalize discovery plan, draft letter to opposing counsel, communication with client. |
| 01/17/08 | .30 | 60.00 | RRH | Telephone conference with client and office conference regarding scheduling order and settlement strategy. |
| 01/21/08 | .50 | 100.00 | RRH | Communication with opposing counsel regarding Rule 26 report and settlement. |
| 01/24/08 | .80 | 160.00 | RRH | Telephone conference with attorney and fund office, research pending cases in New Jersey, prepare scheduling order. |
| 02/22/08 | .50 | 100.00 | RRH | Telephone conference with fund office and communications with opposing counsel regarding scheduling conference and initial report for Court. |
| 03/03/08 | 1.00 | 200.00 | RRH | Review settlement correspondence, review status of payments, communication with fund office regarding status. |
| 03/04/08 | .50 | 100.00 | RRH | Telephone conference with opposing counsel regarding scheduling order and settlement, telephone conference with Local 25 benefit fund counsel. |
| 03/05/08 | .50 | 100.00 | RRH | Draft and revise initial report, communication with opposing counsel and fund office. |

FANNING V. LANGENFELDER MARINE, INC.
07-2182
ATTORNEY FEES DETAIL

| Date | Hours | Amount | Attorney | Description |
|------|-------|--------|----------|-------------|
| 03/06/08 | .80 | 160.00 | RRH | Finalize initial report and file. |
| 03/12/08 | 2.30 | 460.00 | RRH | Draft discovery requests and communication with fund office. |
| 03/26/08 | .80 | 160.00 | RRH | Review correspondence regarding settlement and communication with fund office. |
| 03/31/08 | .80 | 160.00 | RRH | Review settlement correspondence from Langenfelder. |
| 04/02/08 | 1.50 | 300.00 | RRH | Prepare for conference, conference with fund office regarding status, review correspondence from Langenfelder to employees. |
| 04/03/08 | 2.00 | 400.00 | RRH | Prepare and attend court conference, communication with fund office. |
| 04/07/08 | .80 | 160.00 | RRH | Communication with fund office regarding court orders, and review various orders regarding discovery and status of action, telephone conference with Local 25 benefit funds regarding status of New Jersey lawsuit. |
| 04/11/08 | .80 | 160.00 | RRH | Review discovery requests from defendant and draft response. |
| 04/14/08 | .80 | 160.00 | RRH | Finalize discovery responses, communication with fund office regarding status of action. |
| 04/23/08 | .30 | 60.00 | RRH | Telephone conference with attorney and revise confidentiality agreement. |
| 04/29/08 | .50 | 100.00 | RRH | Review and revise confidentiality agreement, communication with fund office. |
| 05/02/08 | 1.50 | 300.00 | RRH | Attend status conference, communication with fund office and opposing counsel. |
| 05/05/08 | .80 | 160.00 | RRH | Telephone conference with attorney regarding liquidated damages and fee amounts. |
| 05/09/08 | 1.80 | 360.00 | RRH | Attend status conference with Langenfelder and status report to fund office, draft letter to Langenfelder counsel regarding open discovery. |
| 06/18/08 | 4.00 | 800.00 | RRH | Draft and research summary judgment motion and related materials, calculate damages and interest. |
| 06/19/08 | 4.00 | 800.00 | RRH | Research, draft and revise summary judgment materials, collect exhibits. |
| 06/20/08 | 2.50 | 500.00 | RRH | Draft and revise summary judgment materials, coordinate declaration with fund office. |

FANNING V. LANGENFELDER MARINE, INC.
07-2182
ATTORNEY FEES DETAIL

| Date | Hours | Amount | Attorney | Description |
|------|-------|--------|----------|-------------|
| 06/23/08 | 2.50 | 500.00 | RRH | Finalize statement of facts and summary judgment materials, finalize attorney declaration, calculate fees and costs, collect exhibits and file materials in court. |
| TOTALS | 41.40 | $8,280.00 | | |

*Page 3 of 3*

Exhibit E


Citibank, N.A.

PERSONAL
MONEY ORDER

305269337

SERVICE INSTRUCTIONS
FOR STOP PAYMENTS, PHOTOCOPIES OR ANY OTHER SERVICE REQUIREMENT,
CONTACT INTEGRATED PAYMENT SYSTEMS INC. AT 1-800-223-7520.

10-86
220

FC#00908 FA# 009
017-03 Ck. Ser.# 305269337^

12/04/07

* * * * * * * * 350.00 * * *

****THREE HUNDRED FIFTY DOLLARS****

UNITED STATES DISTRICT CT, DISTRICT OF COLUMBIA

**NOT GOOD FOR MORE THAN $1,000.00**
MEMO

Issued by Integrated Payment Systems Inc., Englewood, Colorado
To Citibank, N.A., Buffalo, NY

**NON NEGOTIABLE**

TERMS
PURCHASER AGREES TO ENTER THE NAME OF A PAYEE AND SIGN THE INSTRUMENT IMMEDIATELY UPON PURCHASE.
FAILURE TO DO SO WILL RESULT IN THE PURCHASER BEARING THE RISK OF ANY LOSS OR THEFT OF THE INSTRUMENT.

Court Name: District of Columbia
Division: 1
Receipt Number: 4616000717
Cashier ID: lfizer
Transaction Date: 12/04/2007
Payer Name: CITIBANK-NEW CASE

CIVIL FILING FEE
For: CITIBANK-NEW CASE
Amount:            $350.00

MONEY ORDER
Check/Money Order Num: 305269337
Amt Tendered: $350.00

Total Due:     $350.00
Total Tendered: $350.00
Change Amt:      $0.00

07 2182

Only when the bank clears the
check, money order, or verifies
credit of funds, is the fee or debt
officially paid or discharged. A
$45 fee will be charged for a
returned check.

Exhibit F

Priority+ Legal Services, Inc.
Legal Legs, LTD.
PO Box 540
Reisterstown, MD 21136

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/20/2007 | 29745 |

| E-Mail | Priorityplus@aol.com | |
|--------|----------------------|--|
| Phone # | Fax # | Federal Tax ID Number |
| 410-282-7000 | 410-823-3299 | 52-1955303 |

| Ordered By: |
|-------------|
| R. Richard Hopp |

**Bill To**

O'Donoghue & O'Donoghue
4748 Wisconsin Avenue, NW
Washington, DC 20016

| Plaintiff | Defendant | Client/Matter # | Terms |
|-----------|-----------|-----------------|-------|
| Fanning | Langenfelder Marine | | Net 30 |

| Description | Subject of Service | Rate | Amount |
|-------------|--------------------|------|--------|
| PROCESS SERVICE IN QUEEN ANNE'S COUNTY MARYLAND | David Howson | 95.00 | 95.00 |

PLEASE INCLUDE THE INVOICE NUMBER ON ALL CHECKS TO INSURE PROPER CREDIT TO YOUR ACCOUNT.

**Total** $95.00

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING,                          :
                                             :
              Plaintiff,                     :
                                             :
       v.                                    :    Civil Action No. 1:07-cv-2182-PLF
                                             :
LANGENFELDER MARINE, INC.,                   :
                                             :
              Defendant.                     :

## ORDER GRANTING SUMMARY JUDGMENT

Having considered Plaintiff's Motion for Summary Judgment, Memorandum in support thereof, and the accompanying Declarations, and having fully considered the Opposition thereto, if any, and the applicable law, it is this       day of August, 2008, hereby:

ORDERED and ADJUDGED that Summary Judgment be and the same is entered pursuant to Rule 56 of the Federal Rules of Civil Procedure in favor of Plaintiff Michael R. Fanning, as Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers against Defendant Langenfelder Marine, Inc. for the sum of $84,459.08, representing contributions in the amount of $48,079.50, for the months of August and September of 2007, pre-judgment interest on that amount of $7,465.88, calculated through July 31, 2008, pre-judgment interest in the amount of $11.86 per day from September 1, 2008, to the date of this judgment, post-judgment interest accruing at the statutory rate from the date of judgment through the date of payment, liquidated damages in the amount $20,188.70, and costs and fees in the amount of $8,725.00.

_____
United States District Court Judge
Paul L. Friedman

cc:    R. Richard Hopp
        O'Donoghue & O'Donoghue LLP
        4748 Wisconsin Ave., NW
        Washington, DC  20016
        *Attorney for Plaintiff*


        Elizabeth Tophy-Donzella
        Eric Hemmendinger
        Shaw & Rosenthal, LLP
        20 South Charles Street
        11th Floor
        Baltimore, Maryland 12101
        *Attorneys for Defendant*