UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING, :
:
      Plaintiff, :
:
v. : Civil No. 1:07-cv-2182-PLF-DAR
:
LANGENFELDER MARINE, INC., :
:
      Defendant. :

**PLAINTIFF'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff, by and through the undersigned, pursuant to Local Rule 7, hereby replies in further support of its Motion for Summary Judgment.

**A.**    **PREJUDGMENT INTEREST CALCULATION**

As detailed in the Plaintiff's Supplemental Damages Calculation, on June 30, 2008, the Defendant paid to the Central Pension Fund $49,087.50.[1] (Docket No. 10.) This payment brought the balance of the delinquent contributions owed for the period of April 2007 through September 2007 to zero. As a result, the following amounts remained to be paid by the Defendant (exclusive of fees and costs):

| | |
|---|---|
| Liquidated Damages on Unpaid Contributions: | $20,390.30 |
| Interest on Unpaid Contributions (from the date due to payment at 9%): | $ 7,157.91 |
| **TOTAL** | **$27,548.21** |

---

[1] This payment included contributions for work previously unreported to the Central Pension Fund. As a result, the Plaintiff adjusted the total amount of unpaid contributions from $100,943.50 to $101,951.50. Adjustments to the other amounts, such as liquidated damages and interest, were made in the attachment to the Plaintiff's Supplemental Damages Calculation. (Docket No. 10.) Notably, the Defendant does not dispute the calculation of any of these amounts, only the legal basis for an award of prejudgment interest and liquidated damages.

The next day, July 1, 2008, the Defendant made another payment to the Central Pension Fund, in the amount of $7,110.08. Therefore, as of July 1, 2008, the amount owed to the Plaintiff (exclusive of fees and costs) was as follows:

| | |
|---|---|
| Liquidated Damages on Unpaid Contributions: | $20,390.30 |
| Interest on Unpaid Contributions (from the date due to payment at 9%): | $     47.83 |
| **TOTAL** | **$20,438.13** |

No additional payments have been made by the Defendant.

The Plaintiff's Motion for Summary Judgment requested that the Court exercise its discretion and award prejudgment interest at the rate established by 28 U.S.C. § 1961(a). Landswehr v. Dupree, 72 F.3d 726, 739 (9th Cir. 1995) (whether to award prejudgment interest to an ERISA plaintiff is a question of fairness, resting with the court's sound discretion, to be answered by balancing the equities). If the Court determines that an award of prejudgment interest is appropriate in this case, prejudgment interest will accrue at the rate of $1.44 per day, from July 1, 2008, until the date of the Court's judgment, calculated as follows:

$20,390.30 x 2.57% = $524.03 / 365 days per year = $1.44 per day interest

### B.   LIQUIDATED DAMAGES

Liquidated damages are requested at the rate of twenty percent of the amount of unpaid contributions owed when this lawsuit was filed ($101,951.50). There are two reasons to support an award of liquidated damages in this case. First, an award of liquidated damages is mandated by Section 502(g)(2)(C) of ERISA. 29 U.S.C. § 1132(g)(2)(C). In addition, and separate from the statutory authority, Section 4.5(b) of the Central Pension Fund's Restated Agreement and Declaration of Trust mandates the award of liquidated damages. (Fanning Decl. Ex. A, page 12.) Notably, Section 4.5(b) of the Restated Agreement and Declaration of Trust details that liquidated damages are based on the enumerated "additional burden and expense" caused by an employer's delinquency. The

2

Defendant raises no facts or legal arguments to avoid an award of liquidated damages on summary judgment based on Section 4.5(b) of the Restated Agreement and Declaration of Trust.

Instead, the Defendant argues that Section 502(g) of ERISA does not authorize an award of liquidated damages in this case because it paid the delinquent contributions after the lawsuit was commenced, but before a judgment was entered by the Court. The Defendant cites a single case for this legal proposition: Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc., 933 F.2d 376 (6th Cir. 1991).

However, the Defendant's interpretation of the statute has been rejected by every other United States Court of Appeals to consider the issue. All of the other circuit courts hold that liquidated damages must be awarded pursuant to Section 502(g)(2)(C) of ERISA for any contributions unpaid at the time suit is brought regardless of the amount of judgment. See e.g. United Auto Workers Local 259 Social Security Dept. v. Metro Auto Center, 501 F.3d 283, 298 (3rd Cir. 2007); Carpenters Amended and Restated Health Benefit Fund v. John W. Ryan Construction Co., 767 F.2d 1170, 1173-74 (5th Cir. 1985); Iron Workers Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506-08 (2nd Cir. 1995); Idaho Plumbers and Pipefitters Health and Welfare Fund v United Mechanical Contractors, Inc., 875 F.2d 212, 215-16 (9th Cir. 1990); Northwest Administrators, Inc. v. Albertson's, Inc., 104 F.3d 253, 258 (9th Cir. 1991); Operating Engineers Local 139 Health Benefit Fund v. Gustafson Construction Corp., 258 F.3d 645, 654 (7th Cir. 2001); Carpenters & Joiners Welfare Fund v. Gittleman, 857 F.2d 476, 478 (8th Cir. 1998).

Not surprisingly, the majority view is also the result reached by this Court in ITPE-MEBA/NMU Funds v. United International Investigative Services, 13 E.B.C. 2538 n. 4 (D.D.C. 1991) (attached). Therefore, pursuant to Section 502(g)(2)(C) of ERISA and Section 4.5(b) of the Central Pension Fund's Restated Agreement and Declaration of Trust, it is appropriate for the Court

to award liquidated damages to the Plaintiff in the amount of $20,390.30.  ($101,951.50 x 20% = $20,390.30.)

### C.   CONCLUSION

The Plaintiff respectfully requests that the Court enter summary judgment against the Defendant Langenfelder Marine, Inc. in the following amounts:

| | |
|---|---|
| Liquidated Damages: | $20,390.30 |
| Interest on Unpaid Contributions | $       47.83 |
| Attorneys' Fees and Costs | $  8,725.00 |
| **TOTAL** | **$29,163.13** |

The Plaintiff also requests prejudgment interest on these unpaid amounts at the rate of $2.05 per day from July 1, 2008, to the date of judgment.[2]  Finally, the Plaintiff requests that post-judgment interest be ordered to continue to accrue at this rate until the date of payment.  28 U.S.C. § 1961(a).

Respectfully submitted,

O'DONOGHUE & O'DONOGHUE LLP
4748 Wisconsin Avenue, N.W.
Washington, D.C.  20016
(202) 362-0041 telephone
(202) 237-1200 facsimile

Dated:  July 25, 2008

_____
R. Richard Hopp (Bar No. 432221)
rhopp@odonoghuelaw.com
*Attorney for Plaintiff*

---

[2] This calculation is as follows: $29,115.30 x 2.57% = $748.26 / 365 days = $2.05 interest per day.

4

LEXSEE 13 EBC 2538

ITPE-MEBA/NMU FUNDS, Plaintiffs, v. UNITED INTERNATIONAL INVESTIGATIVE SERVICES, Defendant

Civil Action No. 90-0066

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

1991 U.S. Dist. LEXIS 7201; 13 Employee Benefits Cas. (BNA) 2538

April 5, 1991, Decided
April 5, 1991, Filed

**COUNSEL:** [*1] Michael E. Brier, McLean, Virginia, Attorney for the Plaintiffs.

Robert E. Deso, Washington, D.C., Attorney for the Defendant.

**JUDGES:** George H. Revercomb, United States District Judge.

**OPINION BY:** REVERCOMB

**OPINION**

ORDER

The plaintiffs, ITPE-MEBA/NMU Funds ("Funds"), have filed this action for delinquent contributions owed by the defendant pursuant to two collective bargaining agreements ("CBAs") between the defendant and the National Maritime Union, AFL-CIO ("Union"). The agreements concern service employees employed by the defendant at the Washington Navy Yard in Washington, D.C., and Naval Weapons Station, Earle in Colts Neck, New Jersey. The defendant has raised affirmative defenses to all of the plaintiffs' claims and has filed a Motion for Summary Judgment. The Court will consider the two employment contexts separately.

I. *NAVAL WEAPONS STATION, EARLE*

The plaintiffs have sued for "judgment in the amount of all contributions due and owing as of the date of judgment" to the Fund pursuant to the CBA covering employees employed by the defendant at the Naval Weapons Station, Earle, in Colts Neck, New Jersey. In addition, the plaintiffs seek liquidated damages and interest on the delinquent amounts pursuant [*2] to Section 502(g) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(g), and to the terms of the Agreement and Declaration of Trust which established the Fund in question ("Earle Fund"). [1] According to an affidavit submitted by the plaintiffs and uncontested by the defendant, under the relevant provisions of the Agreement and Declaration of Trust, employers are given a ten-day grace period in which to pay their contributions into the Fund. If contributions are not made within the ten-day period, the Fund's trustees can take legal action to enforce the employer's obligations under the CBA. Another provision authorizes the Trustees to impose liquidated damages at the rate of 20% of the amount of the unpaid contributions and to collect interest on the delinquent payments. *See* Wolfe Aff. para. 7.

 1 The Agreement and Declaration of Trust was entered into on July 1, 1971, by the National Maritime Union and representatives of employers who had entered into CBAs with the Union. The Agreement and Declaration established the Health and Welfare Fund which receives contributions from participating employers and provides health and welfare benefits for employees of those employers. Contributions are made pursuant to the terms of the CBAs, and procedures for the Fund's collection of contributions are set forth in the terms of the Agreement and Declaration. *See* Wolfe Aff. paras. 3-6.

[*3] The plaintiffs assert that the defendant has

Case 1:07-cv-02182-PLF   Document 14-2   Filed 07/25/2008   Page 2 of 5

1991 U.S. Dist. LEXIS 7201, *3; 13 Employee Benefits Cas. (BNA) 2538

Page 2

failed to make contributions to the Earle Fund on a timely basis for the period from February 1, 1989 to the present. Complaint para. 10. In their Opposition to the defendant's Motion for Summary Judgment, however, the plaintiffs claim liquidated damages and interest on delinquent contributions throughout the entire period of defendant's service contract at Earle, which extended from August 1987 through October 1989. [2] Over that period, the plaintiffs allege, all but one of the defendant's payments to the Fund were delinquent. In an attachment to the affidavit of Joan G. Wolfe, Administrator of the Earle Fund, the plaintiffs have listed the defendant's contributions, the extent of their delinquency, and the amount of liquidated damages and interest owed on each payment. The total amount claimed is $ 5,840.92 in interest and $ 29,096.94 in liquidated damages.

> 2   Although the Complaint only refers to delinquent payments from February 1989 to the present, it appears to the Court that the plaintiffs, in combining its Earle Fund claims with its claims for delinquent contributions to the Washington Navy yard fund, erroneously listed only the dates relevant to the Washington Navy Yard contract. Because both parties are aware of the period of the delinquent payments to the Earle Fund and because the plaintiffs have clearly outlined the extent of their claims concerning the Earl Fund in their Opposition to Summary Judgment, the Court will consider the plaintiffs' claims pertaining to the Earle Fund back to August 1987.

[*4] The defendant admits that it was a party to a CBA which obligated it to make contributions into the Fund on behalf of its employees at Earle. The defendant also admits that many of its contributions were delinquent and explains that its delinquency in making payments into the Fund was caused by the Navy's delinquency in paying the defendant for the services provided at Earle. However, the defendant asserts that at the time this action was filed, all contributions to the Earle Fund were paid except for the final payment for October 1989, the last month of the service contract. According to the defendant, the plaintiffs are precluded from suing in Court for liquidated damages and interest stemming from delinquent payments which were actually paid *prior to* suit having been brought.

A. LIQUIDATED DAMAGES

The plaintiffs' claims for liquidated damages are brought under both § 1132(g)(2) of ERISA and the terms of the Agreement and Declaration of Trust. However, the nature of the "liquidated damages" under the statute differs from that of conventional contractual liquidated damages. The 20% liquidated damages provision of ERISA § 1132(g)(2)(C) is clearly intended as a *"penalty* for [*5] untimely payment of contributions"; therefore, these statutory "liquidated damages" differ from those permitted under the common law. See *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Monal Mfg. Co.*, 607 F. Supp. 512, 514 (D.D.C. 1985); see also *Architectural & Ornamental Iron Workers Local Union No. 580 v. JMB Corp.*, 667 F. Supp. 134, 134-35 (S.D.N.Y. 1987). Under the common law, if liquidated damages provided in a contract are found to be a penalty, Courts will not give effect to the contractual provision for liquidated damages. Contractual liquidated damages will only be enforced if they represent a "genuine pre-estimate by the parties of the extent of injury that will be caused by a future breach." *Id.* Because the nature of the damages authorized under the statute and the agreement differ, the Court will consider these provisions separately.

1. *1132(g) of ERISA*

The pertinent ERISA provision provides:

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--

(A) the unpaid contributions,

[*6] (B) interest on the unpaid contributions,

(C) an amount equal to the greater of--

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems

Case 1:07-cv-02182-PLF   Document 14-2   Filed 07/25/2008   Page 3 of 5

Page 3
1991 U.S. Dist. LEXIS 7201, *6; 13 Employee Benefits Cas. (BNA) 2538

appropriate.

29 U.S.C. § 1132(g)(2). [3] Courts have unanimously held that liquidated damages are not available under § 1132(g)(2)(C) for delinquent contributions which are paid prior to instigation of a legal action for such damages. *Parkhurst v. Armstrong Steel Erectors, Inc.*, 901 F.2d 796, 797 (9th Cir. 1990); *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989); *Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478 (8th Cir. 1988); *Trustees of the Glaziers Local 963 Pension, Welfare and Apprentice Funds v. Walker & Laberge Co., Inc.*, 619 F. Supp. 1402, 1405 (D.Md. 1985); [*7] *Bennett v. Machined Metals Co.*, 591 F Supp. 600, 605 (E.D. Pa. 1984). These decisions hold that delinquent contributions paid prior to suit are not "unpaid" within the meaning of paragraph (2).

> 3   Section 1145 of ERISA concerns delinquent contributions to employee benefit funds. Thus, this action falls within paragraph (2) rather than paragraph (1) of § 1132.

The defendant in this case paid all but three of its delinquent contributions to the Earle Fund prior to the plaintiffs' filing this action in January 1990. Thus, the liquidated damages provision of § 1132(g)(2) applies only to those delinquent contributions paid after January 1990. [4] Accordingly, the Court orders that the defendant pay liquidated damages in the amount of $ 2,380.00, which amount represents 20% of the delinquent payments made after this suit was initiated. [5]

> 4   The fact that the delinquent payments were paid prior to the entry of judgment in this case does not prevent the application of the § 1132(g)(2) penalties. *See Carpenters Amended and Restated Health Benefit Fund v. John W. Ryan Constr. Co.*, 767 F.2d 1170, 1173 (5th Cir. 1985).

[*8]

> 5   This liquidated damages figure was derived from the statement of delinquent payments provided by the plaintiffs in Wolfe Exhibit 2. The statement was not challenged by the defendant.

2. *Liquidated Damages under the Agreement and Declaration of Trust*

Although the liquidated damages provisions of ERISA only apply to contributions which are "unpaid" at the time that suit is filed, no such limitation applies liquidated damages which might apply under the Agreement and Declaration of Trust. Moreover, the ERISA provision does not preempt the parties' contractual agreement providing for liquidated damages in this case. *Carpenters Health and Welfare Fund v. Building Tech., Inc.*, 747 F Supp. 288, 297 (E.D. Pa. 1990) (citing *Idaho Plumbers*, 875 F.2d at 216-17); contra *Carpenters & Joiners Welfare Fund*, 875 F.2d at 478-79.

Section 6.02 of the Agreement and Declaration authorizes the Trustees of the Fund to impose both liquidated damages in an amount of 20% of the unpaid contributions and interest equal to the prime rate on all unpaid contributions. [*9] Before this Court can give effect to the contractual liquidated damages clause, however, it must determine that the clause is valid and not void as a penalty.

In the *Parkhurst* case, the Ninth Circuit held, as it had in the earlier *Idaho Plumbers* case, that a 20% liquidated damages provision in a trust fund agreement was void as a penalty. 901 F.2d at 798 (citing *Idaho Plumbers*, 875 F.2d at 218). The Court reasoned that

there is nothing in the record to indicate that the 20% provision in the Trust Funds' agreement was any more a reasonable forecast of damages than the 20% provision in *Idaho Plumbers*. . . . Without some indication that the liquidated damages provision is a good faith attempt to set an amount reflective of anticipated damages, we will find the provision void as a penalty.

*Id.* In this case, the Court must also hold the 20% liquidated damages clause void as a penalty. Although the defendant's delinquencies in this case extended for much longer periods of time than either of the Ninth Circuit cases, that fact does not change the Court's examination of the reasonableness of a liquidated damages clause as a measure of [*10] damages. Such a determination must be made with reference to the knowledge of the parties at the time the contract was entered into and not at the time of breach. *I.A.M. Nat'l Pension Fund*, 607 F. Supp. at 514.

For these reasons, the plaintiffs are not entitled to collect liquidated damages for the defendant's delinquent payments into the Earle Fund which were paid prior to

Case 1:07-cv-02182-PLF    Document 14-2    Filed 07/25/2008    Page 4 of 5

1991 U.S. Dist. LEXIS 7201, *10; 13 Employee Benefits Cas. (BNA) 2538

Page 4

the initiation of this suit.

## B. INTEREST

The defendant asserts that, like claims for liquidated damages, claims for interest on delinquent payments are precluded from being brought when the payments are made prior to suit. This argument is not clearly supported by caselaw. *See Bennett v. Machined Metals Co., Inc.,* 591 F. Supp. 600 (E.D. Pa. 1984) (denying liquidated damages under § 1132(g)(2)(C)(iii) on contributions paid prior to suit but awarding interest under § 1132(g)(2)(C)(ii) on the same contributions). This Court need not resolve the interest issue under the ERISA provision, however, because the terms of the Agreement and Declaration of Trust clearly authorize the Trustees of the Fund to charge interest on delinquent payments at the prime rate.

Accordingly, the Court [*11] orders that the defendant pay interest on all delinquent payments, whether or not they were paid prior to the filing of this suit. The plaintiffs have calculated the total interest owed as $ 5,840.92. This interest figure was calculated by the plaintiffs in Wolfe Exhibit 2 and has not been contested by the defendant.

## C. ATTORNEYS FEES

The plaintiff has requested attorney's fees incurred in pursuing its claims for interest and liquidated damages resulting from the defendant's delinquent payments to the Earle Fund. § 1132(g)(2)(D) provides a *mandatory* assessment of attorneys fees "when an action is filed to enforce the employer's obligation to make payments in accordance with the terms of the plan." *Carpenters Amended and Restated Health Benefit Fund,* 767 F.2d at 1172. In contrast, the language of the Agreement and Declaration of Trust does not *require* the Court to award fees. The Court declines to award attorneys fees and costs in this case beyond those mandated by the ERISA statute. The Court finds that § 1132(g)(2)(D), and in fact all of § 1132(g)(2), only applies to cases in which contributions were paid subsequent to suit being "filed to enforce the [*12] employer's obligation to make payments" to the Fund. Accordingly, the plaintiffs are awarded attorneys fees and costs incurred in pursuing the $ 2,380.00 in liquidated damages awarded under § 1132(g)(2)(C)(ii).

## II. *Washington Navy Yard*

The defendant first undertook providing security services at the Washington Navy Yard on February 1, 1989. Prior to that time, services had been provided by IBI Security, Inc. ("IBI") IBI operated pursuant to a collective bargaining agreement with the National Maritime Union ("Union"). Under the terms of the agreement, IBI was obligated to pay fringe benefits into the Funds on behalf of its employees.

When the defendant replaced IBI as the contractor for the Washington Navy Yard, plaintiffs assert that it entered into a CBA identical to that which applied to its predecessor. However, the defendant has never paid contributions into the Funds as required by the terms of the alleged CBA. The defendant contests the existence of a CBA covering its employees at the Washington Navy Yard, and this factual dispute is central to the case. Nonetheless, the defendant claims that it is entitled to summary judgment as a matter of law. The Court cannot agree.

[*13] The defendant's arguments all stem from its assertion that there was no valid CBA between it and the Union pursuant to which it was obligated to make the contributions claimed by the plaintiffs. The defendant asserts that it undertook no negotiations with the Union in 1989 when it assumed the service contract at the Washington Navy Yard; nor did the defendant, or any of its representatives, knowingly enter into a CBA with the Union. The defendant further alleges that even had it signed a CBA, the agreement would have been void because the Union was not supported by a majority of the defendant's employees. In addition, the defendant asserts that the Union did nothing to represent the defendant's employees over the period in question. Finally, even if the Court were to find that the defendant was obligated to make contributions to the Funds under a valid CBA, the defendant argues that it is entitled to a set-off from any judgment in the amount of benefits which it has paid directly to its employees.

In response to the defendant's factual assertion that no CBA exists between it and the Union, the plaintiffs have produced a copy of a CBA signed by the defendant's President, William Guidice, [*14] and dated February 2, 1989. The defendant has responded by providing an affidavit from Mr. Guidice explaining that the only way his signature could have gotten on the document would have been by mistake and asserting that he never intended to enter into a CBA with the Union. The Court

Case 1:07-cv-02182-PLF   Document 14-2   Filed 07/25/2008   Page 5 of 5

1991 U.S. Dist. LEXIS 7201, *14; 13 Employee Benefits Cas. (BNA) 2538

Page 5

cannot determine the existence or nonexistence of the CBA *as a matter of law* in light of these disputed factual predicates. Similarly, whether or not the Union or Mr. Guidice *intended* to enter into the alleged agreement and whether the Union actually represented a majority of the defendant's employees at the time the alleged CBA was created are factual issues which cannot be disposed of at this stage in the litigation.

The Second Circuit, in a case involving a pension fund's claims for delinquent contributions by a participating employer, has limited the defenses available to employers in such suits:

For example, an employer may not assert that the union orally agreed not to enforce the terms of the collective bargaining agreement, . . . that the employer was fraudulently induced to enter into the agreement, . . . or that no contract was formed because of unilateral or mutual mistake of fact [*15] . . . Our research has disclosed only two defenses recognized by the courts: (1) that the pension contributions themselves are illegal, . . . and (2) that the collective bargaining agreement is void (not merely voidable) . . . .

*Benson v. Brower's Moving & Storage, Inc.,* 907 F.2d 310, 314 (2d Cir.), *cert. denied* 111 S. Ct. 511 (1990). The defendant attempts to distinguish the *Benson* case, but the defenses it asserts are among those which the Second Circuit has identified as cognizable in actions for delinquent fund contributions. Although the defendant points out that the Union never acted as a representative of the defendant's employees, the defendant is not arguing that the Union abandoned the CBA, assuming such an agreement existed. Indeed, abandonment by the Union of its representation does not relieve an employer from its obligation to make contributions into an employee fund pursuant to a CBA. *Id.* at 313-14. Instead, the defendant alleges fraud in the execution of the alleged CBA which rendered the agreement void and unenforceable. This defense is available to the defendant, but the factual basis for the defense [*16] must be established.

Because numerous material facts remain in dispute, the Court cannot enter summary judgment as to the contested Fund contributions relating to the defendant's Washington Navy Yard contract. Accordingly, the defendant's claim for a set-off against any judgment is not ripe at this time.

For the foregoing reasons, the defendant's Motion for Summary Judgment is DENIED as to the plaintiff's claims arising from the defendant's obligations relevant to the Washington Navy Yard and is GRANTED in part as to the plaintiffs' claims arising from the defendant's obligations relevant to the Naval Weapons Station, Earle.

With respect to the defendant's obligations to the Earle Fund, the Court hereby

ORDERS that the defendant shall pay plaintiffs interest owing for delinquent contributions to the Earle Fund in the amount of $ 5,840.92; and further

ORDERS that the defendant shall pay liquidated damages in the amount of $ 2,380.00 applicable to contributions which were unpaid as of the date of this suit; and further

ORDERS that the plaintiffs are entitled to attorneys fees and costs incurred in securing the liquidated damages awarded in this Order.

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July, 2008, I caused the Plaintiff's Reply in Support of Motion for Summary Judgment to be filed using the CEM/ECF and that ECF will send notification of the filing to:

Elizabeth Tophy-Donzella
Eric Hemmendinger
Shaw & Rosenthal, LLP
20 South Charles Street
11th Floor
Baltimore, Maryland 12101
*Attorneys for Defendant*

_____
R. Richard Hopp

177551_1